**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>**Silver Airways LLC,**<br><br>     **Debtor-in-Possession.** | Chapter 11<br><br>**Case No. 24-23623-PDR** |
| In re:<br><br>**Seaborne Virgin Islands, Inc.,**<br><br>     **Debtor-in-Possession.** | **Case No. 24-23624-PDR**<br><br><br>**Joint Administration Requested** |

**DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING THE DEBTORS**
**TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION**

**(Emergency Hearing Requested for January 6, 2025)**

**STATEMENT OF EXIGENT CIRCUMSTANCES**

The Debtor request an emergency hearing in this matter on January 6, 2025. Without the immediate authorization to (1) use cash collateral as detailed herein in the budget attached to this Motion as **Exhibit A** (the "Budget"), and (2) provide adequate protection, the Debtors will be irreparably harmed because the Debtors will not be able to acquire goods and services necessary for its day-to-day operations or generally maintain and preserve the going concern, enterprise value of the business.

Silver Airways LLC ("Silver") and Seaborne Virgin Islands, Inc. ("Seaborne"), affiliated debtors and debtors in possession in the above captioned case (Silver and Seaborne are each a "Debtor" and, collectively, the "Debtors") by and through their proposed undersigned counsel, seek

1

the entry of an agreed Order authorizing the Debtors to use its cash collateral on an interim basis, and to provide Brigade Agency Services LLC ("Brigade") and Argent Funding, LLC and Volant SVI Funding, LLC, as agents (collectively, "Argent" together, with Brigade, the "Secured Lenders") with adequate protection as detailed herein pursuant to 11 U.S.C. Sections 361 and 363 (the "Motion"). In support of the Motion, the Debtor relies on the *Declaration of Steven Rossum in Support of Chapter 11 Petition and First Day Motions* to be filed with the Court (the "First Day Declaration"). The Motion is being filed pursuant to 11 U.S.C. Sections 361 and 363, Bankruptcy Rules 4001 and 9014, Local Rules 9013-(F) and (G), and this Court's *Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing* (the "Court Guidelines").

### SUMMARY AND STATEMENT OF REQUESTED RELIEF PURSUANT TO BANKRUPTCY RULE 4001(B)(1)(B) AND BANKR. S.D. FLA. L.R. 4001-2

The material terms of the Debtors' proposed use of Cash Collateral:

i. **Name of Entity Which May Claim an Interest in Cash Collateral**. **As further described below, Brigade Agency Services LLC ("Brigade") and Argent Funding, LLC and Volant SVI Funding, LLC, as agents (collectively, "Argent" together, with Brigade, the "Secured Lenders") claim interest in cash collateral pursuant to prepetition financing extended to the Debtors which are secured by all assets of the Debtors. The Secured Lenders have consented to the Debtors use of Cash Collateral.**

ii. **Purpose of Use of Cash Collateral**. **The Debtors propose to use Cash Collateral in accordance with the Budget to preserve and maximize the value of the Debtors' business operations. Because the Debtors are operating businesses which have daily cash needs, use of Cash Collateral is reasonable and necessary to continue operations. The Debtors request approval to use Cash Collateral for an initial two week period to allow the Debtors to obtain and finalize debtor in possession financing.**

iii. **Material Terms, including Duration, of Cash Collateral Usage**. **The Debtor proposes to use Cash Collateral in accordance with the Budget. The Debtor seeks to use Cash Collateral for the initial two week period until debtor in possession financing can be obtained. The Debtors intend to use Cash Collateral to pay operating expenses of their businesses, which primarily include, payroll, fuel, insurance, aircraft maintenance expenses, and airport leases.**

2

iv.   **Adequate Protection and Reporting**.   The Secured Lenders are adequately protected by replacement  liens and the granting of superpriority administrative claim status.   Cash Collateral usage relates to operation and preservation of the Debtors' businesses from which the Cash Collateral is generated providing further adequate protection.   The postpetition liens do not attach to chapter 5 avoidance actions.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue of these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief requested in this Motion are sections 105, 345, 363, 364, 506 and 507 of Title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

3.      On December 30, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Court").

4.      Each of the Debtors is operating its business and managing its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' Chapter 11 cases.

5.      On December 31, 2024, each of the Debtors filed in this Court a motion requesting an Order authorizing the joint administration of the Debtors' chapter 11 cases. If such relief is granted, notice of the hearing on any matter otherwise involving any single Debtor will be required to be given to those creditors and other parties in interest entitled to receive notice in the cases of each of the Debtors.

3

6.     The Debtors operate affiliated international commercial airlines servicing South Florida, the Bahamas, and the Caribbean. The Debtors accumulated a significant debt load due to the Covid-19 pandemic and the resulting rising costs of human capital (particularly pilots and aircraft technicians), fuel, and aircraft parts and components. Additionally, the Debtors' growth-oriented business plan has been frustrated by the continued supply-chain failures. Consequently, the Debtors have operated significantly fewer aircraft than expected. Other factors contributing to Debtors' current financial predicament include: the severe and sustained damage to one of Silver's aircraft by a third-party servicer, resulting in millions of dollars in losses; and importantly a temporary downturn in the demand for leisure airline services in Debtors' principal markets. The circumstances leading up to Debtors' bankruptcy filings are detailed in the Rossum Declaration.

7.     The Debtors are borrowers under a Convertible Note Purchase Agreement (the "CNPA") with Brigade, as agent. The CNPA initially provided funding of $50,000,000.00. As of December 27, 2024, the outstanding principal and interest obligations under the CNPA were not less than $186,793,158.00 - resulting from the principal owed under the loans by Brigade to Silver and the subsequent effect of payment-in-kind interest obligations which increases the principal amount of a loan if cash interest is unpaid. Since the execution of the CNPA, there have been thirty-one amendments, primarily to increase the amount available to Debtors.  Under the CNPA, Brigade, as agent for the lenders, asserts liens on and security interests in substantially all of the Debtors' assets, including cash (the "Brigade Cash Collateral").

8.     The Debtors are also borrowers under certain Loan Agreements with Argent.  As of December 27, 2024, the outstanding principal and interest obligations under the Loan Agreements were not less than $211,844,643.79.  Argent and Brigade are parties to certain Intercreditor and Subordination Agreements (the "Intercreditor Agreement") pursuant to which,

4

among other things, Argent subordinated its security interests in the Debtors' assets to Brigade's security interests. Under the Loan Agreements, Argent asserts a properly perfected and duly enforceable security interest in and liens on all of the Collateral, including cash collateral, which liens have priority over all other security interests and liens except for those of Brigade as set forth in the Intercreditor Agreement (the "Argent Cash Collateral" together with the Brigade Cash Collateral, the "Cash Collateral").

## <u>RELIEF REQUESTED</u>

9.      An immediate and critical need exists for the Debtors to be permitted access to Cash Collateral, in order to continue to operate their businesses and preserve their ongoing, enterprise value. Therefore, the Debtors seek an emergency interim hearing (the "Interim Hearing") in accordance with Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"). At the Interim Hearing, the Debtors will seek approval of (a) the Stipulation for Order Authorizing Continued Use of Cash Collateral and Granting Adequate Protection by and between the Debtors and Brigade dated January 2, 2025 and (b) the Stipulation for Order Authorizing Continued Use of Cash Collateral and Granting Adequate Protection by and between the Debtors and Argent dated January 2, 2025, copies of which are attached hereto as **Exhibits B and C.**  Prior to the expiration of the initial 14-day period being requested to allow the use of cash collateral, the Debtors anticipate negotiating debtor-in-possession financing with a lender to provide financing for the chapter 11 case and allow the Debtors to meet their cash needs.

10.      The Secured Lenders also require that the Court provide in an order that no costs or expenses of administration of the Debtors' cases or any future proceedings that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from any of the Secured Lenders' collateral (including, but

SGR/70754963.3

not limited to, the Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of such Secured Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by such Secured Lender, and nothing contained in the Stipulations or this Order shall be deemed to be a consent by either of the Secured Lenders to any charge, lien, assessment or claim against their respective collateral under section 506(c) of the Bankruptcy Code.

11.     It is a crucial part of Debtors' reorganization to continue operations, and therefore Debtors seek an order permitting Debtors' use of cash collateral.  Debtors propose to provide the Secured Lenders with adequate protection for the use of cash collateral in the form of replacement liens securing any cash collateral used by the Debtors that are equal in validity and priority as any liens the Secured Lenders held against the Debtors' collateral as of the commencement of this case.

## FACTS RELATED TO RELIEF REQUESTED

12.     As security for the payment of all Brigade Secured Debt, the Debtors granted to Brigade security interests in and liens (collectively, the "Brigade Pre-Petition Liens") upon all assets of the Debtors, including, without limitation, all of Debtor's accounts, deposits, and any proceeds of the aforementioned collateral (all such personal property, as the same existed on the Petition Date, together with all cash and non-cash proceeds thereof, the "Pre-Petition Collateral"). As described, Argent also asserts security interests in the Pre-Petition Collateral and executed with Brigade, Intercreditor and Subordination Agreements, subordinating all obligations owed to Argent to the obligations owed by Silver to Brigade.

13.     As of the Petition Date, Brigade's pre-petition collateral included the following assets owned by the Debtors:

| | | |
|---|---|---|
| Cash and Cash Equivalents - Silver: | $ | 530,050 |
| Accounts Receivable - Silver: | $ | 27,311,654 |

SGR/70754963.3

|                                          |    |          |
|------------------------------------------|----|----------|
| Cash and Cash Equivalents - Seaborne:    | $  | 88,274   |
| Accounts Receivable - Seaborne:          | $  | 586,917  |

14.     Almost all of the Debtors' accounts receivable consist of passenger receipts which are paid pursuant to agreements with the Debtors' credit card processors.  The credit card processors have reserves approximately equal to the amount of the accounts receivable to guard against any chargebacks by customers which may occur and releases funds to the Debtors after a passenger completes a flight.

15.     Any cash or cash equivalents, funds or proceeds of or derived from certain of the collateral securing the obligations of the Debtors to the Secured Lenders constitute cash collateral within the meaning of Section 363 of the Bankruptcy Code.  The Cash Collateral includes, without limitation, the Debtors' cash or cash equivalents maintained in the Debtors' bank accounts and proceeds received by the Debtors from the passengers on its aircraft.

16.     This Motion has been served on any party Silver is aware that asserts a lien.[1]

17.     In connection with the Debtors' proposed use of Cash Collateral hereunder and in order to provide the Secured Lenders with adequate protection for the aggregate diminution of the Cash Collateral resulting from the Debtors' use thereof, the Debtors propose, subject to approval of this Court, that the Secured Lenders, shall have, effective as of the commencement of this Chapter 11 case, a replacement lien pursuant to 11 U.S.C. §§361(2), 363(e), and 506 on and in all property of the Debtors acquired or generated after the Petition Date, but solely to the same extent and priority, and of the same kind and nature, as the property of the Debtors securing the prepetition obligations to Secured Lenders under their respective Loan Documents.

---

[1] Although the Debtors believe that no other lender has an interest in the Cash Collateral, to the extent any other lender is deemed secured, Debtors propose to provide a replacement lien to the same extent, validity, and priority as such pre-petition lien of lender.

SGR/70754963.3

18.    The Debtors propose to use the Cash Collateral strictly in accordance with the terms of the Budget prepared by the Debtors, attached as **Exhibit A**.  The Budget covers a 14-day period from the Petition Date through January 14, 2025.  The Debtors also request that they be authorized: to exceed any line item by more than ten percent (10%) so long as the total of all amounts in excess of all line items for the Budget do not exceed the total Budget.

19.    The replacement liens granted to the Secured Lenders hereunder in connection with the use of the Cash Collateral shall be valid and perfected without the need for the execution or filing of any further documents or instruments.

## APPLICABLE AUTHORITY FOR RELIEF REQUESTED

### a.    The Court Should Enter an Order Authorizing the Use of Cash Collateral Because the Debtors are Providing Secured Lenders with Adequate Protection.

20.    Pursuant to the terms hereof, the Debtors will provide adequate protection to the Secured Lenders as contemplated and required by Sections 361(1) and (2), and 363(c)(2)(B), respectively, and hereby seeks the Court's approval thereof. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property. *See* 11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis. *In re Swedeland Dev.  Group Inc.,* 16 F.3d 552, 564 (3d Cir. 1994) *(citing In re O'Connor,* 808 F.2d 1393, 1396-97 (10th Cir. l987)); *In re Martin,* 761 F.2d 472, 476 (8th Cir. 1985).

21.    Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained.  *Swedeland*, 16 F.3d at 564 *(citing O'Connor,* 808 F.2d at 1396) ("the whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained pre bankruptcy").  Courts have noted that "the essence of adequate

8

protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation." *In re Arriens,* 25 B.R. 79, 81 (Bankr. D. Or. 1982). The focus of the requirement is to protect a secured creditor from diminution in value during the use period. *See In re Kain,* 86 B.R 506, 513 (Bankr. W.D. Mich. 1988); *In re Becker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.,* 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

22.    The Debtors' requested use of Cash Collateral and the protections afforded to the Secured Lenders herein, by replacement liens and superpriority administrative claim status, in light of the circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the Secured Lenders' Collateral.

### b. The Use of Cash Collateral Will Preserve the Debtor's Going Concern Value, Which Will Inure to the Benefit of the Estate.

23.    The continued operation of the Debtors' businesses will preserve and maintain their going concern, enterprise value and enable the Debtors to continue to operate and maximize its value in the reorganization process. However, as discussed above, if the Debtors are not allowed to use Cash Collateral, the business operations will be substantially interrupted. This would result in a significant diminution in the value of the Debtors' assets (including the Cash Collateral) to the detriment of the Debtors' creditors and other harm to the estate.

24.    It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

9

*In re George Ruggiere Chrysler-Plymouth, Inc.,* 727 F.2d 1017, 1019 (11th Cir. 1984).

25.    Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value.  For example, in *In re Stein,* 19 B.R. 458 (Bankr. E.D. Pa. 1982), the court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtor's continued operations and the creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]" *Id.* at 460; *see also Federal Nat. Mort. v. Dacon Bolingbrook Assocs.,* 153 B.R. 204, 214 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation and maintenance of the property); *In re Constable Plaza Assoc.,* 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor's reinvestment of rents to maintain and operate office building "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage"); *In re Dynaco Corp.,* 162 B.R. 389, 395-96 (Bankr. D.N.H. 1983) (finding that the alternative to the debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise, Inc.,* 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on postpetition property acquired by debtor; debtor can use cash collateral "in the normal operation of their business").

26.    As discussed above, the Debtors will use Cash Collateral in the ordinary course of business to, among other things, continue to operate and maintain its operations in anticipation of restructuring its debts through the reorganization process. If the Debtors cannot continue to use Cash Collateral, they likely will be forced to cease operations and convert these cases to Chapter 7.  This cessation would irreparably damage the Debtors' businesses.  By contrast, granting authority will allow the Debtors to maintain operations and preserve the going concern value of their businesses, which will inure to the benefit of the Secured Lenders, and all other creditors.

SGR/70754963.3

### c. The Secured Lenders are Adequately Protected by the Grant of Replacement Liens on Post-Petition Assets

27.     The Bankruptcy Code expressly provides that granting "a replacement lien" is a means of adequate protection. 11 U.S.C. § 361(1) and (2). Granting replacement liens provides ample adequate protection of the secured creditor's interest in cash collateral. *See, e.g., In re O'Connor*, 808 F.2d at 1393; *In re Dixie-Shamrock Oil & Gas. Inc.,* 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984). The Debtors will adequately protect the Secured Lenders' interests in Cash Collateral by, among other things, providing post-petition security interests in the Debtors' assets of the same type as the Secured Lenders held pre-petition to the extent the Debtors' use of Cash Collateral results in a post-petition decrease in the value of the Collateral securing the Secured Lenders' claims.  Such post-petition security interests will be of the same validity and priority as the Secured Lenders' pre-petition liens and security interests.

28.     The Debtors believe that use of Cash Collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects the Secured Lenders. For all of the reasons stated above, this Court's approval of the Debtors' use of the Secured Lenders' Cash Collateral is proper herein.  A proposed Interim Order granting the Debtors' use of Cash Collateral on the terms set forth herein is attached hereto as **Exhibit D.**

### NOTICE AND NO PRIOR REQUEST

29.     Notice of this pleading will be served via facsimile transmission, email, or overnight delivery to (i) the United States Trustee, (ii) those parties listed as the Debtors' 20 largest unsecured creditors, (iii) counsel secured lender, Brigade Agency Services LLC, c/o Frank Terzo, Nelson Mullins, 100 S.E. 3rd Ave., Suite 2700, Fort Lauderdale, FL 33394; Lee Hart, Nelson Mullins, 201 17th St., NE, Suite 1700, Atlanta, GA 30363; Adam Herring, Nelson Mullins, 201 17th St., NE, Suite 1700, Atlanta, GA 30363, (iv) counsel to secured lenders, Argent Funding, LLC

11

and Volant SVI Funding, LLC, Regina Stango Kelbon, Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, (v) the District Director of the Internal Revenue Service, (vi) the U.S. Attorney for the Southern District of Florida, and (vii) those persons who file and serve a notice of appearance in the Cases pursuant to Rules 2002, 3017(a), and/or 9010 of the Bankruptcy Rules. No examiner, trustee or creditors' committee has been appointed in this case.

30.    No previous request for the relief sought in this Motion has been made to this Court or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Interim Order in the form attached as **Exhibit D**: that (A) authorizes the Debtor (i) to use the Cash Collateral of Secured Lenders pursuant to the terms set forth above and in accordance with the Budget attached as **Exhibit A**, (ii) to grant the replacement liens as set forth above in connection with the use thereof, and (B) approves the terms of the Stipulations attached hereto as **Exhibits B and C**.

Dated: January 2, 2025

**SMITH, GAMBRELL & RUSSELL, LLP**

By: */s/ Michael F. Holbein*
Michael F. Holbein
Florida Bar No. 1033402
Brian P. Hall
Florida Bar No.: 0070051
bhall@sgrlaw.com
mholbein@sgrlaw.com
1105 W. Peachtree Street NE
Suite 1000
Atlanta, GA 30309
Phone: (404) 815-3537
Facsimile: (404) 685-6837

Proposed Attorneys for Debtors and Debtors in Possession

SGR/70754963.3

**<u>Exhibit A</u>**

**EXHIBIT A**
**Budget**

**Consolidated Silver and Seaborne**
**Cash Forecast** *($ in thousands)*

| | Period 1 | Period 2 | Period 3 |
|---|---|---|---|
| Start | 12/31/25 | 01/04/25 | 01/11/25 |
| End | 01/03/25 | 01/10/25 | 01/14/25 |
| **Beginning Book Cash** | **616** | **1,054** | **1,256** |
| **Receipts** | 1,614 | 2,801 | 1,369 |
| **Operating Disbursements** | | | |
| Payroll & Benefits Expenses | (9) | (1,221) | (1,348) |
| Fuel Expenses | (425) | (425) | (166) |
| Insurance | - | - | (22) |
| Parts exchange program | - | (281) | - |
| Facilities | (325) | (104) | - |
| Crew travel, hotels, emergency parts purchase | (122) | (165) | (68) |
| Operations support payments[2] | (158) | (225) | (45) |
| Other payments | (138) | (178) | (74) |
| **Total Operating Disbursements** | **(1,177)** | **(2,599)** | **(1,723)** |
| **Net changes** | 438 | 201 | (354) |
| **Ending Book Cash Balance** | **1,054** | **1,256** | **902** |

---

[2]  Includes, among other things,  flight operations support, ground handling, maintenance support, logistics for parts.

**Exhibit B**

SGR/70754963.3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Silver Airways LLC,** | **Case No. 24-23623** |
| **Debtor-in Possession.** | |
| **In re:** | |
| **Seaborne Virgin Islands, Inc.,** | **Case No. 24-23624** |
| **Debtor-in-Possession.** | |
| | **Joint Administration Requested** |

**STIPULATION FOR ORDER**
**AUTHORIZING CONTINUED USE OF CASH**
**COLLATERAL AND GRANTING ADEQUATE PROTECTION**

This *Stipulation For Order Authorizing Continued Use of Cash Collateral and Granting Adequate Protection* (the "Stipulation") is entered into this 2nd day of January, 2025 by and between Silver Airways LLC and Seaborne Virgin Islands, Inc. (collectively, the "Debtors"), as debtors-in-possession in the above-captioned cases (the "Cases"), and Brigade Agency Services LLC ("Brigade"), as the Debtors' senior secured creditor.

**BACKGROUND**

1.      On December 30, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Court").

2.      Each of the Debtors is operating its business and managing its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' Chapter 11 cases.

3.      The Debtors are borrowers under a Convertible Note Purchase Agreement (the "CNPA") with Brigade, as agent, dated September 12, 2022. The CNPA initially provided funding of $50,000.000.00. As of December 27, 2024, the outstanding principal and interest obligations under the CNPA were not less than $186,793,158.00 - resulting from the principal owed under the loans by Brigade to Silver and the subsequent effect of payment-in-kind interest obligations which increases the principal amount of a loan if cash interest is unpaid. Since the execution of the CNPA, there have been thirty-one amendments, primarily to increase the amount of principal available to Debtors.

4.      Brigade asserts a properly perfected, duly enforceable, first priority security interest on Collateral defined in the CNPA as

> all Property and interests in Property and proceeds thereof now owned or hereafter acquired by any Credit Party, any of their respective Subsidiaries and any other person who has granted a Lien to Agent, in or upon which a Lien is granted or purported to be granted now or hereafter exists in favor of any Purchaser or Agent for the benefit of Agent, Purchasers and other Secured Parties, to secure the Obligations, whether under this Agreement or under any other documents executed by any such Persons and delivered to Agent

which Collateral includes cash collateral within the meaning of 11 U.S.C. § 363(a) (the "Cash Collateral"). Debtors agree with and covenant not to contest the existence, validity, or priority of Brigade's asserted security interests and/or liens in the Collateral.

5.     Brigade perfected its first-priority security interest by filing the following UCC- I Financing Statements:

   a.   the UCC-1 Financing Statement number 2022 0234062, providing "Silver Airways LLC" as the name of the debtor, "Brigade Agency Services LLC, as Agent" as the name of the secured party, and indicating as collateral "all assets of Debtor, whether now owned or hereafter acquired or arising, and all products and proceeds thereof" filed January 10, 2022, in the office of the Secretary of State of the State of Delaware; and

   b.   the UCC-1 Financing Statement number 20220000010, providing "Seaborne Virgin Islands, Inc." as the name of the debtor, "Brigade Agency Services LLC, as Agent" as the name of the secured party, and indicating as collateral "all assets of Debtor, whether now owned or hereafter acquired or arising, and all products and proceeds thereof," filed January 13, 2022, in the office of the Lieutenant Governor, the Division of Corporations and Trademarks.

6.     As of the Petition Date, Brigade's pre-petition collateral included the following assets owned by the Debtors:

| | |
|---|---|
| Cash and Cash Equivalents - Silver: | $   530,050 |
| Accounts Receivable - Silver: | $ 27,311,654 |
| Cash and Cash Equivalents - Seaborne: | $     88,274 |
| Accounts Receivable - Seaborne: | $   586,917 |

7.     Brigade consents to the Debtors' continued use of Cash Collateral on the terms set forth herein and in the Order (as defined below).

8.     Brigade has acted in good faith in consenting to the use of Cash Collateral. including the Debtors' proposed use of Cash Collateral as set forth herein to fund the continued operation of the Debtors' businesses.

**THE PARTIES HEREBY STIPULATE AND AGREE AS FOLLOWS:**

**A.**   <u>Preamble</u>. The foregoing stipulations are hereby restated (and the Debtors confirm the representations made in said stipulations) and incorporated herein by this reference. The Parties hereby consent and stipulate to the entry of an Order approving this Stipulation (the "Order").

**B.**   <u>Use of Cash Collateral.</u>   Subject to, and in accordance with, the terms and conditions of this Stipulation and the Order, the Debtors are authorized to use the Cash Collateral of Brigade, for those purposes and in those amounts identified in **<u>Exhibit "A"</u>** to this Stipulation (the "Budget") for the period commencing on the Petition Date through January 14, 2025 (the "Termination Date");  provided, however, that so long as the Debtors' total expenditures for any week do not exceed the budgeted amount, the Debtors' expenditures for any line item may exceed the amount budgeted for that line item by no more than ten percent (10%) of the budgeted amount each month (a "<u>Permitted Variance</u>").

C.   <u>Reaffirmation of Loan Documents.</u>  The Debtors reaffirm their agreements to be bound by the CNPA (as the same has been amended, restated or otherwise modified from tiem to time, and as supplemented hereby).

D.   <u>Adequate Protection for Use of Cash Collateral.</u>  As adequate protection for the use of its Cash Collateral, Brigade shall be granted continuing replacement liens pursuant to sections 361(2), 363(e) and 506 of the Bankruptcy Code in and upon the personal property of the Debtors, whether owned or existing as of the Petition Date or thereafter acquired or arising, and all proceeds, products, rents, revenues, or profits of such property (excluding, however, claims or causes of action arising under sections 544, 545, 547, 548, 550 or 553 of the Bankruptcy Code ) in the same validity and priority as the Brigade's pre-petition liens and

security interests (collectively, the "Replacement Liens"). The Replacement Liens shall be junior and subordinate only to the Carve-Out but otherwise senior to all other liens and security interests. The Replacement Liens shall be deemed attached, perfected, and enforceable against the Debtors and all other persons, including without limitation, any subsequently appointed trustee for the Debtors, without the filing of any financing statements or other compliance with non-bankruptcy law.

E.      Allowance of Superpriority Adminstrative Claim. As additional adequate protection, pursuant to section 507(b) of the Bankruptcy Code, Brigade shall be granted a superpriority administrative expense claim in the amount of any shortfall in collateral. The superpriority administrative expense claim shall be junior to the Carve-Out.

F.      Perfection of Replacement Liens. Brigade is authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not Brigade shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, unavoidable and not subject to challenge, dispute or subordination at the time and on the date of entry of the Order. The Debtors shall execute and deliver to Brigade, all such agreements, financing statements, instruments and other documents as Brigade may reasonably request to more fully evidence, confirm, validate, perfect, preserve and

enforce the Replacement Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date. A certified copy of the Order may, in the discretion of Brigade, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are authorized to accept such certified copy of the Order for filing and recording.

G.     Exculpation.  Nothing in the Order or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon Brigade any liability for any claims arising from the prepetition or post-petition activities of the Debtors in the operation of their business or maintenance of assets, or in connection with their restructuring and sale efforts.

H.     Carve-Out.  The Replacement Liens and superpriority administrative claim granted to Brigade pursuant to this Stipulation and the Order shall be junior and subordinate to (a) all fees required to paid by the Debtors to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (b) all fees due the Clerk of the Court, (collectively, the "Carve-Out").

I.      Events of Default and Remedies. The following events shall each constitute an event of default hereunder (each, an "Event of Default"): (i) the Debtors' failure to comply with any of the terms of this Stipulation and the Order (including, without limitation, compliance with the Budget, subject to any Permitted Variance); (ii) the obtaining of credit or incurring of indebtedness outside of the ordinary course of business that is either secured by a security interest or lien that is equal or senior to any security interest or lien of Brigade or entitled to priority administrative status that is equal or

senior to that granted to Brigade; and (iii) entry of an order by the Court granting relief from or modifying the automatic stay under section 362 of the Bankruptcy Code to allow a creditor to execute upon or enforce a lien or security interest in any collateral that would have a material adverse effect on the business, operations, property or assets of the Debtor. Upon the occurrence of an Event of Default, Brigade shall be entitled to give notice thereof to Debtors and to request a hearing, which the Court will endeavor to grant on an expedited basis, at which hearing the only issue for consideration will be whether an Event of Default exists. If the Court at such Hearing determines that an Event of Default exists, Debtors agree and stipulate that Brigade may, in its sole discretion, request entry of an order terminating or modifying the automatic stay, or converting the Cases to chapter 7, and that the existence of such Event of Default constitutes sufficient cause therefor.

J.    <u>Survival.</u>  The provisions of this Stipulation and the Order, including all findings therein, shall be binding upon all parties in interest in the Cases, including without limitation, Brigade, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of Brigade and the Debtors and their respective successors and assigns, provided that Brigade shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estate of any of the Debtors.

K.    <u>Limitation on Charging Expenses Against Collateral.</u>  No costs or expenses of administration of the Cases or any future proceedings that may result therefrom,

including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of Brigade, and no such consent shall be implied from any other action, inaction, or acquiescence by Brigade, and nothing contained in this Stipulation or the Order shall be deemed to be a consent by Brigade to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

L.      <u>Further Amendments.</u> Nothing herein shall prohibit the Debtors and Brigade from amending the terms of the Debtors' use of Cash Collateral by mutual agreement. The Debtors shall provide timely notice of all such amendments to parties on the service list, including the Office of the United States Trustee.

M.      <u>Future Use of Cash Collateral.</u> Any use of Cash Collateral after the Termination Date will be determined and governed by separate order.

[Signatures appear on the following page]

In witness hereof**,** the undersigned, being duly authorized, have caused this Stipulation to be executed on the dates shown above.

**SILVER AIRWAYS LLC**

_____
By:Steven A. Rossum, CEO

**SEABORNE VIRGIN ISLANDS, INC.**

_____
By:Steven A. Rossum, CEO

**BRIGADE AGENCY SERVICES LLC**

_____
By:_____

9

IN WITNESS HEREOF, the undersigned, being duly authorized, have caused this Stipulation to be executed on the dates shown above.

**SILVER AIRWAYS LLC**

_____

By:_____

**SEABORNE VIRGIN ISLANDS, INC.**

_____

By:_____

**BRIGADE AGENCY SERVICES LLC**

_____

By:___Patrick Criscillo_____

          Authorized Signatory

## EXHIBIT A
### Budget

**Consolidated Silver and Seaborne**
**Cash Forecast** *($ in thousands)*

|  | Period 1 | Period 2 | Period 3 |
|---|---|---|---|
| Start | 12/31/25 | 01/04/25 | 01/11/25 |
| End | 01/03/25 | 01/10/25 | 01/14/25 |
| **Beginning Book Cash** | **616** | **1,054** | **1,256** |
| **Receipts** | 1,614 | 2,801 | 1,369 |
| **Operating Disbursements** | | | |
| Payroll & Benefits Expenses | (9) | (1,221) | (1,348) |
| Fuel Expenses | (425) | (425) | (166) |
| Insurance | - | - | (22) |
| Parts exchange program | - | (281) | - |
| Facilities | (325) | (104) | - |
| Crew travel, hotels, emergency parts purchase | (122) | (165) | (68) |
| Operations support payments[1] | (158) | (225) | (45) |
| Other payments | (138) | (178) | (74) |
| **Total Operating Disbursements** | **(1,177)** | **(2,599)** | **(1,723)** |
| **Net changes** | 438 | 201 | (354) |
| **Ending Book Cash Balance** | **1,054** | **1,256** | **902** |

---

[1] Includes, among other things,  flight operations support, ground handling, maintenance support, logistics for parts.

**Exhibit C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Silver Airways LLC,** | **Case No. 24-23623** |
| **Debtor-in Possession.** | |
| **In re:** | |
| **Seaborne Virgin Islands, Inc.,** | **Case No. 24-23624** |
| **Debtor-in-Possession.** | |
| | **Joint Administration Requested** |

**STIPULATION FOR ORDER**
**AUTHORIZING CONTINUED USE OF CASH**
**COLLATERAL AND GRANTING ADEQUATE PROTECTION**

This *Stipulation For Order Authorizing Continued Use of Cash Collateral and Granting Adequate Protection* (the "Stipulation") is entered into this 31st day of December, 2024 by and between Silver Airways LLC and Seaborne Virgin Islands, Inc. (collectively, the "Debtors"), as debtors-in-possession in the above-captioned cases (the "Cases"), and Argent Funding, LLC and Volant SVI Funding, LLC, as agents (collectively, "Argent"), as a secured creditor of the Debtors.

## BACKGROUND

1.      On December 30, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Court").

2.      Each of the Debtors is operating its business and managing its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' Chapter 11 cases.

3.      The Debtors are borrowers under certain Loan Agreements with Argent.  As of December 27, 2024, the outstanding principal and interest obligations under the Loan Agreements were not less than $211,844,643.79.  The Debtors are also borrowers under a Convertible Note Purchase Agreement (the "CNPA") with Brigade Agency Services LLC, as agent ("Brigade"), dated September 12, 2022. As of December 27, 2024, the outstanding principal and interest obligations under the CNPA were not less than $186,793,158.00.  Brigade asserts a properly perfected, duly enforceable, first priority security interest on all of the Debtors' assets (the "Collateral"), including cash collateral within the meaning of 11 U.S.C. § 363(a) (the "Cash Collateral").

4.      Argent and Brigade are parties to certain Intercreditor and Subordination Agreements (the "Intercreditor Agreement") pursuant to which, among other things, Argent subordinated its security interests in the Debtors' assets to Brigade's security interests.  Under the Loan Agreements, Argent asserts a properly perfected and duly enforceable security interest in and liens on all of the Collateral, including Cash Collateral, which liens have priority over all other security interests and liens except for those of Brigade as set forth in the Intercreditor Agreement.

5.      As of the Petition Date, Argent's pre-petition collateral included the following assets owned by the Debtors:

| | |
|---|---|
| Cash and Cash Equivalents - Silver: | $     530,050 |
| Accounts Receivable - Silver: | $ 27,311,654 |
| Cash and Cash Equivalents - Seaborne: | $       88,274 |
| Accounts Receivable - Seaborne: | $     586,917 |

6.      Argent consents to the Debtors' continued use of Cash Collateral on the terms set forth herein and in the Order (as defined below).

7.      Debtors agree with and covenant not to contest the existence, validity, or priority of Argent's asserted security interests and/or liens in the Collateral.

8.      Argent has acted in good faith in consenting to the use of Cash Collateral. including the Debtors' proposed use of Cash Collateral as set forth herein to fund the continued operation of the Debtors' businesses.

**THE PARTIES HEREBY STIPULATE AND AGREE AS FOLLOWS:**

**A.**    Preamble. The foregoing stipulations are hereby restated (and the Debtors confirm the representations made in said stipulations) and incorporated herein by this reference. The Parties hereby consent and stipulate to the entry of an Order approving this Stipulation (the "Order").

**B.**    Use of Cash Collateral.    Subject to, and in accordance with, the terms and conditions of this Stipulation and the Order, the Debtors are authorized to use the Cash Collateral of Argent, for those purposes and in those amounts identified in **Exhibit "A"** to this Stipulation (the "Budget") for the period commencing on the Petition Date through January 14, 2025 (the "Termination Date");  provided, however, that so long as the Debtors' total expenditures for any week do not exceed the budgeted amount, the

Debtors' expenditures for any line item may exceed the amount budgeted for that line item by no more than ten percent (10%) of the budgeted amount each month (a "Permitted Variance").

C.    Reaffirmation of Loan Documents.  The Debtors reaffirm their agreements to be bound by the Loan Agreements (as the same has been amended, restated or otherwise modified from time to time, and as supplemented hereby).

D.    Adequate Protection for Use of Cash Collateral.  As adequate protection for the use of its Cash Collateral, Argent shall be granted continuing replacement liens pursuant to sections 361(2), 363(e) and 506 of the Bankruptcy Code in and upon the personal property of the Debtors, whether owned or existing as of the Petition Date or thereafter acquired or arising, and all proceeds, products, rents, revenues, or profits of such property (excluding, however, claims or causes of action arising under sections 544, 545, 547, 548, 550 or 553 of the Bankruptcy Code ) in the same validity and priority as the Argent's pre-petition liens and security interests (collectively, the "Replacement Liens"). The Replacement Liens shall be junior and subordinate to Brigade's security interest in the Debtors' assets (including any replacement liens granted to Brigade) and the Carve-Out but otherwise senior to all other liens and security interests.  The Replacement Liens shall be deemed attached, perfected, and enforceable against the Debtors and all other persons, including without limitation, any subsequently appointed trustee for the Debtors, without the filing of any financing statements or other compliance with non-bankruptcy law.

E.    Allowance of Superpriority Adminstrative Claim.  As additional adequate protection, pursuant to section 507(b) of the Bankruptcy Code, Argent shall be granted a

superpriority administrative expense claim in the amount of any shortfall in collateral. The superpriority administrative expense claim shall be junior to the Carve-Out.

F.    Perfection of Replacement Liens.   Argent is authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not Argent shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, unavoidable and not subject to challenge, dispute or subordination at the time and on the date of entry of the Order.  The Debtors shall execute and deliver to Argent, all such agreements, financing statements, instruments and other documents as Argent may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the Replacement Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.  A certified copy of the Order may, in the discretion of Argent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are authorized to accept such certified copy of the Order for filing and recording.

G.    Exculpation.   Nothing in the Order or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the

imposition upon Argent any liability for any claims arising from the prepetition or post-petition activities of the Debtors in the operation of their business or maintenance of assets, or in connection with their restructuring and sale efforts.

H.    Carve-Out.  The Replacement Liens and superpriority administrative claim granted to Argent pursuant to this Stipulation and the Order shall be junior and subordinate to (a) all fees required to paid by the Debtors to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (b) all fees due the Clerk of the Court, (collectively, the "Carve-Out").

I.    Events of Default and Remedies. The following events shall each constitute an event of default hereunder (each, an "Event of Default"): (i) the Debtors' failure to comply with any of the terms of this Stipulation and the Order (including, without limitation, compliance with the Budget, subject to any Permitted Variance); (ii) the obtaining of credit or incurring of indebtedness outside of the ordinary course of business that is either secured by a security interest or lien that is equal or senior to any security interest or lien of Argent or entitled to priority administrative status that is equal or senior to that granted to Argent; and (iii) entry of an order by the Court granting relief from or modifying the automatic stay under section 362 of the Bankruptcy Code to allow a creditor to execute upon or enforce a lien or security interest in any collateral that would have a material adverse effect on the business, operations, property or assets of the Debtor. Upon the occurrence of an Event of Default, Argent shall be entitled to give notice thereof to Debtors and to request a hearing, which the Court will endeavor to grant on an expedited basis, at which hearing the only issue for consideration will be whether an Event of Default exists. If the Court at such Hearing determines that an Event of Default exists, Debtors agree and stipulate that Argent may, in its sole

discretion, request entry of an order terminating or modifying the automatic stay, or converting the Cases to chapter 7, and that the existence of such Event of Default constitutes sufficient cause therefor.

J.    Survival. The provisions of this Stipulation and the Order, including all findings therein, shall be binding upon all parties in interest in the Cases, including without limitation, Argent, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of Argent and the Debtors and their respective successors and assigns, provided that Argent shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estate of any of the Debtors.

K.    Limitation on Charging Expenses Against Collateral.  No costs or expenses of administration of the Cases or any future proceedings that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of Argent, and no such consent shall be implied from any other action, inaction, or acquiescence by Argent, and nothing contained in this Stipulation or the Order shall be deemed to be a consent by Argent to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

L.    Further Amendments. Nothing herein shall prohibit the Debtors and Argent from amending the terms of the Debtors' use of Cash Collateral by mutual agreement. The

Debtors shall provide timely notice of all such amendments to parties on the service list, including the Office of the United States Trustee.

M.   <u>Future Use of Cash Collateral.</u> Any use of Cash Collateral after the Termination Date will be determined and governed by separate order.

[Signatures appear on the following page]

IN WITNESS HEREOF, the undersigned, being duly authorized, have caused this Stipulation to be executed on the dates shown above.

**SILVER AIRWAYS LLC**

_____
By:Steven A. Rossum, CEO

**SEABORNE VIRGIN ISLANDS, INC.**

_____
By:Steven A. Rossum, CEO

**ARGENT FUNDING, LLC**

_____
By:_____

**VOLANT SVI FUNDING, LLC**

_____
By:_____

9

IN WITNESS HEREOF, the undersigned, being duly authorized, have caused this Stipulation to be executed on the dates shown above.

**SILVER AIRWAYS LLC**

By: _____

**SEABORNE VIRGIN ISLANDS, INC.**

By: _____

**ARGENT FUNDING, LLC**

By: _Randall C. Schultz_

**VOLANT SVI FUNDING, LLC**

By: _Randall R. Schultz_

**EXHIBIT A**
**Budget**

**Consolidated Silver and Seaborne**
**Cash Forecast** *($ in thousands)*

| | Period 1 | Period 2 | Period 3 |
|---|---|---|---|
| Start | 12/31/25 | 01/04/25 | 01/11/25 |
| End | 01/03/25 | 01/10/25 | 01/14/25 |
| **Beginning Book Cash** | **616** | **1,054** | **1,256** |
| **Receipts** | 1,614 | 2,801 | 1,369 |
| **Operating Disbursements** | | | |
| Payroll & Benefits Expenses | (9) | (1,221) | (1,348) |
| Fuel Expenses | (425) | (425) | (166) |
| Insurance | - | - | (22) |
| Parts exchange program | - | (281) | - |
| Facilities | (325) | (104) | - |
| Crew travel, hotels, emergency parts purchase | (122) | (165) | (68) |
| Operations support payments[1] | (158) | (225) | (45) |
| Other payments | (138) | (178) | (74) |
| **Total Operating Disbursements** | **(1,177)** | **(2,599)** | **(1,723)** |
| **Net changes** | 438 | 201 | (354) |
| **Ending Book Cash Balance** | **1,054** | **1,256** | **902** |

---

[1] Includes, among other things,  flight operations support, ground handling, maintenance support, logistics for parts.

**Exhibit D**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Silver Airways LLC,** | **Case No. 24-23623-PDR** |
| **Debtor-in-Possession.** | |
| **In re:** | |
| **Seaborne Virgin Islands, Inc.,** | **Case No. 24-23624-PDR** |
| **Debtor-in-Possession.** | **Joint Administration Requested** |

**ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR ORDER**
**AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL AND PROVIDE**
**ADEQUATE PROTECTION**

**THIS MATTER** came before the Court on **January 6, 2025 at 1:30 p.m.** (the "Hearing") on the *Debtors' Emergency Motion for Order Authorizing Debtors to Use Cash Collateral and Provide Adequate Protection* [ECF No. _____] (the "Motion")[5]. [No objections to the Motion were filed, served or raised orally at the Hearing.] The Court, having reviewed and considered the Motion and Stipulations, having been informed that the Debtors and (i) Brigade Agency Services LLC ("Brigade") and (ii) Argent Funding, LLC and Volant SVI Funding, LLC, have agreed to the terms of the Stipulations, and being otherwise duly advised in the premises, finds that granting the Motion and approving the Stipulations as set forth herein are in the best interest of the Debtors, their creditors and all parties in interest. Accordingly, it is:

**ORDERED** as follows:

1.     The Motion is **GRANTED** as set forth herein.

2.     The Stipulations attached as Exhibit "A" and "B" to the Motion are approved in their entirety.

3.     The Debtors are authorized to use the Cash Collateral of the Secured Lenders through January 14, 2025, in accordance with the budget attached to the Stipulation (the "Budget"), in all events subject to and in accordance with the terms of the Stipulation.

4.     As adequate protection for the use of Cash Collateral, and in order to provide the Secured Lenders with adequate protection for any aggregate diminution of their Cash Collateral resulting from the Debtors' use thereof going forward, the Secured Lenders are hereby granted continuing replacement liens in and upon the personal property of the Debtors, whether owned or existing as of the Petition Date or thereafter acquired or arising, and all proceeds, products,

---

[5] All capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Motion.

rents, revenues, or profits of such property (excluding, however, claims or causes of action arising under sections 544, 545, 547, 548, 550 or 553 of the Bankruptcy Code) in the same validity and priority as the Secured Lenders' pre-petition liens and security interests (collectively, the "Replacement Liens"). The Replacement Liens shall be junior and subordinate only to the Carve-Out.  The Replacement Liens shall be deemed attached, perfected, and enforceable against the Debtors and all other persons, including without limitation, any subsequently appointed trustee for the Debtors, without the filing of any financing statements or other compliance with non-bankruptcy law.

5.      Pursuant to section 507(b) of the Bankruptcy Code, the Secured Lenders are granted allowed, superpriority administrative expense claim in the amount of any shortfall in the Replacement Liens, which shall be junior only to the Carve-Out.

6.      No costs or expenses of administration of the above-captioned cases or any future proceedings that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from any of the Secured Lenders' collateral (including, but not limited to, the Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of such Secured Creditor, and no such consent shall be implied from any other action, inaction, or acquiescence by such Secured Creditor, and nothing contained in the Stipulations or this Order shall be deemed to be a consent by either of the Secured Lenders to any charge, lien, assessment or claim against their respective collateral under section 506(c) of the Bankruptcy Code.

7.      The Replacement Liens and superpriority administrative claims provided to Brigade shall be senior to the Replacement Liens and superpriority administrative claims provided to Argent.

8.      All of the provisions of the Stipulations, along with any requested findings, terms, or conditions set forth in the Motion and not otherwise set forth in the Stipulations or this Order, are incorporated herein and are approved as if they were fully set forth above.

9.      This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order and the Stipulation.

###

Submitted by:

**SMITH, GAMBRELL & RUSSELL, LLP**

Michael F. Holbein
Florida Bar No. 1033402

Brian P. Hall
Florida Bar No.: 0070051
bhall@sgrlaw.com
mholbein@sgrlaw.com
1105 W. Peachtree Street NE
Suite 1000
Atlanta, GA 30309
Phone: (404) 815-3537
Facsimile: (404) 685-6837

Proposed Attorneys for Debtors and Debtors in Possession