**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

SILVER AIRWAYS LLC, *et al.*[1]

        Debtors-in-Possession.

_____/

Chapter 11

Case No. 24-23623-PDR
(Jointly Administered)

**DEBTOR SILVER AIRWAYS LLC'S EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH TRANSACTION BY AUCTION; (II) SCHEDULING A HEARING TO CONSIDER THE TRANSACTION; (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (IV) APPROVING CONTRACT PROCEDURES; AND (V) GRANTING RELATED RELIEF**

**(Emergency Hearing Requested for May 7, 2025)**

**STATEMENT OF EXIGENT CIRCUMSTANCES**

Debtor Silver Airways LLC requests an emergency hearing in this matter on May 7, 2025. Without the immediate authorization to proceed with a sale process for its assets, Debtor Silver Airways LLC will be irreparably harmed. Silver Airways LLC needs to consummate sales of its assets pursuant to the schedule set forth herein to maintain the going concern, enterprise value of its business.

Silver Airways LLC ("Silver" or "the Debtor"), a debtor and debtor in possession in the above captioned case, by and through its undersigned counsel, files this motion (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit B** (the "Bid Procedures Order") with regard to the sale (the "Sale Transaction") of substantially all of Silver's assets (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SILVER AIRWAYS LLC (6766), and SEABORNE VIRGIN ISLANDS, INC. (1130). The mailing address and principal place of business of Silver is 2850 Greene Street, Hollywood, FL 33020. The mailing address and principal place of business of Seaborne is 2850 Greene Street, Hollywood, FL 33020.

"Assets"). Debtor Seaborne Virgin Islands, Inc. ("Seaborne" and, collectively with Silver, the "Debtors") is a wholly owned subsidiary of Silver and operates under its own Part 121 certificate. Neither the stock in Seaborne nor Seaborne assets are included in the Silver Sale Transaction and the Debtors anticipate finalizing negotiations with a purchaser for the Seaborne assets in the very near future. After finalizing definitive documentation for a sale of the Seaborne assets, the Debtors will file a separate motion to approve bid procedures and a sale process for Seaborne.

This Motion seeks entry of a Bid Procedures Order: (i) approving the procedures (the "Bidding Procedures") through which Silver will determine the highest or otherwise best price for the Sale Transaction, substantially in the form attached as **Exhibit 1** to the Bid Procedures Order, including the Bid Protection provisions as set forth in the bid letter dated as of May 2, 2025 between KIA II LLC, as purchaser (the "Silver Stalking Horse Purchaser"), and Silver, as seller (the "Bid Letter")[2]; (ii) scheduling a hearing for the approval of the Sale Transaction (the "Sale Hearing") and setting objection deadlines with respect to the Sale Transaction; (iii) approving the form and manner of notice of the Sale Transaction and related auction (the "Auction") for the Assets, substantially in the form attached as **Exhibit 3** to the Bid Procedures Order (the "Sale Notice"); (iv) establishing procedures to determine Cure Amounts (defined below) and deadlines for objections to the potential assumption and assignment of executory contracts and unexpired leases; and (v) granting related relief. In support of this Motion, Silver relies on the *Declaration of Steven A. Rossum in Support of Debtors' First Day Motions* [ECF No. 35] (the "First Day Declaration") and state as follows:

---

[2]  A copy of the Bid Letter is attached hereto as **Exhibit A.** Silver and the Silver Stalking Horse Purchaser are finalizing an Asset Purchase Agreement which incorporates the terms of the Bid Letter and anticipate filing the Asset Purchase Agreement with the Court in advance of the hearing on this Motion.

## DISCLOSURES UNDER BANKRUPTCY RULES, LOCAL RULES, AND GUIDELINES

Pursuant to Local Rule 6004-1(B), Silver submits the following summary of the material terms of the proposed Sale Transaction:

| | |
|---|---|
| Purchaser | Under the Bid Letter, an affiliate of KIA II LLC is the expected Silver Stalking Horse Purchaser that Silver expects to enter into an asset purchase agreement for Silver's Assets. |
| Price, warranties | The purchase price pursuant to the Bid Letter is equal to $5,775,000 and will be paid pursuant to a credit bid of the amount due to the Silver Stalking Horse Purchaser under the DIP Facility.[3] |
| Excluded assets | All assets of Seaborne, and the equity interests in Seaborne owned by Silver, are excluded from the Silver Sale Transaction. |
| Competitive bidding | The proposed sale of the Assets is subject to competitive bidding and, if necessary, an Auction. |
| Proposed hearing re: Motion for Bidding Procedures | May 7, 2025 |
| Service of Bid Procedures Order | 3 days from entry of Bid Procedures Order |
| Service of Contract Notice | 2 days from service of Bid Procedures Order |
| Bid Deadline | May 23, 2025 at 4:00 p.m. (ET) |
| Assumption/Assignment and Cure Objection Deadline | 14 days from service of Contract Notice |
| Auction (if necessary) | May 28, 2025 at 10:00 a.m. (ET) |
| Sale Objection Deadline | June 3, 2025 at 4:00 p.m. (ET) |
| Minimum Bid | Each competitive bid must propose a purchase price equal to or greater than the aggregate of the sum of (i) the value of the Bid set forth in the Bid Letter executed by the Silver Stalking Horse Purchaser, as determined by the Debtor; (ii) (1) the Break-up Fee (5% of the Purchase Price) and (2) $250,000 (the initial overbid amount), in cash, and (iii) must obligate the Bidder to pay, to the extent provided in the Bid Letter, all amounts which the Silver Stalking Horse Purchaser under the Bid Letter has agreed to pay, including all Assumed Liabilities. |
| Overbid Amount | At the start of the Auction, the Debtors shall announce which Qualified Bid(s) is/are deemed to be the highest and best (each an "Auction Baseline Bid"). Any Overbid after the Auction Baseline Bid shall be made in increments valued at not less than $250,000 as determined by the Debtor. |

---

[3] Except where otherwise indicated, capitalized terms used but not defined in this Motion have the meanings ascribed to them in the Bid Letter or the Bidding Procedures, as applicable.

| | |
|---|---|
| Deadline to Serve a Post-Auction Notice | Promptly following conclusion of Auction, not later than 24 hours following conclusion of Auction |
| Proposed Sale Hearing | June 5, 2025 |
| Deadline to Close Sale Transactions | 14 days from entry of Sale Order |
| Adequate Assurance Objection (in event Stalking Horse Purchaser is not Successful Bidder) | On or before Sale Hearing |
| Bid Protections | The Silver Stalking Horse Purchaser is entitled to the Break-up Fee under the terms of the Bid Letter/ Silver Asset Purchase Agreement. No other party submitting an offer or Bid for the Assets or a Qualifying Bid shall be entitled to any expense reimbursement, breakup fee, termination or similar fee or payment. |
| Good Faith Deposit | Each Bid, other than by the Silver Stalking Horse Purchaser, must be accompanied by a deposit in the amount equal to ten percent (10%) of the Bid. |
| Transfer of Personally Identifiable Information | Silver maintains certain personally identifiable information with respect to its customers, and will take all appropriate measures to insure and maintain the confidentiality of such information in connection with the sale hereunder. |

## **RELIEF REQUESTED**

1.      By this Motion, Silver seeks entry of a Bid Procedures Order (i) approving the Bidding Procedures in connection with the solicitation and acceptance of higher and better bids, (ii) scheduling the Sale Hearing for June 5, 2025, and setting objection deadlines with respect to the Sale Transaction, (iii) approving the form and manner of notice of the Sale Transaction and related Auction, (iv) establishing procedures to determine Cure Amounts (defined below) and deadlines for objections to the potential assumption and assignment of executory contracts and unexpired leases, and (v) granting related relief.

2.      Silver requests that the Bid Procedures Order establish certain dates and deadlines, subject to extension and other modifications by Silver in its reasonable discretion.[4]

---

[4] Silver will promptly notify all known interested parties of any such extensions or modifications.

Such proposed dates and deadlines are set forth on **Exhibit 2** to the Bid Procedures Order.

## JURISDICTION AND VENUE

3.     The Bankruptcy Court for the Southern District of Florida (the "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

4.     Venue of these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The statutory predicates for the relief requested herein are sections 105, 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules").

## BACKGROUND

6.     On December 30, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.

7.     Each of the Debtors is operating its business and managing its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' Chapter 11 cases.

8.     Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' business and capital structure is set forth in detail in the First Day Declaration.

**A.     The Proposed Sale Transactions**

9.     Silver, in the exercise of its reasonable business judgment, has determined that the most effective way to maximize the value of the its estate for the benefit of its constituents was to seek bankruptcy protection and sell its business and assets through a Sale Transaction pursuant to section 363 of the Bankruptcy Code. The Sale Transaction is supported by Wexford Capital, LP and KIA II, LLC (collectively, "Wexford"), the Debtors' postpetition lender, and Brigade Agency Services LLC and Argent Funding, LLC, the Debtors' prepetition lenders.[5] In order to yield top dollar for the Assets, maintain the support of Silver's passengers and vendors, and maintain Silver's employee base, it is in the best interest of Silver and its estate to move expeditiously with a sale process, as discussed here.

**B.     Marketing of the Assets**

10.     Silver's management commenced an extensive marketing effort to sell its assets months prior to the Petition Date and has continued its efforts post-petition.  At least 75 potential purchasers have been contacted by the Debtors and no less than 20 parties have conducted due diligence to explore a purchase of the  Assets.  In addition to the Silver Stalking Horse Purchaser, Silver has continued and will continue to the deadline to submit bids to solicit Qualified Bids from Qualified Bidders. Silver anticipates that the marketing process may result in competing bids for the Assets being submitted by the proposed May 23, 2025 Bid Deadline. Silver believes that the solicitation process is a reasonable and sufficient period to solicit bids on the Assets given the current market. Silver believes that the marketing efforts will be sufficient to ensure the highest and best offer, particularly in light of its limited financing options and ongoing

---

[5] The Debtors were authorized to obtain postpetition financing from Wexford in the *Interim Order (i) Authorizing the Debtors to (a) Obtain Postpetition Financing on a Secured, Superpriority Basis and (B) Use Cash Collateral, (ii) Granting Adequate Protection, (iii) Scheduling a Final Hearing, (iv) Modifying 1110(A) Agreements With Certain Aircraft Lessors and (v) Granting Related Relief* [ECF No. 410].

cash needs. Further, Silver believes that a delayed process likely would lead to the deterioration of the operating performance of its business and the value of its assets.

11.     Silver also believes that the Bidding Procedures negotiated with the Silver Stalking Horse Purchaser will solicit the highest or otherwise best offer for the Assets under the circumstances of these Chapter 11 Cases.

## C.     Proposed Bidding Procedures

12.     Silver seeks to conduct an open and transparent sale process pursuant to which the winning bidder will enter into an asset purchase agreement, substantially reflecting the Bid Letter, for the purchase of substantially all of Silver's assets, free and clear of liens, claims and encumbrances, with such liens, claims and encumbrances attaching to the sale proceeds.

13.     The Bidding Procedures (as summarized below) were developed consistent with the Silver's need to proceed with an expedited sale process to preserve the going-concern value of its assets and the objective of promoting active bidding that will result in the highest or otherwise best offer for the Assets. Moreover, the Bidding Procedures reflect Silver's objective of conducting the Auction in a controlled, but fair and open, fashion that promotes interest in the Assets by financially-capable, motivated bidders who are likely to close the Sale Transaction.

14.     The following paragraphs in this section summarize key provisions of the Bidding Procedures, and are qualified in their entirety by reference to the actual Bidding Procedures.

    A.  <u>Break-up Fee</u>.  The Silver Stalking Horse Purchaser would be entitled to a Break-up Fee of 5% of the purchase price as set forth in the terms of the Bid Letter. Except for the Silver Stalking Horse Purchaser, no other party submitting an offer or Bid for the Assets or a Qualifying Bid shall be entitled to any expense reimbursement, breakup fee, termination or similar fee or payment.

    B.  <u>Participation Requirements</u>. To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "<u>Bid</u>"), and each party submitting such a Bid (each, a "<u>Bidder</u>"), must be determined by Silver to satisfy each of the following conditions:

7

1. <u>Good Faith Deposit</u>. Each bid, other than the Silver Stalking Horse Agreement, must be accompanied by a deposit in the amount equal to ten percent (10%) of the Bid to an interest-bearing segregated account to be identified and established by Silver (the "<u>Good Faith Deposit</u>"). The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing segregated accounts by Silver, but shall not become property of Silver's estate absent further order of the Court. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of a Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of two (2) business days after (a) the closing of the transaction with the Successful Bidder (defined herein), and (b) the Outside Backup Date. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

2. <u>Same or Better Terms</u>. The Bid must be on terms that are substantially the same or better than the terms of the Bid Letter, as determined by Silver, and the Bid must identify which assets the Bidder intends to purchase and include executed transaction documents (a "<u>Competing Transaction</u>"). Bidders may submit Bids on the Assets included in the Bid Letter or all of the Assets, and each Bid shall include a copy of the Bid Letter marked to show all changes requested by the Bidder. A Bid will not be considered as qualified for the Auction if (i) such Bid contains additional material representations and warranties, covenants, closing conditions, termination rights other than as may be included in the Bid Letter (it being agreed and understood that such Bid shall modify the Bid Letter as needed to comply in all respects with the Bid Procedures Order and will remove provisions that apply only to the Silver Stalking Horse Purchaser as the stalking horse bidder such as the Break-up Fee); (ii) such Bid is not received by Silver and the Silver Stalking Horse Purchaser in writing on or prior to the Bid Deadline, and (iii) such Bid does not contain evidence that the Person submitting it has received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby, including proof that the Good Faith Deposit has been made

3. <u>Corporate Authority</u>. The Bid must include written evidence reasonably acceptable to Silver demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction.

4. <u>Proof of Financial Ability to Perform</u>. The Bid must include written evidence that Silver reasonably concludes demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction and provide

adequate assurance of future performance under all contracts to be assumed and assigned in such Competing Transaction.

5. <u>Contingencies</u>. A Bid may not (i) contain representations and warranties, covenants, termination rights, financing, due diligence contingencies other than as may be included in the Bid Letter (it being agreed and understood that such Bid shall modify the Bid Letter as needed to comply in all respects with the Bid Procedures Order (including removing any termination rights in conflict with the Bid Procedures Order) and will remove provisions that apply only to the Silver Stalking Horse Purchaser as the stalking horse bidder, such as the Break-up Fee) or (ii) be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the Closing.

6. <u>Irrevocable</u>. A Bid must be irrevocable through the Auction, <u>provided, however</u>, that if such Bid is accepted as the Successful Bid or a Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

7. <u>Amount of Bid</u>. Each Bid must clearly show the amount of the purchase price. In addition, a Bid (a) must propose a purchase price equal to or greater than the aggregate of the sum of (i) the value of the Bid set forth in the Bid Letter executed by the Silver Stalking Horse Purchaser, as determined by Silver; (ii) (1) the dollar value of the Break-up Fee in cash, and (2) $250,000 (the initial overbid amount), in cash, and (iii) must obligate the Bidder to pay, to the extent provided in the Bid Letter, all amounts which the Silver Stalking Horse Purchaser under the Bid Letter has agreed to pay, including all Assumed Liabilities.

8. <u>Adequate Assurance of Future Performance</u>. Each Bid shall be accompanied by adequate assurance of future performance information (the "<u>Adequate Assurance Information</u>"), including (i) information about the Bidder's financial condition, such as federal tax returns for two years, current financial statements, or bank account statements, (ii) information demonstrating (in Silver's reasonable business judgment) that the Bidder has the financial capacity to consummate the proposed Competing Transaction, (iii) evidence that the Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) the identity and exact name of the Bidder (including any equity holder or other financial backer if the Bidder is an entity formed for the purpose of consummating the proposed Competing Transaction, and (v) such additional information regarding the Bidder as the Bidder may elect to include. By submitting a Bid, Bidders agree that Silver may disseminate their Adequate Assurance Information to affected contract counterparties in the event that Silver determines such bid to be a Qualified Bid.

C. <u>Bid Deadline</u>. Regardless of when a party qualifies as a Preliminarily Interested Investor, the following parties must receive a Bid in writing, on or before Friday, May 23, 2025 at 4:00 p.m. (Eastern Time) or such earlier date as may be agreed to by Silver (the "<u>Bid Deadline</u>"): (i) Silver, 2850 Greene Street, Hollywood, FL 33020 (Attn: Steven Rossum), and (ii) counsel to Silver, Smith, Gambrell & Russell, LLP, 1100 W. Peachtree Street, Suite 1000, Atlanta, Georgia 30309, Attn. Brian P. Hall, <u>bhall@sgrlaw.com</u>, and (iii) counsel to the Silver Stalking Horse Purchaser, Tucker, Arensberg, P.C., One PPG Place, Suite 1500, Pittsburgh, PA 15222 (Attn: Michael A. Shiner).

D. <u>Qualified Bid</u>. Silver will review each Bid received from a Bidder to determine, in its sole discretion, whether it meets the requirements set forth above. A Bid received from a Bidder before the Bid Deadline that meets the above requirements, as determined by Silver, shall constitute a "<u>Qualified Bid</u>," and such Bidder shall constitute a "<u>Qualified Bidder</u>." Silver shall inform Bidders whether or not their Bids have been designated as Qualified Bids no later than 48 hours after such Bids are received and shall contemporaneously inform the Silver Stalking Horse Purchaser of all Bids that Silver considers to be a Qualified Bid. Notwithstanding anything herein to the contrary, the Bid Letter submitted by the Silver Stalking Horse Purchaser shall be deemed a Qualified Bid, and the Silver Stalking Horse Purchaser is a Qualified Bidder for the Auction.

E. <u>Auction</u>. If one or more Qualified Bids (other than the Bid Letter submitted by the Silver Stalking Horse Purchaser) are received by the Bid Deadline, Silver will conduct an auction (the "<u>Auction</u>") to determine the highest and best Qualified Bid. If no Qualified Bid (other than the Bid Letter) is received by the Bid Deadline, no Auction shall be conducted and the Bid Letter shall be deemed to be the Successful Bidder. Only Qualified Bidders may participate in the Auction. Prior to the Auction, Silver shall provide copies of all Qualified Bids to all Qualified Bidders, including the Silver Stalking Horse Purchaser.

The Auction shall take place on Thursday, May 28, 2025 at 10:00 a.m. (Eastern Time) via an online video conference using Zoom, Teams, or another similar video conferencing platform or such other place and time or method as Silver shall notify all Qualified Bidders, including the Silver Stalking Horse Purchaser, counsel for the Silver Stalking Horse Purchaser, and other invitees in accordance with the Asset Purchase Agreements.

    1. <u>Silver Shall Conduct the Auction</u>. Silver and its professionals shall direct and preside over the Auction. At the start of the Auction, Silver shall announce which Qualified Bid(s) is/are deemed to be the highest and best (each an "<u>Auction Baseline Bid</u>"). Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or sale of the Assets.

Only the Silver Stalking Horse Purchaser, and any other Qualified Bidder, in each case, along with their representatives, will be entitled to make any Bids at the Auction.

The Silver Stalking Horse Purchaser shall have the last opportunity to bid after the receipt of any Overbids and before the next round of bidding commences.

2.  Terms of Overbids. An "Overbid" is any bid made at the Auction subsequent to Silver's announcement of an Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

    (i)  Minimum Overbid Increment

    Any Overbid after the Auction Baseline Bid shall be made in increments valued at not less than $250,000 as determined by Silver. Additional consideration in excess of the amount set forth in an Auction Baseline Bid may include cash and/or noncash consideration, and, in the case of a Bid by the Silver Stalking Horse Purchaser, a credit bid as set forth in the Bid Letter, plus a credit bid of the Break-up Fee.

    (ii) Remaining Terms Are the Same as for Qualified Bids.

    Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless Silver accepts a higher Overbid.

3.  Backup Bidder(s). Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction, as determined by Silver, in the exercise of its business judgment will be designated as a backup bidder (the "Backup Bidder"). The Backup Bidder(s) shall be required to keep its initial Bid (or if the Backup Bidder(s) submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 12:00 p.m. (Eastern Daylight Time) on the date that is twenty-one (21) days after the date of the Sale Hearing (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder (defined herein). Following the Sale Hearing, if the Successful Bidder (defined herein) fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder (defined herein), Silver may designate the Backup Bidder(s) to be the new Successful Bidder (defined herein), and Silver will be authorized, but not required, to consummate the transaction, with the Backup

Bidder(s) without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to Silver, and Silver specifically reserves the right to seek all available damages from the defaulting Successful Bidder (defined herein). The deposit(s) of the Backup Bidder(s) shall be held by Silver until the earlier of 24 hours after (i) the closing of the transaction with the Successful Bidder (defined herein) and (ii) the Outside Backup Date.

F.  <u>Additional Procedures</u>. Silver may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures or the Bid Letter.

G.  <u>Closing the Auction</u>. The Auction shall continue until Silver determines in its reasonable business judgment that there is a highest and best Qualified Bid at the Auction for the Assets (each a "<u>Successful Bid</u>" and each Bidder submitting such Successful Bid, a "<u>Successful Bidder</u>"). The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbids and the Successful Bidder has submitted fully executed sale and transaction documents memorializing the terms of the Successful Bid. Within 24 hours following conclusion of the Auction, Silver shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder(s) for the Assets and any applicable Backup Bidders. Silver shall not consider any Bids submitted after the conclusion of the Auction and any and all such Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

H.  <u>Sale Hearing</u>. Silver will seek a hearing (the "<u>Sale Hearing</u>") on or before Thursday, June 5, 2025 at which Silver will seek approval of the transactions contemplated by the Bid Letter or Asset Purchase Agreements with the Successful Bidder(s). Objections, if any, to the sale of the Assets to the Successful Bidder(s) and the transactions contemplated by the Bid Letter or Asset Purchase Agreement(s) must be in writing and filed with the Court no later than 4:00 p.m. (Eastern Time) on Tuesday, June 3, 2025.

15.  Except as otherwise provided in the Bid Letter, the Asset Purchase Agreement(s), the Bid Procedures Order or the Sale Order, Silver further reserves the right as it may reasonably determine to be in the best interest of its estate, to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bids are the highest and best proposals and which is the next highest and best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding

Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of Silver and its estates; (e) impose additional terms and conditions with respect to all potential bidders other than the Silver Stalking Horse Purchaser; (f) upon the written approval of the Silver Stalking Horse Bidder, extend the deadlines set forth herein; (g) upon the written approval of the Silver Stalking Horse Bidder, continue or cancel the Auction and/or Sale Hearing in open court without further notice.

16.     The Silver Stalking Horse Purchaser is a Qualified Bidder, and the Silver Stalking Horse Purchaser's bid  is a Qualified Bid.

**D.     Bid Protections**

17.     The Silver Stalking Horse Purchaser has requested (i) the Break-up Fee equal to the 5% of the Purchase Price (the "Break-up Fee"), payable to the Silver Stalking Horse Purchaser upon the terms and conditions set forth the Bid Letter, and (ii) a requirement that successive bids at the Auction only be permitted in minimum increments of $250,000 (the "Minimum Increment Amount," and, collectively with the Break-up Fee, the "Bid Protections"). The Break-up Fee would defray the significant out-of-pocket costs that the Silver Stalking Horse Purchaser has and is expected to incur in this process, and is warranted here in consideration of the Silver Stalking Horse Purchaser's substantial expenditure of time, energy and resources, and the benefits to Silver's estate of securing a "stalking horse" or guaranteed minimum bid and setting a floor price at the Auction.

**E.     Notice of Auction and Sale Transaction**

18.     Silver seeks to have the Auction commence on Thursday, May 28, 2025. Within three (3) days of the entry of the Bid Procedures Order, Silver will serve by first class mail, postage prepaid, or, for those parties who have consented to receive notice by the ECF system,

by ECF, copies of: (i) the Bid Procedures Order; and (ii) the Sale Notice, upon the following entities: (a) to the best knowledge of Silver's management, all entities that have expressed written interest in a sale transaction with respect to all or substantially all of the Assets within the past six (6) months; (b) all creditors or their counsel known to Silver to assert a lien (including any security interest), claim, right, interest, or encumbrance of record against all or any portion of the Assets; (c) the Office of the United States Trustee, Region 21; (d) counsel to the Silver Stalking Horse Purchaser; (e) counsel to Wexford; (e) counsel to Brigade Agency Services LLC and to Argent Funding, LLC; (f) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (g) all applicable federal, state and local taxing and regulatory authorities of Silver or recording offices or any other governmental authorities that, as a result of the sale of the Assets, may have claims, contingent or otherwise, in connection with Silver's ownership of the Assets or have any known interest in the relief requested by the Motion; (h) all known creditors of Silver, including the counterparties to any executory contract or unexpired lease of Silver (collectively, the "Sale Notice Parties"); provided, however, that to the extent email addresses are available for any of the foregoing parties, such parties may be served by email.

19.     Silver further requests, pursuant to Bankruptcy Rule 9014, that objections, if any, to the proposed Sale Transaction: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Florida, 299 East Broward Blvd, Room 112, Ft. Lauderdale, FL 33301, on or before 4:00 p.m. (Eastern Time) on June 3, 2025 (the "Sale Objection Deadline"); and (d) be served, so as to be received the same day as the objection is filed, on: (i) Silver, 2850 Greene Street, Hollywood, FL 33020 (Attn: Steven Rossum); (ii) counsel to Silver, Smith, Gambrell & Russell, LLP, 1100 W. Peachtree Street, Suite 1000, Atlanta, GA 30309, (Attn: Brian P. Hall),

bhall@sgrlaw.com; (iii) counsel to the Silver Stalking Horse Purchaser, Tucker, Arensberg, P.C., One PPG Place, Suite 1500, Pittsburgh, PA 15222 (Attn: Michael A. Shiner); (iv) counsel for Wexford, (a) Markowitz Ringel Trusty & Hartog, P.A., 101 NE Third Avenue, Suite 1210, Fort Lauderdale, FL 33301 (Attn: Ross R. Hartog), and (b) Tucker, Arensberg, P.C., One PPG Place, Suite 1500, Pittsburgh, PA 15222 (Attn: Michael A. Shiner); (v) counsel to Brigade Agency Services LLC, Nelson Mullins Riley & Scarborough, LLP, 100 S.E. 3rd Avenue, Suite 2700, Fort Lauderdale, FL 33394 (Attn: Frank P. Terzo), and to Argent Funding, LLC, Blank Rome LLP, One Logan Square, 130 N. 18th Street, Philadelphia, PA 19103 (Attn: Regina Kelbon and John Lucian); (vi) the Office of the United States Trustee, Region 21, 51 SW 1st Ave, Suite 1204, Miami FL (Attn: Mary Ida Townson and John Schank); and (vii) counsel to any statutory committee appointed in these Chapter 11 Cases, if any (collectively, the "Objection Recipients").

**F.      Provisions Relating to Executory Contracts and Unexpired Leases, Including Determination of Cure Amounts and Deadlines for Objection to Assumption and Assignment of All Contracts**

20.      Given the number of executory contracts and unexpired leases (collectively, the "Contracts") to which Silver is a party, Silver seeks to establish (a) procedures for determining the amounts, if any, Silver believes are owed to the counterparties to the Contracts to cure any defaults or arrears existing under the Contract (the "Cure Amounts"), and (b) the deadline for objections to the Cure Amounts and/or the proposed assumption and assignment of executory contracts and unexpired leases (collectively, the "Contract Procedures").

21.      Silver will promptly provide the Silver Stalking Horse Purchaser a schedule (the "Contracts Schedule") setting forth (i) each Contract to which Silver is a party or by which Silver is bound and that is used in or related to Silver's business or any of the Assets, (ii) all Cure Amounts (if any) for each such Contract, and (iii) a detailed description of each such contract.

22.     On or before two (2) business days after the service of the Bid Procedures Order, Silver shall serve by first-class mail or hand delivery the Contract Notice, substantially in the form attached as **Exhibit 4** to the Bid Procedures Order, on all non-Debtor parties to the Contracts Schedule. The Contract Notice shall identify the Contract Schedule and provide the Cure Amounts that Silver believes must be paid to cure all prepetition defaults under such Contracts.

23.     Any objection to the Cure Amount or to the assumption and assignment to the Silver Stalking Horse Purchaser, including with respect to adequate assurance of future performance of the Silver Stalking Horse Purchaser (collectively, a "Contract Objection"), must be filed with the Court no later than fourteen (14) days from service of the Contract Notice (the "Assumption/Assignment and Cure Objection Deadline"), and served, so as to be received the same day as the objection is filed, on the Objection Recipients (defined above).

24.     To facilitate a prompt resolution of (i) disputes relating to the Cure Amounts and (ii) any other objections relating to the assumption and assignment of the Contracts, Silver proposes the following procedures:

(a) Any Contract Objection must state the basis for such objection and state with specificity what Cure Amount the party to the Assigned Contract believes is acquired (in all cases with appropriate documentation in support thereof). If no Contract Objection is timely received, the Cure Amount set forth in the Contract Notice shall be controlling, notwithstanding anything to the contrary in the Assigned Contract or other documents as of the date of the Contract Notice. The Contract Notice shall also provide that the Contract Objection to any Cure Amount or assumption and assignment will be heard at the Sale Hearing or at a later hearing, as determined by the Silver Stalking Horse Purchaser. If a Successful Bidder that is not the Silver Stalking Horse Purchaser prevails at the Auction, then the deadline to object to assumption and assignment (solely on the grounds of adequate assurance of future performance) shall be extended to the Sale Hearing, provided, however, that the deadline to object to the Cure Amount shall not be extended.

(b) Unless a non-Debtor party to any Assigned Contract files an objection to the Cure Amount by the applicable objection deadline, then such counterparty shall be:

(a) forever barred from objection to the Cure Amount, and

(b) forever barred and estopped from asserting or claiming any Cure Amount, other than the Cure Amount on the schedule of the Contract Notice, against Silver, the Stalking Horse Purchaser, or any Successful Bidder or any other assignee of the relevant contract or lease.

- Unless a non-Debtor party to any Assigned Contract files a timely objection to the assumption and assignment of the contract to the Silver Stalking Horse Purchaser or the other Successful Bidder, then such counterparty shall be deemed to have consented to the assumption and assignment to the Silver Stalking Horse Purchaser.

*Designation by the Silver Stalking Horse Purchaser of other Qualified Bidder*

25.     No later than the Closing Date, the Silver Stalking Horse Purchaser shall make a final designation regarding each Contract on the Contracts Schedule as "Assumed," "Rejected," or "Held," by delivering notice to Silver.

26.     Each Qualified Bidder, other than the Silver Stalking Horse Purchaser, shall, by delivering written notice to Silver on the Bid Deadline, designate each Contract on the Contracts Schedule it wishes to be an Assigned Contract.

**BASIS FOR RELIEF**

I.     **Approval of the Bidding Procedures Is Appropriate and in the Best Interests of Silver's Estate and Its Creditors.**

*(1)  The Bidding Procedures Are Appropriate under the Circumstances.*

27.     Maximization of proceeds received by the estate is one of the dominant goals of any proposed sale of estate property. *See In re Mushroom Transp. Co.,* 382 F.3d 325, 339 (3d Cir. 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets"). In the hope of maximizing the value received by the estate, courts typically establish procedures that are intended to enhance competitive bidding by, among other things, setting forth the rules that will govern the auction process. *See, e.g., In re Fin. News Network, Inc.,* 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets ... [should]

provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates"); *In re Edwards,* 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) (bid procedures should allow for "an open and fair public sale designed to maximize value for the estate").

28.    Silver believes that the Bidding Procedures represent a valid and reasonable exercise of its business judgment because they are designed to maximize the value received for the Assets and prevent any chilling of potential bids by establishing a transparent, competitive and fair bidding process. Courts have consistently held that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See, e.g., In re Innkeepers USA Trust*, 448 B.R. 131, 146 (Bankr. S.D.N.Y. 2011) ("the Debtors have appropriately exercised their business judgment in determining to... propose the revised Bidding Procedures"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656-7 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"). The process set forth in the Bidding Procedures allows for a timely and efficient auction process given the circumstances facing Silver, while providing bidders with ample time and information to submit a timely bid and perform diligence. The Bidding Procedures are designed to ensure that the Assets will be sold for the highest or otherwise best possible purchase price by subjecting the value of the Assets to market testing and permitting prospective Buyers to bid on the Assets. Accordingly, Silver and all parties-in-interest can be assured that the consideration received for the Assets will be fair and reasonable and that the proposed Bidding Procedures will not chill bidding by any Potential Bidders.

29.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing value and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., Integrated Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Liberty Power Holdings, LLC*, Case No. 21-13797-SMG (Bankr. S.D. Fla. Aug. 26, 2021); *In re Aventura Hotel Properties, LLC*, Case No. 21-12374-BKC-RAM, (Bankr. S.D. Fla. July 29, 2021); *In re Ruden McClosky P.A.*, 2011 WL 13507121, at *2 (Bankr. S.D. Fla. Apr. 12, 2011) (approving bidding procedures that "are reasonably designed to maximize the value to be achieved" for the assets subject to the sale); *In re Dunhill Entities, L.P.*, 2010 WL 6982623, at *1 (Bankr. S.D. Ala. Apr. 13, 2010) (approving bidding procedures that are "designed to maximize the Debtors' recovery on the Assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets... [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

30.     In sum, Silver believes that the proposed Bidding Procedures provide an appropriate framework for expeditiously establishing that Silver is receiving the best and highest offer for the Assets. Accordingly, the proposed Bidding Procedures are reasonable, appropriate and within Silver's sound business judgment under the circumstances.

*(2)  The Overbid Protections Are Appropriate under the Circumstances.*

31.     The Bid Requirement that each Bid must be made in increments valued at not less than $250,000 as determined by Silver, where additional consideration in excess of the amount set forth in an Auction Baseline Bid may include cash and/or noncash consideration, plus a credit

bid of the Bid Protections, is appropriate under the circumstances and will promote, rather than discourage, competitive overbidding at the Auction.

> *(3) The Break-up Fee, if Approved by the Court, Is an Actual and Necessary Cost of Preserving the Debtors' Estates.*

32.    The provision of bid protections in a bidding process is appropriate under section 363(b) of the Bankruptcy Code so long as such payment is a valid exercise of a debtor's business judgment by providing a benefit to a debtor's estate. *See In re Antaramian Properties*, 564 B.R. 762, 766 (M.D. Fla. 2016). Under section 363(b), debtors may use, sell, or lease estate property outside of the ordinary course of business so long as they articulate a sound business reason for doing so. *See, e.g., In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983).

33.    Silver submits that approval of the Break-up Fee is justified by the facts and circumstances of this case, whether considered under the business judgment rule or as an administrative expense of the estate. The Break-up Fee is a material inducement for, and condition of, the Silver Stalking Horse Purchaser's entry into the Bid Letter. The Silver Stalking Horse Purchaser put forth considerable time and resources to formulate the Bid Letter to serve as floor prices at the Auction and that, regardless of whether other Qualified Bids are received, will benefit Silver's estate. Silver believes that the Break-up Fee is fair and reasonable in view of (a) the analysis and negotiation undertaken by the Silver Stalking Horse Purchaser in connection with the transaction and (b) the fact that, if the Break-up Fee is triggered, the Stalking Horse Purchasers' efforts will have influenced the chances that Silver will receive the highest or otherwise best offer for the Assets to the benefit of all of Silver's stakeholders.

34.     The Break-up Fee is in line with bid protections typically approved by courts. *See, e.g., In re Liberty Power Holdings, LLC*, Case No. 21-13797-SMG (Bankr. S.D. Fla. Aug. 26, 2021) (approving 2.75% breakup fee plus expense reimbursement); *In re Protective Products of America, Inc., et al.*, No. 10-10711-JKO (Bankr. S.D. Fla. Jan. 19, 2010) (approving 4% break-up fee and expense reimbursement); *In re Arch Aluminum & Glass Co., Inc.*, 2011 WL 13501149, at *2 (Bankr. S.D. Fla. May 23, 2011) (approving 1.5% break-up fee plus expense reimbursement up to $800,0000); *In re Tousa, Inc.,* Case No. 08-10928-JKO (Bankr. S.D. Fla. Dec. 21, 2009) (approving 3% break-up fee); *In re Antaramian Properties*, 564 B.R. 762, 768 (M.D. Fla. 2016) (citing *In re Sea Island Co*. 2010 WL 4393269, at *3 (Bankr. S.D. Ga. Sept. 15, 2010), for the proposition that a 3% breakup fee "constituted a fair and reasonable percentage of the proposed purchase price"); *In re Just One More Restaurant Corp.*, Case No. 9:19-bk-1947 (Bankr. M.D. Fla. Feb. 25, 2020) (court approves break-up fee and expenses reimbursement representing 3.05% of the purchase price); *In re HRI Holding Corp.*, Case No. 19-12415 (MFW) (Bankr. D. Del. Dec. 5, 2019) (authorizing break-up fee and expense reimbursement of approximately 3.75% of purchase price related to the sale of the Houlihan's restaurant chain); *In re RM Holdco LLC*, Case No. 18-11795 (MFW) (Bankr. D. Del. Sept. 6, 2018) (authorizing break-up fee of 3% of the purchase price in the chapter 11 bankruptcy case involving one of the largest full service Mexican casual dining restaurant chains with 80 restaurants located throughout the United States); *In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (MFW) (Bankr. D. Del. May 7, 2018) (authorizing break-up fee and expense reimbursement of approximately 5.0% of purchase price).

35.     In recognition of the expenditure of time, energy and resources as well as the benefits to Silver's estate of securing a "stalking horse" or minimum bid and setting a floor price

at the Auction, promoting additional competitive bidding and by increasing the likelihood that the ultimate sale price will reflect the true value of the Assets, Silver submits that approval of the Bid Protections is warranted.Silver's ability to offer these Bid Protections enables Silver to ensure the sale of the Assets to a contractually-committed bidder at a price Silver believes to be fair while, at the same time, providing Silver with the potential of a greater return to its estate. Moreover, the Silver Stalking Horse Purchaser has spent, and likely will continue to spend, considerable time, money and energy pursuing the Sale Transaction and has engaged in extended and lengthy good faith negotiations under stressful time pressures.

36.     The Debtors and the Silver Stalking Horse Purchaser each have acted in good faith throughout this process. The amount of the Break-up Fee of is 5% of the Purchase Price (exclusive of the value of the assumption of the Assumed Liabilities). This amount is not so high that it would cause any chilling effect on other prospective buyers, and will have no adverse effect on any creditors. Pursuant to the Bid Letter, if Silver accepts an Alternative Transaction, the Break-up Fee shall be paid out of immediately available funds upon the closing of an Alternative Transaction – in which case the Silver Stalking Horse Purchaser's participation will have necessarily created value for Silver's estate in excess of the amount of the Break-up Fee. Absent authorization of the payment of the Break-up Fee, Silver might lose the opportunity to obtain the highest and best available offer for the Assets and the downside protection that will be afforded by the Bid Letter.

37.     The Silver Stalking Horse Purchaser has provided a material benefit to Silver and its creditors by increasing the likelihood that Silver will receive the best possible price for the Assets. Furthermore, approval of the Bidding Procedures, including the Bid Protections, is

required by the Bid Letter as a condition to the respective Stalking Horse Purchaser's obligation to proceed with the transactions contemplated in the Bid Letter.

38.     In light of the benefit to Silver's estate that will be realized by having a signed bid letter or purchase agreement, enabling Silver to preserve the value of its estate and promote more competitive bidding, ample support exists for the approval of the Bid Protections. Silver's payment of the Break-up Fee under the circumstances described herein is (i) an actual and necessary cost and expense of preserving Silver's estates, within the meaning of Bankruptcy Code section 503(b); (ii) of substantial benefit to Silver's estate; and (iii) reasonable and appropriate in light of the efforts and the significant due diligence costs and expenses that have been and will be expended by the Silver Stalking Horse Purchaser. Thus, Silver requests that the Court approve and authorize payment of the Break-up Fee pursuant to the terms of the Bid Letter.

*(4) The Form and Manner of the Notice and Related Sale Transaction Deadlines Should Be Approved.*

39.     Silver submits that the Sale Objection Deadline is reasonable and appropriate under the circumstances. Pursuant to Bankruptcy Rule 2002(a), Silver is required to provide creditors with twenty-one (21) days' notice of the proposed sale. Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to the relief requested herein. As noted above, the proposed Sale Hearing on or around June 5, 2025 (subject to this Court's availability) is more than twenty-one (21) days from notice of this Motion (and service of the Sale Notice). Parties in interest will receive notice of the Sale Objection Deadline and time and place of the Auction when the Sale Notice is served after entry of the Bid Procedures Order. As such, Silver submits that the proposed Sale Objection Deadline meets the requirements of the Bankruptcy Rules and the Local Rules.

40.     Silver also submits that the notice to be provided through the Sale Notice and the method of service proposed herein fully comply with the requirements set forth in Bankruptcy Rule 2002 and constitute good and adequate notice of the Bidding Procedures and the subsequent proceedings related thereto, including the proposed dates for (a) the Bid Deadline; (b) the Sale Objection Deadline; (c) the Contract Objection Deadline; and (d) the Sale Hearing. Therefore, Silver respectfully requests the Court approve the proposed notice procedures.

*(5)  The Contract Procedures Provide Adequate Notice and Opportunity to Object and Should Be Approved.*

41.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). Silver respectfully submits that the proposed Contract Procedures are appropriate and reasonably tailored to provide the Contract Parties with adequate notice of the proposed assumption and assignment of the applicable Contract, as well as proposed Cure Amounts, if applicable. Such Contract Parties will then be given an opportunity to object to such notice. The Contract Procedures further provide that, in the event an objection is not resolved, the Court will determine related disputed issues (including any adequate assurance of future performance issues). Accordingly, Silver submits that implementation of the proposed Contract Procedures is appropriate in these Chapter 11 Cases.

42.     The Contract Procedures comport with the requirements of Bankruptcy Code section 365 (as described fully below) and Bankruptcy Rule 6006, and the non-Debtor contract counterparties' rights to adequate assurance are unaffected and fully preserved. Silver respectfully submits that the notices required by the Contract Procedures are sufficient to assume and assign the Assumed Contracts because they are reasonably tailored to provide notice and an

opportunity to object to the proposed assumption and assignment. Thus, Silver submits that the Contract Procedures should be approved.

### REQUEST FOR RELIEF UNDER BANKRUPTCY RULES 6004(h) AND 6006(d)

43.     Bankruptcy Rule 6004(h) provides that "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property … is stayed for 14 days after the order is entered." Similarly, Bankruptcy Rule 6006(d) provides that an "[u]nless the court orders otherwise, an order authorizing the trustee to assign an executory contract or unexpired lease … is stayed for 14 days after the order is entered." Silver requests that the Bid Procedures Order be effective immediately by providing that the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

44.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Banks. P. 6004(h) and 6006(d). Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, Collier on Bankruptcy suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 9A Collier on Bankruptcy P. 6004.11 (16th Ed. 2025). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the Court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id*.

### NOTICE AND NO PRIOR REQUEST

45.     Notice of this Motion has been given to the following parties, or in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee, Region 21; (b)Silver's

creditors holding the twenty (20) largest unsecured claims as set forth in the consolidated list filed with Silver's petitions; (c) the Silver Stalking Horse Purchaser; (c) Wexford; (d) Brigade Agency Services LLC and Argent Funding LLC; (e) the United States Trustee; (f) all applicable federal, state and local taxing and regulatory authorities of the Debtors; and (g) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of relief requested in this Motion, Silver respectfully submits that no further notice is necessary.

46.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, Silver respectfully requests that the Court (a) enter the Bid Procedures Order in substantially the form attached hereto, (i) approving the Bidding Procedures in connection with the solicitation and acceptance of higher and better bids, including the Bid Protections, with respect to the Sale Transaction, (ii) scheduling the Sale Hearing and setting objection deadlines with respect to the Sale Transaction, (iii) approving the form and manner of notice of the Sale Transaction and related Auction, (iv) establishing procedures to determine Cure Amounts and deadlines for objections to the potential assumption and assignment of executory contracts and unexpired leases, and (b) granting such other and further relief as is just and proper.

Dated: May 2, 2025

**SMITH, GAMBRELL & RUSSELL, LLP**

By: */s/ Brian P. Hall*
Brian P. Hall
Florida Bar No.: 0070051
Michael F. Holbein
Florida Bar No. 1033402
bhall@sgrlaw.com
mholbein@sgrlaw.com
1105 W. Peachtree Street NE, Suite 1000
Atlanta, GA 30309
Phone: (404) 815-3537
Facsimile: (404) 685-6837

*Attorneys for Debtors and Debtors in Possession*

# Exhibit A

# Silver Bid Letter



**Brandon S. O'Connor**
**boconnor@tuckerlaw.com**
**717-221-79837950**

May 2, 2025

<u>*Via Electronic Mail*</u>

Smith, Gambrell & Russell, LLP
Brian P. Hall
Michael F. Holbein
1105 W. Peachtree Street NE, Suite 1000
Atlanta, Georgia 30309

Re:    *In re Silver Airways LLC, et al.*
       Bankr. Case No. 24-23623
       United States Bankruptcy Court for the Southern District of Florida
       <u>Bid of KIA II LLC</u>

Gentlemen:

Tucker Arensberg, P.C. is counsel to KIA II LLC ("**KIA**"). We are authorized to submit this bid on behalf of KIA. If the successful bidder, KIA intends to designate a to-be-formed special purpose entity as the ultimate purchaser of the assets (KIA and such designee, collectively the "**Bidder**").

Silver Airways LLC ("**Silver**") and Seaborne Virgin Islands, Inc. ("**Seaborne**" and together with Silver, the "**Debtors**") have bankruptcy cases pending in the United States Bankruptcy Court for the Southern District of Florida, jointly administered at Case No. 24-23623 (the "**Bankruptcy Case**").  This bid is submitted pursuant to the [Insert Title of Order] (the "**Bid Procedures Order**") entered at Doc. No. [_] in the Bankruptcy Case.

Bidder submits this Bid[1] on the assumption that a separate Stalking Horse Bidder will be designated for the purchase of the Seaborne assets. Likewise, and on that assumption, Bidder submits this Bid to purchase certain assets of Silver (the "**Silver Assets**") as more specifically set forth in the forthcoming Silver Asset Purchase Agreement (the "**APA**"). The Bid specifically excludes all assets of Seaborne and those assets of Silver specified in the APA as excluded assets (specifically excluding 50% of the proceeds from all causes of action arising out of or relating to the Silver Assets and accruing or arising on or prior to the Closing Date). The Purchase Price (as will defined in the APA) is Five Million, Seven Hundred Seventy-Five Thousand Dollars ($5,775,000.00)(which represents the principal and exit fee of the DIP Facility) *plus* all other obligations, fees and reimbursements owed to KIA under the DIP Facility.

As part of the Bid, Bidder requires to be designated as the Stalking Horse Bidder with the following Bid Protections: (i) a Breakup Fee equal to 5% of the Purchase Price, and (ii) a requirement that successive bids at Auction only be permitted in minimal increments of $250,000.00.

If Bidder is not designated as the Stalking Horse Bidder, this bid is withdrawn and void.

---

[1] Capitalized terms not defined in this Bid shall have the meaning ascribed to them in the Bid Procedures Order.

**Identity of Bidder**

The Bidder is KIA II LLC, a Delaware limited liability company, and its affiliated to-be-formed special purpose entity.  Bidder has no relationship with the Debtors, except that it is the DIP Lender in the Bankruptcy Case.  The officers and authorized agents of the Bidder who will appear on behalf of the Bidder are: (i) Michael A. Shiner, Tucker Arensberg, P.C.; (ii) Arthur Amron, and (iii) Wayne Heller.

**Irrevocable Offer**

The Bidder's offer, if accepted by the Debtors at the Auction, will become irrevocable upon agreement on the terms of the APA by Bidder and Debtors and finalized APA being filed with the Court. Once irrevocable, the Bid shall remain irrevocable until the conclusion of the Sale Hearing, subject to the terms of the Bidding Procedures with respect to the irrevocability of any Successful Bid. The Bidder has not engaged in any collusion or bad faith with respect to the bidding or sale process.  The Bidder consents to the jurisdiction of the Bankruptcy Court.

This Bid is not conditioned upon the receipt of any third-party approvals or consents (excluding required Court approval and required governmental, licensing, or regulatory approval or consent, if any), including without limitation the appropriate corporate consents of Bidder. With respect to any governmental, licensing, permitting, or other regulatory approvals or consents, all such approvals or consents that are required to consummate the proposed transaction will be set forth in the APA.  Bidder shall diligently pursue all governmental, licensing, permitting, or other regulatory approvals or consents that are required to consummate the proposed transaction, but if Bidder is unable to obtain such approvals/consents, Bidder shall not be obligated to close on the purchase of the Silver Assets.

**Asset Purchase Agreement**

Bidder's draft of the APA will be provided to Debtor's counsel promptly.  To the extent of any inconsistency between this Bid and the APA, the provisions of the APA will control.  The APA will contain a commitment to close upon the latter of: (i) the Bankruptcy Court's order approving the sale (the "**Sale Order**") in a form reasonably satisfactory to the Bidder becoming final and non-appealable, and (ii) all of Purchaser's conditions precedent under the APA being satisfied (including but not limited to appropriate regulatory approval) or waived by Purchaser.  Bidder has received all appropriate corporate authorization to submit this Bid on the terms set forth herein.

**Hand Money Deposit**

As the DIP Lender, the DIP Facility shall serve as Bidder's purchase deposit, and no additional deposit shall be required.

**Proof of Ability to Close**

Bidder, as the DIP Lender under the DIP Loans, has financed total principal consideration of $5,500,000.00, a $275,000.00 exit fee, and the other obligations, fees and reimbursements set forth in DIP Loan documents. All such indebtedness will be utilized as credit toward the Purchase Price.

**Executory Contracts & Unexpired Leases**

As will be set forth in APA, Bidder shall have the right to assume or reject executory contracts and unexpired leases up until the Closing Date and shall not be required to file a list of the executory contracts and unexpired leases to be assumed and assigned until the date prior to the Closing Date.  Bidder shall have the right to negotiate all cure costs and adequate assurance of future performance with the counterparty to any executory contract or unexpired lease to be assumed and assigned in connection with the sale.  Bidder designates Arthur Amron (aamron@wexford.com) and Wayne Heller (Wheller@flysterling.com) to be available to counterparties of any proposed assumed executory contracts and unexpired leases to obtain additional information.

**Agreements With Management or Key Personnel**

At this time, Bidder has no agreements with management or key employees regarding compensation or future employment.  Bidder reserves the right to engage in such discussions prior to the Closing Date.

**Due Diligence**

Bidder represents and warrants that it has had a full and fair opportunity to conduct any and all due diligence regarding the Debtors' business and the Silver Assets prior to submitting this Bid and has relied solely upon its own independent review, investigation, and/or inspection of relevant due diligence information and the Silver Assets in making this Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' business or the Silver Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in Bidder's modified proposed APA, if ultimately accepted and executed by the Debtors.

Kindly confirm to me that the Debtors accept this Bid as a Qualified Stalking Horse Bid and that Bidder is a Qualified Stalking Horse Bidder pursuant to the Bid Procedures Order.  Should you have any questions or wish to discuss this Bid further, please contact me immediately.

Very truly yours,

Very truly yours,

TUCKER ARENSBERG, P.C.

Brandon S. O'Connor


Cc: KIA II LLC, c/o Arthur Amron

# Exhibit B

# Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                                    Chapter 11

SILVER AIRWAYS LLC, *et al.*[1]

                                                          Case No. 24-23623-PDR
                                                          (Jointly Administered)

            Debtors-in-Possession.

_____/

**ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH**
**TRANSACTION BY AUCTION; (II) SCHEDULING A HEARING TO CONSIDER**
**THE TRANSACTION; (III) APPROVING THE FORM AND MANNER OF NOTICE**
**THEREOF; (IV) APPROVING CONTRACT PROCEDURES; AND**
**(V) GRANTING RELATED RELIEF**

*Debtor Silver Airways LLC's Emergency Motion for Entry of an Order (i) Approving*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SILVER AIRWAYS LLC (6766), and SEABORNE VIRGIN ISLANDS, INC. (1130). The mailing address and principal place of business of Silver is 2850 Greene Street, Hollywood, FL 33020. The mailing address and principal place of business of Seaborne is 2850 Greene Street, Hollywood, FL 33020.

*Bidding Procedures in Connection with Transaction by Auction; (ii) Scheduling a Hearing to Consider the Transaction; (iii) Approving the Form and Manner of Notice Thereof; (iv) Approving Contract Procedures; and (v) Granting Related Relief* [ECF No. ____] (the "Motion") filed by Silver Airways LLC ("Silver" or "Debtor"), a debtor and debtor in possession in the above captioned case,[2] came before the Court for hearing on May 7, 2025; the Court, having reviewed the Motion and finding that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and (iv) notice of the Motion and hearing was sufficient under the circumstances, and after due deliberation having determined that the relief requested in the Motion is in the best interests of Silver, its estate, and its creditors, and good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED.

2.    All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits with prejudice.

3.    The Bidding Procedures, attached hereto as Exhibit 1, are hereby approved in their entirety, are incorporated by reference, and shall govern the bids and proceedings related to the Sale Transaction and the Auction, and the Bidding Procedures Key Dates, attached hereto as Exhibit 2, are hereby approved in their entirety. Silver is authorized to take any and all actions necessary to implement the Bidding Procedures.

---

[2] Seaborne Virgin Islands, Inc. ("Seaborne"), an affiliated debtor and debtor-in-possession, was not a party to the Motion, and neither the stock in Seaborne nor Seaborne assets are included in the Sale Transaction that is the subject of the Motion and this Order.

4.      Silver may sell the Assets and enter into the transactions contemplated by the Bid Letter by conducting an Auction in accordance with the Bidding Procedures.

5.      The Auction shall take place on May 28, 2025 at 10:00 a.m. (Eastern Time) via an online video conference using Zoom, Teams, or another similar video conferencing platform, or such other place and time as Silver shall notify all Qualified Bidders, including the Silver Stalking Horse Purchaser, counsel for the Silver Stalking Horse Purchaser, and other invitees in accordance with the Bid Letter. The Auction shall be conducted in accordance with the Bidding Procedures.

6.      The Sale Hearing shall be held before the Court on June 5, 2025 at__:__ a.m./p.m. (Eastern Time).

7.      Objections, if any, to the sale of the Assets and the Sale Transaction contemplated by the Bid Letter, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the local rules of the Court; (c) be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Florida, 299 East Broward Blvd, Room 112, Ft. Lauderdale, FL 33301, on or before 4:00 p.m. (Eastern Time) on June 3, 2025 (the "Sale Objection Deadline"); and (d) be served, so as to be received the same day as the objection is filed, on: (i) Silver, 2850 Greene Street, Hollywood, FL 33020 (Attn: Steven Rossum); (ii) counsel to Silver, Smith, Gambrell & Russell, LLP, 1100 W. Peachtree Street, Suite 1000, Atlanta, GA 30309, (Attn: Brian P. Hall), bhall@sgrlaw.com; (iii) counsel to the Silver Stalking Horse Purchaser, Tucker, Arensberg, P.C., One PPG Place, Suite 1500, Pittsburgh, PA 15222 (Attn: Michael A. Shiner); (iv) counsel for Wexford, (a) Markowitz Ringel Trusty & Hartog, P.A., 101 NE Third Avenue, Suite 1210, Fort Lauderdale, FL 33301 (Attn: Ross R. Hartog), and (b) Tucker, Arensberg, P.C., One PPG Place, Suite 1500, Pittsburgh, PA 15222 (Attn: Michael A. Shiner); (v) counsel to Brigade Agency

Services LLC, Nelson Mullins Riley & Scarborough, LLP, 100 S.E. 3rd Avenue, Suite 2700, Fort

Lauderdale, FL 33394 (Attn: Frank P. Terzo), and to Argent Funding, LLC, Blank Rome LLP,

One Logan Square, 130 N. 18th Street, Philadelphia, PA 19103 (Attn: Regina Kelbon and John

Lucian); (vi) the Office of the United States Trustee, Region 21, 51 SW 1st Ave, Suite 1204,

Miami FL (Attn: Mary Ida Townson and John Schank); and (vii) counsel to any statutory

committee appointed in these Chapter 11 Cases, if any (collectively, the "Objection Recipients").

8.    The notice, substantially in the form attached hereto as **Exhibit 3** (the "Sale

Notice") is hereby approved.

9.    On or before three (3) business days after entry of this Order, Silver will cause the

Sale Notice and this Order to be sent by first-class mail, postage prepaid, or, for those parties

who have consented to receive notice by the ECF system, by ECF, to the following: (a) to the

best knowledge of Silver's management, all entities that have expressed written interest in a sale

transaction with respect to all or substantially all of the Assets within the past six (6) months; (b)

all creditors or their counsel known to Silver to assert a lien (including any security interest),

claim, right, interest, or encumbrance of record against all or any portion of the Assets; (c) the

Office of the United States Trustee, Region 21; (d) counsel to the Silver Stalking Horse

Purchaser; (e) counsel to Wexford; (e) counsel to Brigade Agency Services LLC and to Argent

Funding, LLC; (f) all parties in interest who have requested notice pursuant to Bankruptcy Rule

2002; (g) all applicable federal, state and local taxing and regulatory authorities of Silver or

recording offices or any other governmental authorities that, as a result of the sale of the Assets,

may have claims, contingent or otherwise, in connection with Silver's ownership of the Assets or

have any known interest in the relief requested by the Motion; (h) the United States Attorney's

office for the Southern District of Florida; and (i) all known creditors of the Debtors, including

the counterparties to any executory contract or unexpired lease of the Debtors (collectively, the "Sale Notice Parties"); provided, however, that to the extent email addresses are available for any of the foregoing parties, such parties may be served by email.

10.     The notice, substantially in the form attached hereto as Exhibit 4 (the "Contract Notice"), of potential assumption and assignment of certain of Silver's executory contracts and unexpired leases to be listed in the Contract Notice (collectively, the "Scheduled Contracts"), is hereby approved.[3]

11.     On or before two (2) business days after the service of this Order, Silver shall serve by first class mail or hand delivery the Contract Notice on all non-Debtor parties to the Scheduled Contracts.  The Contract Notice shall identify the Scheduled Contracts and provide the cure amounts that Silver believes must be paid to cure all prepetition defaults under the Scheduled Contracts (each a "Cure Amount" and, collectively, the "Cure Amounts").

12.     Any objection to the Cure Amount or to the assumption and assignment to the Silver Stalking Horse Purchaser, including with respect to adequate assurance of future performance of the Silver Stalking Horse Purchaser (collectively, a "Contract Objection") must be filed with the Court no later than fourteen (14) days from service of the Contract Notice, and served, so as to be received the same day as the objection is filed, on the Objection Recipients (defined above).

> (a) Any Contract Objection must state the basis for such objection and state with specificity what Cure Amount the party to the Assigned Contract believes is acquired (in all cases with appropriate documentation in support thereof). If no Contract Objection is timely received, the Cure Amount set forth in the Contract Notice shall be controlling, notwithstanding anything to the contrary

---

[3] The Bid Letter provides that the Silver Stalking Horse Purchaser has the right to elect to have Silver assume and assign executory contracts and unexpired leases and that the Silver Stalking Horse Purchaser shall be responsible for payment of the cure costs after an executory contract or unexpired lease is designated for assumption and the assumption becomes effective.

in the Assigned Contract or other documents as of the date of the Contract Notice. The Contract Notice shall also provide that the Contract Objection to any Cure Amount or assumption and assignment will be heard at the Sale Hearing or at a later hearing, as determined by the Silver Stalking Horse Purchaser. If a Successful Bidder that is not the Silver Stalking Horse Purchaser prevails at the Auction, then the deadline to object to assumption and assignment (solely on the grounds of adequate assurance of future performance) shall be extended to the Sale Hearing, <u>provided, however, that the deadline to object to the Cure Amount shall not be extended</u>.

 i. Unless a non-Debtor party to any Assigned Contract files an objection to the Cure Amount by the applicable objection deadline, then such counterparty shall be (a) forever barred from objection to the Cure Amount, and (b) forever barred and estopped from asserting or claiming any Cure Amount, other than the Cure Amount on the schedule of the Contract Notice, against Silver, the Silver Stalking Horse Purchaser, or any Successful Bidder or any other assignee of the relevant contract or lease.

 *ii.* Unless a non-Debtor party to any Assigned Contract files a timely objection to the assumption and assignment of the contract to the Silver Stalking Horse Purchaser or the other Successful Bidder, then such counterparty shall be deemed to have consented to the assumption and assignment to the Silver Stalking Horse Purchaser.

13. The Silver Stalking Horse Purchaser is entitled to make any additional bids at the Auction in compliance with the Bid Procedures.

14. The Sale Hearing may be continued, from time to time, without further notice to creditors or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

15. The Bid Protections set forth in the Bid Letter are hereby approved and binding upon Silver and its estate. In connection therewith, Silver's obligation to pay the Break-up Fee as provided by the Bid Letter is hereby approved and shall survive termination of the Bid Letter and shall be payable solely as provided in the Bid Letter.. To the extent the Silver Stalking Horse Purchaser is entitled to the Break-up Fee in accordance with the Bid Letter, Silver shall pay the Break-up Fee directly to the Silver Stalking Horse Purchaser.

16.     Except for the Silver Stalking Horse Purchaser, no other party submitting an offer or Bid for the Assets or a Qualifying Bid shall be entitled to any expense reimbursement, break-up, termination or similar fee or payment.

17.     Except as otherwise provided in the Bid Letter or this Order, Silver further reserves the right as it may reasonably determine to be in the best interests of its estate:  (a) to determine which bidders are Qualified Bidders; (b) to determine which bids are Qualified Bids; (c) to determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) to reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of Silver and its estate; (e) to extend the deadlines set forth herein; (f) to continue or cancel the Auction and/or the Sale Hearing, upon the written consent of the Silver Stalking Horse Purchaser, in open court without further notice.

18.     All persons or entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of the Assets, the Auction, and any transaction contemplated herein.

19.     To the extent that any chapter 11 plan confirmed in this case or any order confirming any such plan or any other order in this case (including any order entered after any conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with, or derogates from the provisions of this Order, the provisions of this Order shall control.  Silver's obligations under this Order, the provisions of this Order and the portions of the Bid Letter pertaining to the Bidding Procedures shall survive any conversion of these cases to cases under chapter 7 of the Bankruptcy Code, confirmation of any plan of reorganization or

discharge of claims thereunder, and shall be binding upon Silver, a Chapter 7 trustee, the reorganized or reconstituted debtor, as the case may be, after the effective date of a confirmed plan or plans in Silver's case (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code).

20.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any other provisions of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

22.     Silver is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

23.     The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

# # #

Submitted by:

Brian P. Hall
Florida Bar No.: 0070051
Michael F. Holbein
Florida Bar No. 1033402
bhall@sgrlaw.com
mholbein@sgrlaw.com
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree Street NE
Suite 1000
Atlanta, GA 30309
Phone: (404) 815-3537
Facsimile: (404) 685-6837
*Attorneys for Debtors and Debtors in Possession*

*(Mr. Hall is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

**EXHIBIT 1**

## BIDDING PROCEDURES[1]

By the Motion dated May 2, 2025, Silver Airways, LLC ("Silver") sought approval of, among other things, the procedures through which it will determine the highest or otherwise best price for the sale of substantially all of its assets (the "Assets") described in the Asset Purchase Agreement dated as of May __, 2025 (the "Silver Asset Purchase Agreement") by and among KIA II, LLC as purchaser (the "Silver Stalking Horse Purchaser") and Silver, as seller, a copy of which is attached as Exhibit A to the Notice of Filing Asset Purchase Agreement dated May 5, 2025.

On May __, 2025 the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order (the "Bid Procedures Order"), which, among other things, authorized Silver to determine the highest or otherwise best price for the Assets through the process and procedures set forth below (the "Bidding Procedures").

Unless expressly indicated, the following Bidding Procedures apply to all bidders regardless of the phase of the Auction which the bidder intends to participate.

## Access to Diligence Materials

To participate in the bidding process and to receive access to due diligence (the "Diligence Material"), a party must submit to Silver an executed confidentiality agreement in the form and substance satisfactory to Silver and evidence demonstrating the party's financial capability to close a transaction involving some or all of the Assets (a "Competing Transaction") as determined by Silver.

A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Investor." All due diligence requests must be directed to Silver.

For any Preliminary Interested Investor who is a competitor of Silver or is affiliated with any competitor of Silver, Silver reserves the right to withhold any Diligence Materials that Silver, in its sole discretion, determines are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Investor.

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures (the "Motion").

## Bid Qualification Process

To be eligible to participate in the Auction (defined below), each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by Silver to satisfy each of the following conditions:

(a)     Good Faith Deposit: Each Bid, other than the bid submitted by the Silver Stalking Horse Purchaser,  must be accompanied by a deposit in the amount equal to ten percent (10%) of the Bid to an interest-bearing segregated account to be identified and established by Silver (the "Good Faith Deposit").

(b)     Same or Better Terms: The Bid must be on terms that are substantially the same or better than the terms of the Silver Asset Purchase Agreement, as determined by Silver and the Bid must identify which assets the Bidder intends to purchase and include executed transaction documents (a "Competing Transaction").  Each Bid shall include a copy of the Silver Asset Purchase Agreement marked to show all changes requested by the Bidder.  A Bid will not be considered as qualified for the Auction if (i) such Bid contains additional material representations and warranties, covenants, closing conditions, termination rights other than as may be included in the Silver Asset Purchase Agreement (it being agreed and understood that such Bid shall modify the Silver Asset Purchase Agreement as needed to comply in all respects with the Bid Procedures Order and will remove provisions that apply only to the Silver Stalking Horse Purchaser as the stalking horse bidder such as the Break-up Fee); (ii) such Bid is not received by Silver and the Silver Stalking Horse Purchaser in writing on or prior to the Bid Deadline, and (iii) such Bid does not contain evidence that the Person submitting it has received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby, including proof that the Good Faith Deposit has been  made.

(c)     Corporate Authority:  The Bid must include written evidence reasonably acceptable to Silver demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction.

(d)     Proof of Financial Ability to Perform:   The Bid must include written evidence that Silver reasonably concludes demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Competing Transaction. This provision does not apply to the SilverStalking Horse Purchaser, as the DIP Lender who provided the DIP Facility.

(e)     Contingencies: A Bid may not (i) contain representations and warranties, covenants, termination rights, financing, due diligence contingencies other than as may be included in the Silver Asset Purchase  Agreement (it being agreed and understood that such Bid shall modify the Silver Asset Purchase Agreement as needed to comply in all respects with the Bidding Procedures Order (including removing  any termination rights in conflict with the Bid Procedures Order) and will remove provisions that apply only to the Silver Stalking Horse Purchaser as the stalking horse bidder, such as the Break-up Fee or (ii) be conditioned on

obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the Closing.

(f)    Irrevocable:  A Bid must be irrevocable through the Auction, provided, however, that if such Bid is accepted as the Successful Bid or a Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

(g)    Bid Deadline.  Regardless of when a party qualifies as a Preliminarily Interested Investor, the following parties must receive a Bid in writing, on or before Friday, May  23, 2025 at 4:00 p.m. (Eastern Time) or such earlier date as may be agreed to by Silver (the "Bid Deadline"): (i) Silver Airways LLC, 2850 Greene Street, Hollywood, FL 33020 (Attn: Steven Rossum); (ii) counsel to Silver, Smith, Gambrell & Russell, LLP, 1100 W. Peachtree Street, Suite 1000, Atlanta, GA 30309, (Attn: Brian P. Hall), bhall@sgrlaw.com; (iii) counsel to the Silver Stalking Horse Purchaser, (a) Markowitz Ringel Trusty & Hartog, P.A., 101 NE Third Avenue, Suite 1210, Fort Lauderdale, FL 33301 (Attn: Ross R. Hartog), and (b) Tucker, Arensberg, P.C., One PPG Place, Suite 1500, Pittsburgh, PA 15222 (Attn: Michael A. Shiner),

(h)    Amount of Bid.  Each Bid must clearly show  the amount of the purchase price.  In addition, a Bid (a) must propose a purchase price equal to or greater than the aggregate of the sum of (i) the value of the Bid set forth in the Silver Asset Purchase Agreement, as determined by Silver; (ii) the dollar value of the Break-up Fee in cash, and (iii) $250,000 (the initial overbid amount), in cash and (b) must obligate the Bidder to pay, to the extent provided in the Silver Asset Purchase Agreement, all amounts which the Silver Stalking Horse Purchaser under the Silver Asset Purchase Agreement has agreed to pay, including all Assumed Liabilities.

(i)    Adequate  Assurance  of  Future  Performance.  Each Bid shall be accompanied by adequate assurance of future performance information (the "Adequate Assurance Information"), including (i) information about the Bidder's financial condition, such as federal tax returns for two years, current financial statements, or bank account statements, (ii) information demonstrating (in Silver's reasonable business judgment) that the Bidder has the financial capacity to consummate the proposed Competing Transaction, (iii) evidence  that the Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) the identity and exact name of the Bidder (including any equity holder or other financial  backer if the Bidder  is an entity  formed  for the purpose  of  consummating the proposed Competing Transaction, and (v) such additional information regarding the Bidder as the Bidder may elect to include.  By submitting a Bid, Bidders agree that Silver may  disseminate  their  Adequate  Assurance  Information  to  affected  contract counterparties in the event that Silver determines such bid to be a Qualified Bid.

Silver will review each Bid received from a Bidder to determine, in their sole discretion, whether it meets the requirements set forth above.  A Bid received from a Bidder before the Bid Deadline that meets the above requirements, as determined by Silver, shall constitute a "Qualified Bid," and such Bidder shall constitute a "Qualified Bidder."  Silver shall inform Bidders whether or not their Bids have been designated as Qualified Bids no later than 48 hours after such Bids are received and shall contemporaneously inform the Silver Stalking Horse Purchaser of all Bids that Silver consider to be a Qualified Bid.  Notwithstanding anything herein to the contrary, the Silver Asset Purchase Agreement shall be deemed a Qualified Bid, and the Silver Stalking Horse Purchaser is a Qualified Bidder for the Auction.

## Auction

If one or more Qualified Bids (other than the Silver Asset Purchase Agreement submitted by the Silver Stalking Horse Purchaser) are received by the Bid Deadline, Silver will conduct an auction (the "Auction") to determine the highest and best Qualified Bid.  If no Qualified Bid (other than the Silver Asset Purchase Agreement) is received by the Bid Deadline, no Auction shall be conducted and the Silver Stalking Horse Purchaser shall be deemed to be the Successful Bidder.  Only Qualified Bidders may participate in the Auction.  Prior to the Auction, Silver shall provide copies of all Qualified Bids to all Qualified Bidders, including the Silver Stalking Horse Purchaser.

The Auction shall take place on Thursday, May 28, 2025 at 10:00 a.m. (Eastern Daylight Time) via an online video conference using Zoom, Teams, or another similar video conferencing platform or such other place and time or method as Silver shall notify all Qualified Bidders, including the Silver Stalking Horse Purchaser, counsel for the Silver Stalking Horse Purchaser and other invitees in accordance with the Silver Asset Purchase Agreement.

(a)      Silver Shall Conduct the Auction.  Silver and their professionals shall direct and preside over the Auction.  At the start of the Auction, Silver shall announce which Qualified Bid(s) is/are deemed to be the highest and best (each an "Auction Baseline Bid").  Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or sale of Silver's assets.

Only Silver, the Silver Stalking Horse Purchaser, and any other Qualified Bidder, in each case, along with their representatives will be entitled to make any Bids at the Auction.

The Silver Stalking Horse Purchaser shall have the last opportunity to bid after the receipt of any Overbids and before the next round of bidding commences.

(b)      Terms of Overbids.  An "Overbid" is any bid made at the Auction subsequent to Silver's announcement of an Auction Baseline Bid.  To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(i)      Minimum Overbid Increment.

Any Overbid after the Auction Baseline Bid shall be made in increments valued at not less than [$250,000] as determined by Silver.  Additional consideration in excess of the amount set forth in an Auction Baseline Bid may include cash and/or noncash consideration, plus a credit bid of the Break-up Fee.

(ii)      Remaining Terms Are the Same as for Qualified Bids.

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply.  Any Overbid must remain open and binding on the Bidder until and unless Silver accepts a higher Overbid.

(c)      Backup Bidder(s).  Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction, as determined by Silver, in the exercise of its business judgment will be designated as a backup bidder (the "Backup Bidder").  The Backup Bidder(s) shall be required to keep its initial Bid (or if the Backup Bidder(s) submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 12:00 p.m. (Eastern Daylight Time) on the date that is twenty-one (21) days after the date of the Sale Hearing (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder (defined herein).  Following the Sale Hearing, if the Successful Bidder (defined herein) fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder (defined herein), Silver may designate the Backup Bidder(s) to be the new Successful Bidder (defined herein), and Silvre will be authorized, but not required, to consummate the transaction, with the Backup Bidder(s) without further order of the Bankruptcy Court.  In such case, the defaulting Successful Bidder's deposit shall be forfeited to Silver, and Silver specifically reserves the right to seek all available damages from the defaulting Successful Bidder (defined herein).  The deposit(s) of the Backup Bidder(s) shall be held by Silver until the earlier of 24 hours after (i) the closing of the transaction with the Successful Bidder (defined herein) and (ii) the Outside Backup Date.

(d)    <u>Additional Procedures.</u>  Silver may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures or the Silver Asset Purchase Agreement.

(e)    <u>Consent to Jurisdiction as Condition to Bidding.</u>  The S i l v e r Stalking Horse Purchaser and all Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Silver Asset Purchase Agreement, the Auction or the construction and enforcement of any documents related to a Competing Transaction.

(f)    <u>Closing the Auction.</u>  The Auction shall continue until Silver determines in their reasonable business judgment that there is a highest and best Qualified Bid at the Auction for the Assets (each a "<u>Successful Bid</u>" and each Bidder submitting such Successful Bid, a "<u>Successful Bidder</u>"). The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbids and the Successful Bidder has  submitted fully executed sale and transaction documents memorializing the terms of the Successful Bid.  Within 24 hours following conclusion of the Auction, Silver shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder(s) for the Assets and any applicable Backup Bidders.  Silver shall not consider any Bids submitted after the conclusion of the Auction and any and all such Bids shall be deemed  untimely and shall under no circumstances constitute a Qualified Bid.

## Bid Protections

The Silver Stalking Horse Purchaser is entitled to the Break-up Fee pursuant to the terms of the Silver Asset Purchase Agreement.

Except for the Silver Stalking Horse Purchaser, no other party submitting an offer or Bid for the Acquired  Assets or a Qualifying Bid shall be entitled  to any expense reimbursement, breakup fee, termination or similar fee or payment.

## Sale Hearing

Silver  will seek a hearing (the "Sale Hearing") on or before Thursday, June 5, 2025 at which Silver will seek approval of the transactions contemplated by the Asset Purchase Agreement with the Successful Bidder.  Objections, if any, to the sale of the Assets to the Successful Bidder and the transactions contemplated by the Asset Purchase Agreement must be in writing and filed with the Court no later than 4:00 p.m. (Eastern Time) on Tuesday, June 3, 2025.

## **Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest bearing segregated accounts by Silver, but shall not become property of Silver's estates absent further order of the Court. The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of a Backup Bidder shall be returned to such Backup Bidder on the date that is the earlier of two (2) business days after (a) the closing of the transactions with the Successful Bidders (defined herein) and (b) the Outside Backup Date. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

## **Reservation of Rights**

Except as otherwise provided in the Silver Asset Purchase Agreement, Bidding Procedures Order or the Sale Order, Silver further reserves the right as they may reasonably determine to be in the best interest of their estates, to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bids are the highest and best proposals and which is the next highest and best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of Silver and its estate; (e); (g) impose additional terms and conditions with respect to all potential bidders other than the Silver Stalking Horse Purchaser; (h) upon the written approval of the Silver Stalking Horse Bidder, extend the deadlines set forth herein; (i) upon the written approval of the Silver Stalking Horse Bidder, continue or cancel the Auction and/or Sale Hearing in open court without further notice;

7

**EXHIBIT 2**

**EXHIBIT 2**

**BIDDING PROCEDURES KEY DATES**

| | |
|---|---|
| Hearing re: Motion for Bidding Procedures | May 7, 2025 |
| Service of Bidding Procedures Order | 3 days from entry of Order |
| Service of Contract Notice | 2 days from service of Bidding Procedures Order |
| Bid Deadline | May 23, 2025 @ 4:00 p.m. |
| Assumption/Assignment and Cure Objection Deadline | 14 days from service of Contract Notice |
| Sale Objection Deadline | June 3, 2025 @ 4:00 p.m. (ET) |
| Auction | May 28, 2025 @ 10:00 a.m. |
| Sale Hearing | June  5, 2025 |
| Deadline to Close Sale | 14 days from entry to Sale Order |
| Adequate Assurance Objection (in event Stalking Horse Purchaser is not Successful Bidder) | On or before Sale Hearing |

**EXHIBIT 3**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

SILVER AIRWAYS LLC, *et al.*[1]

            Debtors-in-Possession.

_____/

Chapter 11

Case No. 24-23623-PDR
(Jointly Administered)

**NOTICE OF PROPOSED SALE,**
**BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

     **PLEASE TAKE NOTICE** that, on December 30, 2024, Silver Airways LLC ("Silver" or the "Debtor")), a debtor and debtor in possession in the above captioned case, filed a voluntary petition commencing its case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

     **PLEASE TAKE FURTHER NOTICE** that, on May ___, 2025, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order [ECF No. ____] (the "Bid Procedures Order")[2]:

    i.    approving proposed bidding procedures (the "Bidding Procedures"), attached as **Exhibit 1** to the Bid Procedures Order, by which Silver will solicit and select the highest or otherwise best offer for the sale of substantially all of Silver's assets (the "Assets") through one or more sales of the Assets (each, a "Sale Transaction")[3];

    ii.   approving the Bid Protections, as defined and described in the Bidding Procedures;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SILVER AIRWAYS LLC (6766), and SEABORNE VIRGIN ISLANDS, INC. (1130). The mailing address and principal place of business of Silver is 2850 Greene Street, Hollywood, FL 33020. The mailing address and principal place of business of Seaborne is 2850 Greene Street, Hollywood, FL 33020.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bid Procedures Order or the Bidding Procedures, as applicable.

[3] Seaborne Virgin Islands, Inc. ("Seaborne") is an affiliated debtor and debtor-in-possession. Neither the stock in Seaborne nor Seaborne assets are included in the Sale Transaction.

iii.    establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures");

iv.    approving the form and manner of the Sale Notice, attached as **Exhibit 3** to the Bid Procedures Order;

v.    approving the form and manner of the Contract Notice, attached as **Exhibit 4** to the Bid Procedures Order;

vi.    scheduling a date for an auction if Silver receives one or more Qualified Bids (the "Auction");

vii.    scheduling a hearing to approve one or more Sale Transactions, as necessary (the "Sale Hearing"); and

viii.    granting related relief.

**ALL INTERESTED OR POTENTIALLY AFFECTED PARTIES SHOULD CAREFULLY READ THE BIDDING PROCEDURES AND THE BID PROCEDURES ORDER.**

**PLEASE TAKE FURTHER NOTICE** that any party that wishes to take part in the sale process contemplated by the Bidding Procedures must submit a Bid for the Assets in accordance with the terms and conditions of the Bidding Procedures by **May 23, 2025 at 4:00 p.m. (Eastern Time)** (the "Bid Deadline").

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bid Procedures Order and the Bidding Procedures, if Silver receive more than one Qualified Bid for the Assets, Silver will conduct the Auction on **May 28, 2025 at 10:00 a.m. (Eastern Time)**, or such later time as Silver reasonably determines, via an online video conference using Zoom, Teams, or another similar video conferencing platform, or such other place and time as Silver shall notify all Qualified Bidders, including the Silver Stalking Horse Purchaser, counsel for the Silver Stalking Horse Purchaser, and other invitees in accordance with the Bid Letter or Asset Purchase Agreement. Silver has the right to adjourn or cancel the Auction at or prior to the Auction.

**PLEASE TAKE FURTHER NOTICE** that only Silver, Qualified Bidders, including the Silver Stalking Horse Purchaser, the U.S. Trustee, and/or other parties in interest that request permission and are granted permission from Silver to attend the Auction, in each case, along with their duly-authorized representatives, shall be entitled to attend the Auction, and only Qualified Bidders, including the Silver Stalking Horse Purchaser, shall be entitled to bid at the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of a Sale Transaction and the transfer of the Assets free and clear of all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code will be held before the Honorable Judge Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E. Broward Blvd., Courtroom 301, Fort Lauderdale, FL 33301 on **June 5, 2005 at ___ a.m./p.m. (Eastern Time)**. The Sale Hearing may be adjourned

from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Sale Transaction (each a "Sale Objection") must be filed no later than **June 3, 2025 at 4:00 p.m. (Eastern Time)** (the "Sale Objection Deadline"); *provided* that, notwithstanding the foregoing, any objections to the outcome of the Sale Transaction, the conduct of the Auction or designation or court-approval of the Successful Bid or Back-Up Bid, or Adequate Assurance Objections must be filed no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT A SALE OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE A SALE OBJECTION ON OR BEFORE THE APPLICABLE DEADLINE IN ACCORDANCE WITH THE ENTERED BID PROCEDURES ORDER MAY BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION TO THE SALE TRANSACTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE TRANSFERRED ASSETS OF SILVER'S ESTATE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS EFFECTED THEREUNDER.**

**PLEASE TAKE FURTHER NOTICE** that this Sale Notice is subject to the terms and conditions of the Bid Procedures Order, with the Bid Procedures Order controlling in the event of any conflict. Silver encourages parties in interest to review such document in its entirety. Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Bid Procedures Order, may make a written request to counsel to Silver, Smith, Gambrell & Russell, LLP, 1100 W. Peachtree Street, Suite 1000, Atlanta, Georgia 30309, Attn. Brian P. Hall, bhall@sgrlaw.com.

Copies of the Bidding Procedures, the Bid Procedures Order, and this Sale Notice may be examined by interested parties free of charge at the website established for these chapter 11 cases by the Debtors' court-approved noticing, claims, and solicitation agent, Kurtzman Carson Consultants, LLC d/b/a Verita Global, at https://veritaglobal.net/sa.

Dated: _____, 2025

**SMITH, GAMBRELL & RUSSELL, LLP**

By: */s/ Brian P. Hall*
Brian P. Hall
Florida Bar No.: 0070051
Michael F. Holbein
Florida Bar No. 1033402
bhall@sgrlaw.com
mholbein@sgrlaw.com
1105 W. Peachtree Street NE, Suite 1000
Atlanta, GA 30309
Phone: (404) 815-3537
Facsimile: (404) 685-6837

*Attorneys for Debtors and Debtors in Possession*

**EXHIBIT 4**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                              Chapter 11

SILVER AIRWAYS LLC, *et al.*[1]
                                                    Case No. 24-23623-PDR
                                                    (Jointly Administered)
                    Debtors-in-Possession.
_____/

**NOTICE OF (I) EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH A SALE OF DEBTOR SILVER AIRWAYS LLC'S ASSETS AND (II) PROPOSED CURE AMOUNTS WITH RESPECT THERETO**

> **YOU ARE RECEIVING THIS NOTICE OF (I) EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH A SALE OF DEBTOR SILVER AIRWAYS LLC'S ASSETS AND (II) PROPOSED CURE AMOUNTS WITH RESPECT THERETO (THIS "CONTRACT NOTICE") BECAUSE YOU MAY BE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH SILVER AIRWAYS LLC. PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.**

       **PLEASE TAKE NOTICE** that, on May ___, 2025, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order [ECF _____] (the "Bid Procedures Order")[2]:

    i.    approving proposed bidding procedures (the "Bidding Procedures"), attached as **Exhibit 1** to the Bid Procedures Order, by which Debtor Silver Airways LLC ("Silver") will solicit and select the highest or otherwise best offer for the sale of substantially all of its assets (the "Assets") through one or more sales of the Assets (each, a "Sale

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SILVER AIRWAYS LLC (6766), and SEABORNE VIRGIN ISLANDS, INC. (1130). The mailing address and principal place of business of Silver is 2850 Greene Street, Hollywood, FL 33020. The mailing address and principal place of business of Seaborne is 2850 Greene Street, Hollywood, FL 33020.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bid Procedures Order or the Bidding Procedures, as applicable.

Transaction")[3];

ii.     approving the Bid Protections, as defined and described in the Bidding Procedures;

iii.    establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures");

iv.     approving the form and manner of the Sale Notice, attached as **Exhibit 3** to the Bid Procedures Order;

v.      approving the form and manner of the Contract Notice, attached as **Exhibit 4** to the Bid Procedures Order;

vi.     scheduling a date for an auction if Silver receives one or more Qualified Bids (the "Auction");

vii.    scheduling a hearing to approve one or more Sale Transactions, as necessary (the "Sale Hearing"); and

viii.   granting related relief.

**PLEASE TAKE FURTHER NOTICE** that the Bid Procedures Order approves procedures for (i) the assumption of certain executory contracts and unexpired leases that Silver may seek to assume and assign to a Successful Bidder in connection with a Sale Transaction, if one occurs (collectively, the "Assigned Contracts") and (ii) the determination of related Cure Amounts (as defined below).

**PLEASE TAKE FURTHER NOTICE** that the Debtors are parties to numerous executory contracts and unexpired leases and hereby file this notice identifying (i) the Assigned Contracts, and (ii) the proposed amounts, if any, the Debtors believe are owed to the counterparties to the Assigned Contracts to cure any defaults or arrears existing under the Assigned Contract (the "Cure Amounts"), as set forth on **Exhibit 1** attached hereto. Other than the Cure Amounts listed on **Exhibit 1**, Silver is not aware of any amounts due and owing under the Assigned Contracts listed therein.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing is expected to be held before the Honorable Judge Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E. Broward Blvd., Courtroom 301, Fort Lauderdale, FL 33301 on **June 5, 2005 at ___ a.m./p.m. (Eastern Time)**. The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that the listing of an Assigned Contract on

---

[3] Seaborne Virgin Islands, Inc. ("Seaborne") is an affiliated debtor and debtor-in-possession. Neither the stock in Seaborne nor Seaborne assets are included in the Sale Transaction.

**Exhibit 1** does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease as contemplated by section 365(a) of the Bankruptcy Code or that Silver has any liability thereunder, and Silver expressly reserves all of their rights, claims, causes of action, and defenses with respect to the Assigned Contracts listed on **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that to the extent a counterparty to an Assigned Contract listed on this Contract Notice objects to the proposed assumption and assignment of the applicable Assigned Contract (other than an Adequate Assurance Objection (as defined below)) or the proposed Cure Amounts, if any, such counterparty must file an objection (a "Contract Objection") in accordance with the procedures described herein and in the Bid Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that all Contract Objections must (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Amounts are required, if any, (ii) include appropriate documentation in support thereof, and (iii) be filed no later than **_____, 2025 at ___ p.m. (Eastern Time)** (the "Contract Objection Deadline"), except as set forth below.

**PLEASE TAKE FURTHER NOTICE THAT IF A COUNTERPARTY TO AN ASSIGNED CONTRACT FILES A CONTRACT OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH HEREIN, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE SALE HEARING, THE AMOUNT TO BE PAID OR RESERVED WITH RESPECT TO SUCH OBJECTION WILL BE DETERMINED AT THE SALE HEARING, SUCH LATER HEARING DATE THAT SILVER DETERMINES IN ITS DISCRETION, OR SUCH OTHER DATE DETERMINED BY THE BANKRUPTCY COURT. ALL OTHER OBJECTIONS TO THE PROPOSED ASSUMPTION OR PROPOSED ASSUMPTION AND ASSIGNMENT OF SILVER'S RIGHT, TITLE, AND INTEREST IN, TO, AND UNDER THE ASSIGNED CONTRACTS WILL BE HEARD AT THE SALE HEARING.**

In the event the Silver Stalking Horse Purchaser is not the Successful Bidder, any objections to the ability of the Successful Bidder or Back-Up Bidder (as applicable) to provide adequate assurance of future performance (each, an "Adequate Assurance Objection") must be filed with the Bankruptcy Court on or before the date of the Sale Hearing (the "Adequate Assurance Objection Deadline"), or, if applicable, any later deadline established pursuant to the Bid Procedures Order and the procedures described below.

**PLEASE TAKE FURTHER NOTICE** that if the counterparty to an Assigned Contract does not timely file a Contract Objection that is consistent with the requirements set forth above by the Contract Objection Deadline (with respect to all objections other than Adequate Assurance Objections) or the Adequate Assurance Objection Deadline (with respect to Adequate Assurance Objections only), such counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract to a Successful Bidder, notwithstanding any provision or restriction on assumption or assignment in the Assigned Contract, and shall be forever barred from asserting any objection with regard to such assumption and assignment and/or Cure Amounts set forth in **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that although Silver has made a good-faith

effort to identify all Assigned Contracts that might be assumed and assigned in connection with a Sale Transaction, Silver or the Successful Bidder may identify certain other executory contracts that should be assumed and assigned in connection with a Sale Transaction. Accordingly, Silver has reserved the right, at any time before the closing of a Sale Transaction, to (i) supplement the list of Assigned Contracts on this Contract Notice with previously omitted Assigned Contracts in accordance with the definitive agreement for a Sale Transaction, (ii) remove an Assigned Contract from the list of contracts ultimately selected as an Assigned Contract that may be assumed and assigned in connection with a Sale Transaction, and/or (iii) modify the previously stated Cure Amounts associated with any Assigned Contract; *provided*, that up until the closing of the Sale Transaction, Silver may seek to reject any Assigned Contract if such Assigned Contract is not ultimately assigned to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that in the event that Silver supplements the list of Assigned Contracts or modifies the previously stated Cure Amounts for a particular Assigned Contract, Silver will promptly file and serve a revised Contract Notice on each counterparty affected. Such counterparties shall file any Contract Objections with respect to the revised Contract Notice not later than (a) the Contract Objection Deadline in the event that such Contract Notice was filed and served at least ten (10) days prior to the Contract Objection Deadline, and (b) seven (7) days from the date such supplemental or revised Contract Notice was filed and served in accordance with the above, in the event that such supplemental or revised Contract Notice was filed and served less than ten (10) days prior to the Contract Objection Deadline. In the event that a supplemental or revised Contract Notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing and an objection is filed that is not otherwise consensually resolved, then such objection will not be adjudicated at the Sale Hearing and will be set for a subsequent hearing.

**PLEASE TAKE FURTHER NOTICE** that this Contract Notice is subject to the terms and conditions of the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and Silver encourages parties in interest to review such document in its entirety. Parties with questions regarding the Assumption and Assignment Procedures contained herein should contact Silver's counsel, Smith, Gambrell & Russell, LLP, 1100 W. Peachtree Street, Suite 1000, Atlanta, Georgia 30309, Attn. Brian P. Hall, bhall@sgrlaw.com.

**PLEASE TAKE FURTHER NOTICE** that the inclusion of an Assigned Contract on this Contract Notice (or a revised Contract Notice) will not obligate Silver to assume any Assigned Contract listed thereon or the Successful Bidder to take assignment of such Assigned Contract and, as set forth above, Silver reserves the right to modify the list of Assigned Contracts in accordance with the Bid Procedures Order, including to remove executory contracts or unexpired leases from such list. Only those Assigned Contracts that are included on a schedule of assumed and assigned executory contracts and unexpired leases attached to the final Sale Transaction documentation with the Successful Bidder will be assumed and assigned to the Successful Bidder.

Dated: _____, 2025

**SMITH, GAMBRELL & RUSSELL, LLP**

By: */s/ Brian P. Hall* _____
Brian P. Hall
Florida Bar No.: 0070051
Michael F. Holbein
Florida Bar No. 1033402
bhall@sgrlaw.com
mholbein@sgrlaw.com
1105 W. Peachtree Street NE, Suite 1000
Atlanta, GA 30309
Phone: (404) 815-3537
Facsimile: (404) 685-6837

*Attorneys for Debtors and Debtors in Possession*

**Exhibit 1**

**Silver Contracts and Leases**

| Contract/Lease Counterparty | Contract or Lease | Cure Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |