**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                                    Chapter 11

SILVER AIRWAYS LLC                      Case No. 24-23623-PDR

　　　　　Debtor.

_____/

**NOTICE OF FILING REVISED ORDER APPROVING (I) THE SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, ENCUMBRANCES, AND OTHER INTERESTS, (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) RELATED RELIEF**

　　　　　PLEASE TAKE NOTICE that pursuant to the hearings held on June 4, 10, and 11 2025, on "*Debtor Silver Airways LLC's Emergency Motion for Entry of an Order (i) Approving Bidding Procedures in Connection with Transaction by Auction; (ii) Scheduling a Hearing to Consider the Transaction; (iii) Approving the Form and Manner of Notice Thereof; (iv) Approving Contract Procedures; and (v) Granting Related Relief*" (the "Sale Motion") [ECF 446], Argentum Acquisition Co. LLC files clean and blackline versions of the revised order on the Sale Motion attached as Exhibits "A" and "B", respectively.

**[THIS SPACE INTENTIONALLY LEFT BLANK]**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF to all counsel of record and interested parties registered to receive electronic noticing in this case on June 11, 2025.

Dated:  June 11, 2025

Respectfully submitted,

Markowitz Ringel Trusty & Hartog, P.A.
*Local Counsel*
101 NE Third Avenue, Suite 1210
Fort Lauderdale, Florida  33301
Tel:  (954) 767-0030

By: *s/ Ross R. Hartog*
      Ross R. Hartog, Esq.
      Florida Bar No. 564559
      Email: rhartog@mrthlaw.com

-    and    -

Tucker, Arensberg, P.C.
*Lead Counsel*
One PPG Place, Suite 1500
Pittsburgh, PA 15222
Main Tel. No. (412) 594-5586
Direct Dial Tel. No. (412) 378-3064
Michael A. Shiner, Esq
Email: mshiner@tuckerlaw.com

**EXHIBIT A**
**(Revised Order – Clean)**

*Silver Sale Order TAPC Draft Dated 6-11-2025*
*Subject to Client Review and Comment*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **SILVER AIRWAYS LLC, et al.** [1] | § | **Case No. 24-23623-PDR** |
| | § | **(Jointly Administered)** |
| Debtors-in-Possession. | § | |

**[PROPOSED] ORDER APPROVING (I) THE SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, ENCUMBRANCES, AND OTHER INTERESTS, (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) RELATED RELIEF**

This Court having considered *Debtor Silver Airways LLC's Emergency Motion for an Order (i) Approving Bidding Procedures in Connection with Transaction by Auction; (ii) Scheduling a Hearing to Consider the Transaction; (iii) Approving the Form and Manner of Notice Thereof; (iv) Approving Contract Procedures; and Granting Related Relief* [Doc. No. 446] (the "Motion"),[2] filed by debtor in possession, Silver Airways LLC ("Silver"), and upon the

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: SILVER AIRWAYS LLC (6766), and SEABORNE VIRGIN ISLANDS, INC. (1130). The mailing address and principal place of business of Silver is 2850 Greene Street, Hollywood, FL 33020. The mailing address and principal place of business of Seaborne is 2850 Greene Street, Hollywood, FL 33020.

[2] Capitalized terms used but not defined herein are defined in the Motion or, as applicable, the APA.

*Declaration of Steven A. Rossum in Support of Sellers First Day Motions* [Doc. No. 35 ] (the "First Day Declaration"), and the *Declaration of Steven A. Rossum in Support of Proposed Order Approving (I) The Sale Of Sellers' Assets Free And Clear Of Liens, Claims, Rights, Encumbrances, And Other Interests, (II) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Related Relief* [Doc. No. [566] (the "Sale Declaration"); and upon the *Order (I) Approving Bidding Procedures in Connection with Transaction by Auction; (ii) Scheduling a Hearing to Consider the Transaction; (iii) Approving the Form and Manner of Notice Thereof; (iv) Approving Contract Procedures; and Granting Related Relief* [Doc. No. 501] (the "Bidding Procedures Order") approving the procedures for bidding (the "Bidding Procedures") for the sale of the Acquired Assets, as defined in that certain Amended and Restated Asset Agreement, dated as of May 21, 2025 [Doc. No. 505] (as may be further amended or modified from time to time, including pursuant to the terms of this Sale Order, the "APA") between Argentum Acquisition Co. LLC. (the "Purchaser"), and Silver  ("Seller"); the Auction having been held in accordance with the Bidding Procedures Order; and the Stalking Horse Bidder, Purchaser, being the only bidder and therefore the Successful Bidder; and the sale hearing (the "Sale Hearing") having been held on June 4, 2025, June 10, and June 11, 2025 to consider the remaining relief requested in the Motion and approval of the Seller's entry into and performances under the APA; and appearances of all interested parties having been noted on the record of the Sale Hearing; and upon all of the proceedings had before this Court (including any testimony or other evidence proffered or adduced at the Sale Hearing); and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion and at the Sale Hearing is in the best interests of the Seller, the estate, creditors, and other parties in interest; and it appearing that proper and adequate notice of the relief requested by the

Motion has been given under the circumstances and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.    Jurisdiction.  This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  Approval of the Seller's entry into the APA and the transactions contemplated thereby (collectively the "Sale Transaction") is a core proceeding under 28 U.S.C. §§ 157(b)(2).

B.    Venue.  Venue of this Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

C.    Final Order.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

D.    Statutory Predicates.  The statutory predicates for the approval of the APA and Sale Transaction contemplated thereby are sections 105, 363, and 365 of the Bankruptcy Code, as supplemented by Rules 2002, 6004, 6006, and 9014 of the Bankruptcy Rules, and Local Rule 6004-1.

E.    Notice.  Proper, timely, adequate, and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 6006, and in compliance with the Local Rules and the Bidding Procedures Order, including to the Notice Parties (as defined below) as set forth in the *Certification of Service* [Doc. No. 532] filed on May 29, 2025.  The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice

---

[3] The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

of the Motion, the Sale Hearing, the APA, or the Sale Transaction is required.  The disclosures made by the Seller concerning the APA, the Sale Transaction, and the Sale Hearing were sufficient, complete, and adequate.

        F.    <u>Opportunity to be Heard</u>.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the Sale Transaction has been afforded to all interested persons and entities, including the following:  (i) the Office of the United States Trustee; (ii) counsel for the Brigade and Argent Funding, the Prepetition Lenders; (iii) those persons who have formally appeared and requested notice and service in this Case; (iv) all parties in interest who have requested notice pursuant to Bankruptcy Rule  2002; (v) the U.S. Department of Transportation and the Federal Aviation Administration; (vi) all applicable federal, state and local taxing and regulatory authorities or recording offices or any other governmental authorities that, as a result of the sale of the Acquired Assets, may have claims, contingent or otherwise, in connection with Silver's ownership of the Acquired Assets or have any known interest in the relief requested by the Motion; (vii) the United States Attorney's office for the Southern District of Florida; (viii) the Internal Revenue Service; (ix) all persons and entities known by the Seller to have asserted any lien, claim, interest, or encumbrance in the Seller's assets (for whom identifying information and addresses are available to the Seller) including, for the avoidance of doubt, any persons or entities who have the ability to exercise any approval rights, consent rights, preferential transfer rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, rights upon or related to any change of control, rights to restrict or change the Purchaser from becoming or continuing as an owner or operator of the Acquired Assets for any reason, or similar rights with respect to the Sale Transaction (such rights, solely as they may be exercised in connection with the Sale Transaction, collectively, "<u>Transfer Rights</u>"); (x) all non-Seller parties to any Assumed

Contract proposed to be assumed and assigned in connection with the Sale Transaction; (xi) all of the Seller's known creditors (for whom identifying information and addresses are known to the Seller); (xii) KIA II LLC and Wexford Capital, LP; and (xiii) all other persons and entities as directed by the Court (the parties listed in (i) through (xiii) collectively, the "Notice Parties"). Objections, if any, to the Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled.

G.      Marketing Process.  As demonstrated by (i) the First Day Declaration, the Sale Declaration, and (ii) the testimony and other evidence proffered or adduced at the hearing with respect to the approval of the bidding procedures held on May 28, 2025 (the "Bidding Procedures Hearing") and the Sale Hearing, (iii) the Sale Declaration and (iv) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, the Seller's and its advisors thoroughly marketed the Seller's assets (including the Acquired Assets) and conducted the marketing and sale process as set forth in and in accordance with the Motion and the Bidding Procedures Order.  Based on the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Seller's assets (including the Acquired Assets).

H.      Compliance with Bidding Procedures.  The Seller conducted a fair and open sale process in a manner reasonably calculated to produce the highest or otherwise best offer for the Acquired Assets in compliance with the Bidding Procedures Order.  The sale process and the Bidding Procedures were non-collusive, substantively and procedurally fair to all parties and to each person or entity entitled to participate in the Auction pursuant to the Bidding Procedures Order and each person or entity entitled to participate in the Auction pursuant to the Bidding Procedures Order was afforded notice and a full, fair, and reasonable opportunity to make a higher

or otherwise better offer for the Acquired Assets.  The Bidding Procedures, as they have been amended or modified, have been complied with in all material respects by the Seller and the Purchaser.

           I.      <u>Highest or Best Offer</u>.  In accordance with the Bidding Procedures, the Seller determined, in a valid and sound exercise of its business judgment, that the highest or otherwise best Qualified Bid for the Acquired Assets was that of the Purchaser.  The consideration provided by the Purchaser for the Acquired Assets provides fair and reasonable consideration to the Seller for the sale of the Acquired Assets and the assumption of all Assumed Liabilities, and the performance of the other covenants set forth in the APA will provide a greater recovery for the Seller's respective estates than would have been provided by any other available alternative.

           J.      <u>Business Judgment</u>.  The Seller's decision to (i) enter into the APA and all ancillary documents filed therewith or described therein, and (ii) perform under and make payments, if any, required by such APA, constitutes a reasonable exercise of sound business judgment consistent with the Seller's fiduciary duties and such decisions are in the best interests of the Seller's, the Bankruptcy estate, its creditors, and all other parties in interest.  Good and sufficient reasons for the approval of the APA and all ancillary documents filed therewith or described therein have been demonstrated by the Seller.  The Seller has established that compelling circumstances exist for the Sale Transaction outside: (i) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code; and (ii) a plan of reorganization, in that, among other things, the immediate consummation of the Sale Transaction is necessary and appropriate to preserve and maximize the value of the Seller's estate and to adhere to the terms of the Milestones (as defined in the DIP Orders).  To maximize the value of the Acquired Assets and adhere to the Milestones, it is essential that the Sale Transaction occur promptly.

K.    <u>Court Approval Required</u>.  Entry of an order approving and authorizing the Seller's entry into the APA (for the purposes described therein for each Seller) and the Seller's performance of all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the Sale Transaction.

L.    <u>Immediate Effectiveness of Sale Order</u>.  The Sale Transaction contemplated by the APA must be consummated immediately.  Based on the record of the Sale Hearing, and for the reasons stated on the record at the Sale Hearing and Bidding Procedures Hearing, and in the First Day Declaration, adherence to the Milestones and/or immediate closing is in the best interest of the Seller, its estate, creditors and all other parties in interest in this Bankruptcy Case. Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rule 4001(a), and pursuant to Bankruptcy Rule 6004(h), to permit the immediate effectiveness of this Sale Order.

M.    <u>Sale Free and Clear</u>. Except for the Assumed Liabilities, Permitted Exceptions, and Permitted Liens expressly provided for in the APA, a sale of the Acquired Assets other than one free and clear of liens, claims, defenses (including rights of setoff and recoupment) and interests, in each case, in, on, or related to the Acquired Assets, including, for the avoidance of doubt, any security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, dedications, deeds of trust, hypothecations, liens, including but not limited to mechanics' or materialman's liens,  encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, right of first refusal, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, conditions, equitable interests, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution,

indemnity or exoneration, successor, product, environmental, tax, labor, Employee Retirement Income Security Act of 1974 ("ERISA"), Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA"), alter ego and other liabilities, causes of action, contract rights and claims, community property interest, right of way or restriction of any kind to the fullest extent of the law, in each case, of any kind or nature in, on, or related to the Acquired Assets (including all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether prepetition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances"), and without the protections of this Sale Order would hinder the Seller's ability to obtain the consideration provided for in the APA and, thus, would impact materially and adversely the value that the Seller's estate would be able to obtain for the sale of such Acquired Assets.  But for the protections afforded to the Purchaser under the Bankruptcy Code and this Sale Order, the Purchaser would not have offered to pay the consideration contemplated in the APA.  In addition, each entity with an Encumbrance upon or Transfer Right associated with the Acquired Assets (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens), (i) has consented to the Sale Transaction or is deemed to have consented to the Sale Transaction, or (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances or Transfer Rights (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens)

who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Encumbrances are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by either having the claims secured by having their Encumbrances, if any, attach to the proceeds of the Sale Transaction, in the same order of priority and with the same validity, force, and effect that such Encumbrances had before the Sale Transaction, subject to any rights, claims, and defenses of the Seller or its estate, as applicable, or as otherwise provided herein.  Therefore, approval of the APA and the consummation of the Sale Transaction free and clear of Encumbrances and Transfer Rights (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens) is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Seller's estate, creditors, and other parties in interest.

N.      The recitation in the immediately preceding paragraph of this Sale Order of specific agreements, plans, or statutes is not intended, and shall not be construed, to limit the generality of the categories of liabilities, debts, commitments, or obligations referred to as "Encumbrances" therein.

O.      The Purchaser would not have entered into the APA and would not consummate the sale of Acquired Assets, thus adversely affecting the Seller, its estate, creditors, and other parties in interest, if such sale was not free and clear of all Encumbrances and Transfer Rights (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens).  A sale of the Acquired Assets, other than one free and clear of all Encumbrances (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens), would yield substantially less value for the Seller's estate, with less certainty than the Sale Transaction.  Additionally, the Purchaser would not have entered into the APA and would not consummate the sale of Acquired Assets if any

persons or entities were permitted to maintain and/or enforce any Encumbrance or exercise any Transfer Rights in connection with the Sale Transaction.

P.      Arm's-Length Sale.  The consideration to be paid by the Purchaser under the APA was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration for the Acquired Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and the laws of the United States, any state, territory, possession thereof or the District of Columbia.  The terms and conditions set forth in the APA and all ancillary documents filed therewith or described therein are fair and reasonable under these circumstances and were not entered into with the intent to, nor for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Seller or its creditors under any applicable laws.  Neither the Seller nor the Purchaser is entering into the APA and all ancillary documents filed therewith or described therein or proposing to consummate the Sale Transaction fraudulently, for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction.

Q.      Good Faith.  The Seller and its management, board of directors or equivalent governing body, officers, directors, employees, agents, members, managers, and representatives, and the Purchaser and its management, board of directors or equivalent governing body, officers, directors, employees, agents, members, managers, and representatives actively participated in the bidding process and respectively acted in good faith.  The APA was negotiated and entered into among the Purchaser and the Seller based upon arm's-length bargaining, without collusion or fraud, and in good faith as that term is used in section 363(m) of the Bankruptcy Code.

The Purchaser is entering into the Sale Transaction in good faith and is a good faith purchaser for value within the meaning of section 363(m) of the Bankruptcy Code and the court decisions applying or interpreting such provision, and is therefore entitled to the full protection of section 363(m) of the Bankruptcy Code with respect to all aspects of the transactions contemplated by the APA, including the acquisition of the Acquired Assets, and otherwise has proceeded in good faith in all respects in connection with this proceeding. The Seller was free to deal with any other party interested in buying or selling on behalf of the Seller's estate, some or all of the Acquired Assets. The Seller and the Purchaser have not engaged in any conduct that would cause or permit the Sale Transaction, the APA, or any related action or the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of section 363(m) of the Bankruptcy Code. The Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, neither the Purchaser nor the Seller acted in a collusive manner with any person or entity. The Purchaser's prospective performance and payment of amounts owing under the APA will be undertaken in good faith and for valid business purposes and uses.

R.    <u>Insider Status</u>. The Purchaser is not an "insider" of the Seller, as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors, officers, members, managers, or controlling stockholders exists between the Purchaser and the Seller.

S.    <u>Organizational Authority</u>. The Seller has (i) full organizational or other power to execute, deliver, and perform its obligations under the APA and all other transactions contemplated thereby and entry into the APA has been duly and validly authorized by all necessary organizational or similar action, (ii) all of the organizational formalities and powers and authority, or other applicable power and authority, necessary to consummate the Sale Transaction, and (iii)

taken all actions necessary to authorize and approve the APA and the Sale Transaction.  No consents or approvals, other than those expressly provided for herein or in the APA, are required for the Seller to consummate such transaction.

T.    Except as otherwise set forth in the APA, the Purchaser shall have no obligations with respect to any Encumbrances against or in respect of the Seller or the Acquired Assets (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens).

U.    The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), and 363(n) thereof.

V.    The Acquired Assets constitute property of the Seller's estate and title thereto is presently vested in the Seller's estates within the meaning of section 541(a) of the Bankruptcy Code.  The Seller is the sole and rightful owner of the Acquired Assets.  The Acquired Assets include, *inter alia,* all tangible and intangible property of Seller, including but not limited to all of the assets of Silver and the organizational/corporate books and records of Silver and organizational and/or corporate proceedings, financial and tax records, work papers and other records that a limited liability company and corporation are  required by law to retain; all accounts, accounts receivable, payment intangibles and simlar rights to payment, all rights (including lease rights subject to the provisions hereof related to assumption) related to all aircraft owned or leased by Seller, all inventory (including all rotable and consumable spare parts), all equipment and ground equipment (including but not limited to any forklifts, de-ice trucks, GPUs); all Certificates of Public Convenience and Necessity, exemptions, and other approvals and authorities and Seller's FAA Part 121 certificate, Air Carrier Certificates and Operations Specifications, and other FAA authorizations (subject to DOT and/or FAA required approvals), all Route Authority to

destinations served by Seller, all Code Share Agreements; all related manuals; all of Seller's rights to subsidies or other benefits under the DOT's "Essential Air Service program", subject to any required consent by any Governmental Body; all Intellectual Property including trademarks for Silver and related domains; and rights and interests from or with International Air Transport Association (subject to any required consent of IATA); all Passenger Service System assets and agreements (subject to any required consent of Sabre), among other items, as set forth in the APA; and each and every items set forth in Section 2.1 of the APA; but excluding any Bankruptcy Chapter V preference, fraudulent transfer or post-petition transfer avoidance actions.

W.    No other person has any ownership right, title, or interest in the Acquired Assets, subject to the liens and claims described in that certain *Final Order (I) Authorizing the Sellers to (A) Obtain Postpetition Financing on a Secured, Superpriority Basis And (B) Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing, (IV) Modifying 1110(A) Agreements With Certain Aircraft Lessors and (V) Granting Related Relief* [Doc. No. 500] (the "Final DIP Order" and, together with the Interim DIP Order,[4] the "DIP Orders"), including the liens held by the Prepetition Secured Parties under the Prepetition Secured Documents (as such terms are defined in the DIP Orders) and the DIP Secured Parties under the DIP Documents (as such terms are defined in the DIP Orders).  The sale of the Acquired Assets to the Purchaser will be, as of the Closing Date or such later date as such Acquired Assets are transferred under the APA, a legal, valid, and effective transfer of such Acquired Assets, and each transfer and assignment vests or will vest the Purchaser with all right, title, and interest of the

[4] The Interim DIP Order means the *Interim Order (I) Authorizing the Sellers to (A) Obtain Postpetition Financing on a Secured, Superpriority Basis and (B) Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing, (IV) Modifying 1110(a) Agreements With Certain Aircraft Lessors And (V) Granting Related Relief* [Doc. No. 4101].

Seller to the Acquired Assets free and clear of all Encumbrances (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens).

      X.    <u>Assumption and Assignment of Assumed Contracts</u>.  [reserved]

      Y.    [reserved]

      Z.    [reserved]

      AA.    [reserved]

      BB.    <u>No Successor Liability</u>.  No sale, transfer or other disposition of the Acquired Assets pursuant to the APA or entry into the APA will subject the Purchaser to any Excluded Liability or any liability for claims, obligations, or Encumbrances asserted against the Seller or the Seller's interests in such Acquired Assets (other than the Assumed Liabilities, Permitted Exceptions, and Permitted Liens as set forth in the APA) by reason of such transfer under any laws, including any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger, or substantial continuity or similar theories. By virtue of the consummation of the transactions contemplated by the APA, (i) the Purchaser will acquire the assets of the Seller to operate the business of Seller as a going concern and continue as an airline but Purchaser is not a successor of the Seller nor its estate, there is no continuity or continuity of enterprise between the Purchaser and the Seller, and there is no common identity between the Seller and the Purchaser, (ii) the Purchaser is not holding itself out to the public as a continuation of the Seller nor its estate, and (iii) the Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Seller nor its estate. The Purchaser's acquisition of the Acquired Assets shall be free and clear of any "successor liability" claims of any nature whatsoever.  Accordingly, the Purchaser is not and shall not be deemed a successor for any liability purposes to the Seller nor its estate as a result of the consummation of

the transactions contemplated by the APA, and except with respect to any Assumed Liability, Permitted Exception, or Permitted Lien, the Purchaser would not acquire the Acquired Assets but for the protections against any claims based upon "successor liability" theories.  In no event shall Purchaser be liable for any obligation under contract, agreement, or the Worker Adjustment and Retraining Notification Act, as amended, or any similar foreign, state or local law or regulations relating to any of the foregoing (the **"WARN Act"**) by reason of the purchase of the Acquired Assets.

CC.    <u>No Liability for Excluded Executory Contracts or Unexpired Leases</u>.  Under the APA, the Purchaser shall acquire the Acquired Assets free and clear of any and all liabilities, obligations, conditions, claims, or other interests associated with any executory contracts or unexpired leases not assumed in accordance with the APA.

DD.    <u>No *Sub Rosa* Plan</u>.  Entry into the APA and the transactions contemplated thereby and hereby neither impermissibly restructure the rights of the Seller's creditors, nor impermissibly dictate the terms of a chapter 11 plan for the Seller.  Entry into and performance under the APA and this Sale Order does not constitute a *sub rosa* chapter 11 plan.

EE.    <u>No Third-Party Beneficiaries</u>.   Except as stated expressly in the APA, nothing in the APA creates any third-party beneficiary rights in any entity not a party to the APA.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**[5]

1.    <u>Sale Motion Granted.</u>  The relief requested in the Motion is GRANTED as set forth herein.

---

[5] To the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*.

2.      Objections.  Any objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled on the merits with prejudice and denied.  All parties and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3.      Findings of Fact and Conclusions of Law.  This Court's findings of fact and conclusions of law set forth above, in the Bidding Procedures Order, and in the record of the Bidding Procedures Hearing and Sale Hearing are incorporated herein and shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

4.      Approval of the Sale Agreement.  The APA and all ancillary documents are approved pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006 and 9014 of the Bankruptcy Rules.

5.      Authority to Perform.  The Seller is hereby authorized and directed to perform under this Sale Order, the APA, and all ancillary documents (and each of the transactions contemplated thereby is hereby approved in its entirety and is incorporated herein by reference). The failure to include specifically any particular provision of the APA in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the APA and all of their provisions and the payments and transactions provided for therein and herein shall be authorized and approved in their entirety.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

6.      Subject to the provisions of this Sale Order, the Seller and the Purchaser are hereby authorized, pursuant to sections 105(a), 363(b)(1), and 365 of the Bankruptcy Code, to

consummate the Sale Transaction in accordance with the APA and all ancillary documents filed therewith or described therein.

7.        Pursuant to section 363(b) of the Bankruptcy Code, and without any further organizational or corporate action or formalities or order of this Court, the Seller, the Purchaser, and each of their respective officers, employees, agents, members, and managers are hereby authorized and directed to fully perform under, consummate, and implement the terms of the APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA and all ancillary agreements filed therewith or described therein, this Sale Order, and the Sale Transaction.  Seller shall take, or cause to be taken, all reasonable actions and done, or cause to be done, all things necessary or proper, and make effective as soon as possible the transactions contemplated hereby, consistent with applicable law, to consummate including but not limited to the filing and prosecution of any necessary or required approvals by the U.S DOT and FAA of the transfer of licenses of Silver to Buyer or Buyer's designees, which will include, *inter alia,* Silver (or any successor trustee under any chapter of the Bankruptcy Code or any other successor or administrator) joining in any application to the U.S. DOT and FAA for the transfer of any and all Certificates, exemptions and other authorities.

8.        <u>Transfer of Assets Free and Clear</u>.  Upon the Closing Date, all of the Seller's legal, equitable, and beneficial right, title, and interest in and to, and possession of, the Acquired Assets shall be immediately vested in the Purchaser pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code free and clear of any Lien, Claim, Interest, or Encumbrance, or Transfer Rights (other than Assumed Liabilities, Permitted Exceptions, or Permitted Liens, including all Cure Costs); <u>provided</u>, <u>however</u>, that all remaining Encumbrances shall attach to the proceeds of

the Sale Transaction in the order of their priority, with the same validity, force, and effect that they previously attached against the Acquired Assets.  On the Closing Date, this Sale Order shall be considered, and constitute for any and all purposes, a legal, valid, binding, effective, and complete general assignment, conveyance, and transfer of the Acquired Assets and a bill of sale or assignment transferring indefeasible title in the Acquired Assets to the Purchaser and shall vest the Purchaser with good and marketable title to the Acquired Assets.

9.      The holders of claims related solely to the Assumed Liabilities, Permitted Exceptions, or Permitted Liens shall have the right to seek payment directly from the Purchaser on account of the Assumed Liabilities, Permitted Exceptions, or Permitted Liens; provided, however, that the Purchaser reserves any and all rights, defenses, or objections held at any time by the Seller and/or the Purchaser with regard to such Assumed Liabilities, Permitted Exceptions, or Permitted Liens, including the Purchaser's rights hereunder and under the APA; provided further that, from and after the closing of the Sale Transaction, the Seller's estate shall have no further liability with respect to the Assumed Liabilities, Permitted Exceptions, or Permitted Liens.

10.      The Sale Transaction and transfer and assignment of the Acquired Assets to the Purchaser shall be effectuated on the terms set forth in the APA and this Sale Order and shall not be restricted or prohibited, notwithstanding any alleged Transfer Rights with respect to the Acquired Assets.

11.      Distribution of Secured Party Sale Proceeds.  There are no cash proceeds payable to the Seller from the sale to the Purchaser.  The DIP Obligations are credit bid and repaid in full in consideration of the sale of the Acquired Assets to the Purchaser.

12.      Order Binding.  All (i) entities, including all filing agents, filing officers, title agents, title companies or title agents, recorders of mortgages, recorders of deeds, registrars

of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state and local officials, and (ii) other persons, in each case, who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets, shall be authorized and directed to take any such actions in connection with the Sale Transaction or this Sale Order, and this Sale Order shall be binding upon such entities or persons.  All entities or persons described in this paragraph are authorized and specifically directed to strike all recorded Encumbrances (other than the Assumed Liabilities, Permitted Exceptions, or Permitted Liens) against the Acquired Assets from their records, official and otherwise.

13.    Survival.  Except as otherwise set forth herein, this Sale Order and the terms and provisions of the APA and all ancillary documents shall be binding on all of the Seller's creditors (whether known or unknown), the Seller, the Purchaser, and each of their respective affiliates, successors and assigns, and any affected third parties, including all persons asserting an interest in the Acquired Assets, including any Transfer Rights, notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under any section of the Bankruptcy Code with respect to the foregoing parties, and as to such trustee, party, entity, or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Sale Order and the terms and provisions of the APA and any actions taken pursuant hereto or thereto shall survive the dismissal of the Seller's chapter 11 or 7 case or entry of any order, which may be entered confirming or consummating any plan(s) of the Seller or converting either chapter 11 case from chapter 11 to chapter 7, and the terms and provisions of the APA, as well as the rights and interests granted pursuant to this Sale Order and the APA, shall continue in these or any superseding or

successor cases and shall be binding upon the Seller, the Purchaser, and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of either Seller under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in this chapter 11 case shall be and hereby is authorized to operate the business of the Seller to the fullest extent necessary to permit compliance with the terms of this Sale Order and the APA,  and the Purchaser and the trustee shall be and hereby are authorized to perform under the APA upon the appointment of such trustee without the need for further order of this Court.

14.    Except with respect to the Assumed Liabilities, Permitted Exceptions, or Permitted Liens, all persons and entities (and their respective successors and assigns), including all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Encumbrances, or having rights under Excluded Liabilities, or any Transfer Rights, arising under or out of, in connection with, or in any way relating to, the Seller, the Acquired Assets, the ownership, sale, or operation of the Acquired Assets and the business prior to the Closing Date, or the transfer of Acquired Assets to the Purchaser, are hereby forever barred, estopped, and permanently enjoined from asserting such Encumbrances or Transfer Rights against the Purchaser, its property, or the Acquired Assets.  Except with respect to the Assumed Liabilities, Permitted Exceptions, or Permitted Liens (including any deferred obligation (if any) of the Purchaser to pay Cure Costs), following the Closing Date, no person, entity or holder of any Encumbrance or Excluded Liability shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to any such Encumbrance, or based on any action the Seller may take in this chapter 11 case.

15.      Upon Closing, any Encumbrances on, against, or in the Acquired Assets that are purchased by the Purchaser pursuant to the APA, other than Assumed Liabilities, Permitted Exceptions, or Permitted Liens which are not, by their terms as set forth in the APA, automatically released by this Order, shall be automatically released and discharged without further action, and all right, title and, interest of any holder of such Encumbrances shall attach to the proceeds of the Sale Transaction in the same order of priority, and with the same extent, validity, force, and effect as existed with respect to the Acquired Assets prior to the Sale Transaction without the need for any perfection actions by any such parties.  Except for Assumed Liabilities, Permitted Exceptions, or Permitted Liens, holders of any Encumbrances on, against, or in the Acquired Assets purchased by the Purchaser pursuant the APA are authorized and directed to execute and deliver to the Seller, at the Seller's expense, any documents the Seller may request to evidence the cancellation of Encumbrances and rights to the Acquired Assets securing the applicable claims.  Except for Assumed Liabilities, Permitted Exceptions, or Permitted Liens, if any person or entity has filed financing statements, mortgages, dedication interests, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances against or in the Acquired Assets that are purchased by the Purchaser pursuant to the APA and this Sale Order, then such person or entity, upon reasonable request by the Seller or the Purchaser, shall promptly deliver to the Seller, in proper form for filing and executed by the appropriate parties, termination statements or instruments of satisfaction or release of all Encumbrances that such person or entity has with respect to such Acquired Assets.  Notwithstanding the foregoing, if any person or entity that has filed financing statements, mortgages, dedication interest mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances (other than the Assumed Liabilities, Permitted Exceptions, or Permitted Liens) or any Excluded Liability against or in the Acquired

Assets shall not have delivered to the Seller prior to the Closing Date of the Sale Transaction in proper form for filing and executed by the appropriate parties termination statements or instruments of satisfaction or release of all Encumbrances that such person or entity has with respect to such Acquired Assets, then only with regard to the Acquired Assets that are purchased by the Purchaser pursuant to the APA and this Sale Order, (a) the Seller is hereby authorized and empowered to cause to be executed and filed any and all such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Assets that are necessary or appropriate to effectuate the Sale Transaction, any related agreements and this Sale Order, including amended and restated certificates of organization, certificates or articles of incorporation, operating agreements and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units[6] or as any of the officers of the Seller may determine are necessary or appropriate and (b) the Purchaser is hereby authorized and empowered to cause to be filed, registered, or otherwise recorded a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances and Transfer Rights (other than the Assumed Liabilities, Permitted Exceptions, or Permitted Liens) against the Purchaser and the applicable Acquired Assets.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

16.    <u>Good Faith</u>.  The Seller, the DIP Lender, the Prepetition Secured Parties and the Purchaser (including, but not limited to its equity owners, officers, directors, employees, professionals, and other agents thereof) have not engaged in any action or inaction that would

---

[6] As used in this Sale Order, the term "governmental unit" shall have the meaning given to such term in section 101(27) of the Bankruptcy Code.

cause or permit the Sale Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  The Entry into and performance under the APA is an exercise of the Defendants reasonable business judgment.  Entry into the APA and any ancillary documents is undertaken by the parties thereto, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and the Purchaser shall be entitled to all of the benefits of and protections under section 363(m) of the Bankruptcy Code.  The reversal or modification on appeal of the authorization provided herein to enter into the APA and consummate the Sale Transaction shall not affect the validity of such Sale Transaction, unless such authorization is duly stayed pending such appeal.  The Sale Transaction is not subject to avoidance pursuant to section 363(n) or chapter 5 of the Bankruptcy Code and the Purchaser is entitled to all the protections and immunities under section 363(m) of the Bankruptcy Code.

17.     To the maximum extent permitted under applicable law, the Purchaser and any applicable affiliates shall be authorized, as of the Closing Date, to operate under any license, permit, certificate, exemption, registration and governmental authorization or approval of the Seller with respect to the Acquired Assets, and all such licenses, permits, certificates, exemptions, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Purchaser, with respect to the Acquired Assets as of the Closing Date.  To the extent that such licenses, permits, certificates, exemptions, registrations, and governmental registrations cannot be transferred to the Purchaser in accordance with the previous sentence, such licenses, permits, certificates, exemptions, registrations and governmental authorizations and approvals shall be in effect while the Purchaser, with best efforts assistance from the Seller (and at the Purchaser's cost and expense), works promptly and diligently to apply for and secure all necessary government approvals for new issuance of such licenses, permits,

certificates, exemptions, registrations and governmental authorizations and approvals to the Purchaser; *provided*, that the foregoing is not intended to modify the protections provided by Section 525 of the Bankruptcy Code, as and to the extent applicable.

18.    No Successor or Transferee Liability.  The Purchaser shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Sale Transaction, or the transfer, operation, or use of the Acquired Assets, to (a) be a legal successor, or otherwise be deemed a successor to the Seller; (b) have, *de facto* or otherwise, merged with or into the Seller; or (c) be an alter ego or a mere continuation or substantial continuation or successor in any respect of the Seller, including within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, collective bargaining agreement, tax, labor, employment, worker's compensation, unemployment insurance, environmental, or other law, rule, or regulation (including filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Seller's liability under such law, rule, or regulation or doctrine.  This paragraph is intended to apply solely to potential determinations of successor liability under applicable non-bankruptcy law and has no effect for any other purposes.

19.    Except as expressly provided in the APA with respect to the Assumed Liabilities, Permitted Exceptions, or Permitted Liens (including any deferred obligation, if any, of the Purchaser to pay Cure Costs), the Purchaser shall have no liability whatsoever with respect to the Seller's (or its predecessors' or affiliates') business or operations or any of the Seller's (or its predecessors' or affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of labor law, employment law, ERISA or benefits law, antitrust, environmental, successor or transferee liability, dedication interests, *de facto* merger

or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or nonmonetary obligations on account of any settlement or injunction, or any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets or the business prior to the Closing Date or such later time as the Purchaser is assigned and assumes any Assumed Contract. This paragraph is intended to apply solely to potential determinations of successor liability under applicable state law and has no effect for any other purposes.

20.    Effective upon the Closing Date, other than with respect to Assumed Liabilities, Permitted Exceptions, or Permitted Liens (including any deferred obligation, if any, of the Purchaser to pay Cure Costs), all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser, or its assets (including the Acquired Assets), or its successors and assigns, with respect to any (a) Encumbrance or (b) Successor or Transferee Liability, including the following actions with respect to clauses (a) and (b) (i) exercising any Transfer Rights in connection with the Sale Transaction, (ii) commencing or continuing any action or other proceeding pending or threatened; (iii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iv) creating, perfecting, or enforcing any Encumbrance; (v) asserting any setoff, right of subrogation, or recoupment of any kind; (vi) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vii) revoking,

terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such Acquired Assets.

21.     <u>Assumption and Assignment of Assumed Contracts and Leases</u>. Except with respect to that certain aircraft agreement with Azorra, approved by this Court on May 30, 2025 at Doc. 533, Purchaser is not seeking the assumption and assignment of any executory contracts and unexpired leases.

22.     [reserved]

23.     [reserved]

24.     [reserved]

25.     [reserved]

26.     [reserved]

27.     The Purchaser is not assuming any of the Seller's other Contracts or leases and shall have no liability whatsoever thereunder.

28.     <u>Excluded Liabilities</u>.  All persons, all governmental units, and all holders of Encumbrances (other than holders of Assumed Liabilities, Permitted Exceptions, and Permitted Liens) including those based upon or arising out of the Excluded Assets, are hereby enjoined, barred and estopped from taking any action against the Purchaser or the Acquired Assets to recover property on account of any Encumbrances or on account of any liabilities of the Seller other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens.  All persons holding or asserting any Encumbrances with respect to the Excluded Assets are hereby enjoined from asserting or prosecuting such Encumbrances against the Purchaser or the Acquired Assets for any liability whatsoever associated with the Excluded Assets.

29.    <u>No Bulk Sales; No Brokers</u>.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.  Other than the professionals retained by the Seller pursuant to orders of this Court, no brokers were involved in consummating the Sale Transaction, and no brokers' commissions shall be due to any person or entity in connection with the Sale Transaction.  The Purchaser is not obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Sale Transaction. Notwithstanding the foregoing, the Seller may be obligated to pay financial advisors or investment bankers for services rendered in connection with the sale in accordance with other orders of this Court.

30.    <u>Failure to Specify Provisions; Conflicts</u>.  The failure specifically to mention any particular provisions of the APA or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court, the Seller and the Purchaser that the APA and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties thereto in accordance with this Sale Order.  In the event there is a direct conflict between the terms of this Sale Order and the terms of the APA, the terms of this Sale Order shall control.

31.    <u>Further Assurances</u>.  From time to time, as and when requested, all parties to the Sale Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, or confirm or record or otherwise in the Purchaser its right, title, and interest in and to the Acquired Assets.

32.    <u>Governing Terms</u>.  To the extent this Sale Order is inconsistent with any prior order or pleading in this chapter 11 case, the terms of this Sale Order shall govern.  To the extent there is any inconsistency between the terms of this Sale Order and the terms of the APA (including all ancillary documents executed in connection therewith) or the Motion, the terms of this Sale Order shall govern.

33.    <u>Modifications</u>.  The APA and any related agreements, documents or other instruments executed in connection therewith may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court; <u>provided</u> that any such modification, amendment or supplement does not have a material adverse effect on the Seller's estate or creditors.

34.    <u>Releases</u>.

a.    Effective upon the Closing Date, Purchaser, on the one hand, and each of the DIP Lender and Prepetition Lenders (collectively, the "<u>Released Lender Parties</u>") on the other hand, in the case of both the Purchaser and the Released Lender Parties on behalf of themselves and each of their Related Persons, shall forever and irrevocably be deemed to have mutually released, discharged, and acquitted each other and each of their Related Persons from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, reasonable attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, including all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of or in connection with the DIP Obligations, the Prepetition Liens, and the Seller, which

existed, occurred or arose prior to the Closing Date; provided, however, nothing herein shall release any claims or causes of action that any party may have to enforce this Sale Order and in the event that Closing Date does not occur, the foregoing release shall be deemed to be of no force and effect and the parties agree that their positions shall be returned to the *status quo ante*, and each party's rights shall be reserved and preserved.

    b. Effective upon the Closing Date, the Seller and its estate, on its own behalf and on behalf of each of its Related Persons, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Released Lender Parties, from any and all obligations and liabilities to the Seller (and its successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Closing Date of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, arising out of or in connection with the Seller, this chapter 11 case, the sale process, the Seller's operations and management, the DIP Obligations, the Prepetition Secured Obligations, the DIP Documents, and the Prepetition Secured Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the Seller's performance thereunder, in each case that the Seller at any time had, now has or may have, or that its successors or assigns hereafter can or may have against any of the Released Lenders Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the Closing Date.

35.    <u>Binding Stipulations</u>.  As set forth in paragraph 42 of the Final DIP Order, the Prepetition Lien and Claim Stipulations remain in effect and continue to be binding on the Seller and its estate, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative or successor in interest to the Seller and all other creditors and parties in interest and all of their successors in interest and assigns.

36.    <u>Automatic Stay</u>.   The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Seller to the extent necessary, without further order of this Court, to allow the Purchaser to deliver any notice provided for in the APA and allow the Purchaser to take any and all actions permitted or required under the APA in accordance with the terms and conditions thereof.  The Purchaser shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document.

37.    <u>No Stay of Order; Further Instruments; Appeals</u>.    Notwithstanding Bankruptcy Rules 6004(h), 6006(d) and 7062, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.   Neither the Seller nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and obtaining a stay prior to the Closing Date or risk its appeal being foreclosed as moot.

38.    <u>Notice of Sale Closing Date</u>.  Within one (1) business day of the occurrence of the Closing Date of the Sale Transaction, the Seller shall file and serve a notice of same.

39.    <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction to interpret, implement, and enforce the terms and provisions of this Sale Order, the Bidding

Procedures Order, and the APA, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, and decide any issues or disputes concerning this Sale Order and the APA, or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Acquired Assets.

40.    <u>Jetstream / Azorra Provisions.</u> Notwithstanding any other provision in this Order or the APA, and specifically including the definition of "Acquired Asset", any and all 1110 Leases and all corresponding aircraft equipment, parts, engines, etc. and documents with Lessors Jetstream Aviation Capital, LLC (and affiliates) and Azorra Eagle entities (collectively "Lessors"), shall not be sold, conveyed or assigned to Purchaser. Rather, the Debtor shall immediately deliver to the respective Lessor the aircraft, equipment, parts, engines, etc. and documents, etc., in accordance with the obligations of the respective Section 1110(b) agreements approved by this Court and otherwise in compliance with the leases or as otherwise agreed to by the Lessors and Debtor.  The automatic stay of Section 362 is hereby modified to allow said Lessors to take all steps necessary or required to effectuate the same forthwith. Any stay as to the effectiveness of the foregoing is hereby waived.

41.    <u>Administrative Claims to be Paid by Purchaser.</u> Purchaser has agreed to pay, but will not be liable for any other expenses, certain administrative expenses consisting of the wages and benefits commencing June 11, 2025 through the conclusion of any period where services are being performed for Purchaser by the employees in the following positions:

| Employee Initials | Position | Location |
|---|---|---|
| LBL | Director of Quality Control | Orlando |
| MM | Stores Clerk | Orlando |
| JAR | Stores Clerk | Orlando |
| YRM | Stores Manager | Orlando |

| Employee Initials | Position | Location |
|---|---|---|
| BHF | Director of Flight Operations | Orlando |
| GRJ | System Chief Pilot | Headquarters |
| AEM | Director of Safety | Headquarters |
| LRL | Sr Manager of Line Maintenance | Pensacola |

42.     <u>Authorization to Act.</u> The Seller is authorized and directed to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Sale Order.

43.     <u>Order Effective on Entry; Waiver or Bankruptcy Rule 6004(h).</u> Notwithstanding Bankruptcy Rule 6004(h), this Sale Order is effective immediately upon entry.

44.     The requirements set forth in Bankruptcy Rule 6004(a) and Local Rule 6004-1 are satisfied.

45.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**Exhibit 1**

<u>APA</u>

(revised)

**EXHIBIT B**
**(Revised Order - Blackline)**

*Silver Sale Order TAPC* ~~*Filed at Doc. 586 (June 8, 2025)*~~*Draft Dated 6-11-2025*
*Subject to Client Review and Comment*

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **SILVER AIRWAYS LLC, et al.** [1] | § | **Case No. 24-23623-PDR** |
| | § | **(Jointly Administered)** |
| Debtors-in-Possession. | § | |

**[PROPOSED] ORDER APPROVING (I) THE SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, ENCUMBRANCES, AND OTHER INTERESTS, (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) RELATED RELIEF**

This Court having considered *Debtor Silver Airways LLC's Emergency Motion for an Order (i) Approving Bidding Procedures in Connection with Transaction by Auction; (ii) Scheduling a Hearing to Consider the Transaction; (iii) Approving the Form and Manner of Notice Thereof; (iv) Approving Contract Procedures; and Granting Related Relief* [Doc. No. 446] (the "Motion"),[2] filed by debtor in possession, Silver Airways LLC ("Silver"), and upon the

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: SILVER AIRWAYS LLC (6766), and SEABORNE VIRGIN ISLANDS, INC. (1130). The mailing address and principal place of business of Silver is 2850 Greene Street, Hollywood, FL 33020. The mailing address and principal place of business of Seaborne is 2850 Greene Street, Hollywood, FL 33020.

[2] Capitalized terms used but not defined herein are defined in the Motion or, as applicable, the APA.

*Declaration of Steven A. Rossum in Support of Sellers First Day Motions* [Doc. No. 35 ] (the "First Day Declaration"), and the *Declaration of Steven A. Rossum in Support of Proposed Order Approving (I) The Sale Of Sellers' Assets Free And Clear Of Liens, Claims, Rights, Encumbrances, And Other Interests, (II) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Related Relief* [Doc. No. [▴566] (the "Sale Declaration"); and upon the *Order (I) Approving Bidding Procedures in Connection with Transaction by Auction; (ii) Scheduling a Hearing to Consider the Transaction; (iii) Approving the Form and Manner of Notice Thereof; (iv) Approving Contract Procedures; and Granting Related Relief* [Doc. No. 501] (the "Bidding Procedures Order") approving the procedures for bidding (the "Bidding Procedures") for the sale of the Acquired Assets, as defined in that certain Amended and Restated Asset Agreement, dated as of May 21, 2025 [Doc. No. 505] (as may be further amended or modified from time to time, including pursuant to the terms of this Sale Order, the "APA") between Argentum Acquisition Co. LLC. (the "Purchaser"), and Silver~~, and Seaborne Virgin Islands, Inc. ("Seaborne")(Silver and Seaborne (subject to Section 2.7 of the APA³) each a "Seller" and collectively the, "Sellers"~~ ("Seller"); the Auction having been held in accordance with the Bidding Procedures Order; and the Stalking Horse Bidder, Purchaser, being the only bidder and therefore the Successful Bidder; and the sale hearing (the "Sale Hearing") having been held on June 4, 2025 ~~and,~~ June 10, and June 11, 2025 to consider the remaining relief requested in the Motion and approval of the ~~Sellers' respective entries~~Seller's entry into and performances under the APA; and appearances of all interested parties having been noted on the record of the Sale Hearing; and upon all of the proceedings had before this Court (including any testimony or other evidence proffered

---

³ ~~Section 2.7 of the APA sets forth that if no Qualified Bids, as defined in the Bid Procedures Order, are received by the Closing Date, that the assets of Seaborne shall be included in the sale to Purchaser under the APA without further act of this Court. If a Qualified Bid is timely received, the assets and stock of Seaborne shall not be included in the sale to Purchaser under the APA. This Order shall be similarly interpreted.~~

or adduced at the Sale Hearing); and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion and at the Sale Hearing is in the best interests of the ~~Sellers~~Seller, the estate, creditors, and other parties in interest; and it appearing that proper and adequate notice of the relief requested by the Motion has been given under the circumstances and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[4][3]

A.    <u>Jurisdiction</u>.  This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  Approval of the ~~Sellers'~~Seller's entry into the APA and the transactions contemplated thereby (collectively the "Sale Transaction") is a core proceeding under 28 U.S.C. §§ 157(b)(2).

B.    <u>Venue</u>.  Venue of this Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

C.    <u>Final Order</u>.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

D.    <u>Statutory Predicates</u>.  The statutory predicates for the approval of the APA and Sale Transaction contemplated thereby are sections 105, 363, and 365 of the Bankruptcy Code, as supplemented by Rules 2002, 6004, 6006, and 9014 of the Bankruptcy Rules, and Local Rule 6004-1.

E.    <u>Notice</u>.  Proper, timely, adequate, and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with sections 102(1), 105(a), 363, and 365 of

---

[4][3] The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 6006, and in compliance with the Local Rules and the Bidding Procedures Order, including to the Notice Parties (as defined below) as set forth in the *Certification of Service* [Doc. No. 532] filed on May 29, 2025.  The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, the APA, or the Sale Transaction is required.  The disclosures made by the ~~Sellers~~Seller concerning the APA, the Sale Transaction, and the Sale Hearing were sufficient, complete, and adequate.

F.    <u>Opportunity to be Heard</u>.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the Sale Transaction has been afforded to all interested persons and entities, including the following:  (i) the Office of the United States Trustee; (ii) counsel for the Brigade and Argent Funding, the Prepetition Lenders; (iii) those persons who have formally appeared and requested notice and service in this Case; (iv) all parties in interest who have requested notice pursuant to Bankruptcy Rule  2002; (v) the U.S. Department of Transportation and the Federal Aviation Administration; (vi) all applicable federal, state and local taxing and regulatory authorities or recording offices or any other governmental authorities that, as a result of the sale of the Acquired Assets, may have claims, contingent or otherwise, in connection with Silver's ownership of the Acquired Assets or have any known interest in the relief requested by the Motion; (vii) the United States Attorney's office for the Southern District of Florida; (viii) the Internal Revenue Service; (ix) all persons and entities known by the ~~Sellers~~Seller to have asserted any lien, claim, interest, or encumbrance in the ~~Sellers's~~Seller's assets (for whom identifying information and addresses are available to the ~~Sellers~~Seller) including, for the avoidance of doubt, any persons or entities who have the ability to exercise any approval rights, consent rights, preferential transfer rights, rights of purchase, rights of first refusal, rights of first

offer, tag-along rights, rights upon or related to any change of control, rights to restrict or change the Purchaser from becoming or continuing as an owner or operator of the Acquired Assets for any reason, or similar rights with respect to the Sale Transaction (such rights, solely as they may be exercised in connection with the Sale Transaction, collectively, "Transfer Rights"); (x) all non-Seller parties to any Assumed Contract proposed to be assumed and assigned in connection with the Sale Transaction; (xi) all of the ~~Sellers'~~ Seller's known creditors (for whom identifying information and addresses are known to the ~~Sellers~~ Seller); (xii) KIA II LLC and Wexford Capital, LP; and (xiii) all other persons and entities as directed by the Court (the parties listed in (i) through (xiii) collectively, the "Notice Parties"). Objections, if any, to the Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled.

G. **Marketing Process.** As demonstrated by (i) the First Day Declaration, the Sale Declaration, and (ii) the testimony and other evidence proffered or adduced at the hearing with respect to the approval of the bidding procedures held on May 28, 2025 (the "Bidding Procedures Hearing") and the Sale Hearing, (iii) the Sale Declaration and (iv) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, the ~~Sellers'~~ Seller's and its advisors thoroughly marketed the ~~Sellers'~~ Seller's assets (including the Acquired Assets) and conducted the marketing and sale process as set forth in and in accordance with the Motion and the Bidding Procedures Order. Based on the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the ~~Sellers'~~ Seller's assets (including the Acquired Assets).

H. **Compliance with Bidding Procedures.** The ~~Sellers~~ Seller conducted a fair and open sale process in a manner reasonably calculated to produce the highest or otherwise best

offer for the Acquired Assets in compliance with the Bidding Procedures Order. The sale process and the Bidding Procedures were non-collusive, substantively and procedurally fair to all parties and to each person or entity entitled to participate in the Auction pursuant to the Bidding Procedures Order and each person or entity entitled to participate in the Auction pursuant to the Bidding Procedures Order was afforded notice and a full, fair, and reasonable opportunity to make a higher or otherwise better offer for the Acquired Assets. The Bidding Procedures, as they have been amended or modified, have been complied with in all material respects by the ~~Sellers~~Seller and the Purchaser.

        I.    <u>Highest or Best Offer</u>. In accordance with the Bidding Procedures, the ~~Sellers~~Seller determined, in a valid and sound exercise of ~~their~~its business judgment, that the highest or otherwise best Qualified Bid for the Acquired Assets was that of the Purchaser. The consideration provided by the Purchaser for the Acquired Assets provides fair and reasonable consideration to the ~~Sellers~~Seller for the sale of the Acquired Assets and the assumption of all Assumed Liabilities, and the performance of the other covenants set forth in the APA will provide a greater recovery for the ~~Sellers'~~Seller's respective estates than would have been provided by any other available alternative.

        J.    <u>Business Judgment</u>. The ~~Sellers'~~Seller's decision to (i) enter into the APA and all ancillary documents filed therewith or described therein, and (ii) perform under and make payments, if any, required by such APA, constitutes a reasonable exercise of sound business judgment consistent with the ~~Sellers'~~Seller's fiduciary duties and such decisions are in the best interests of the ~~Sellers'~~Seller's, the Bankruptcy ~~estates, their~~estate, its creditors, and all other parties in interest. Good and sufficient reasons for the approval of the APA and all ancillary documents filed therewith or described therein have been demonstrated by the ~~Sellers. The Sellers~~

haveSeller.  The Seller has established that compelling circumstances exist for the Sale Transaction

outside: (i) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code;

and (ii) a plan of reorganization, in, that, among other things, the immediate consummation of the

Sale Transaction is necessary and appropriate to preserve and maximize the value of eachthe

Seller's estate and to adhere to the terms of the Milestones (as defined in the DIP Orders).  To

maximize the value of the Acquired Assets, preserve the viability of the business to which the

Acquired Assets relate, and adhere to the Milestones, it is essential that the Sale Transaction occur

promptly.

K.    Court Approval Required.  Entry of an order approving and authorizing the

Sellers'Seller's entry into the APA (for the purposes described therein for each Seller) and the

Sellers'Seller's performance of all the provisions thereof is a necessary condition precedent to the

Purchaser's consummation of the Sale Transaction.

L.    Immediate Effectiveness of Sale Order.  The Sale Transaction contemplated

by the APA must be consummated immediately.  Based on the record of the Sale Hearing, and for

the reasons stated on the record at the Sale Hearing and Bidding Procedures Hearing, and in the

First Day Declaration, adherence to the Milestones and/or immediate closing is in the best interest

of the Sellers, their respective estatesSeller, its estate, creditors and all other parties in interest in

this Bankruptcy Case.  Accordingly, cause exists to lift the stay to the extent necessary, as

contemplated by Bankruptcy Rule 4001(a), and pursuant to Bankruptcy Rule 6004(h), to permit

the immediate effectiveness of this Sale Order.

M.    Sale Free and Clear.  Except for the Assumed Liabilities, Permitted

Exceptions, and Permitted Liens expressly provided for in the APA, a sale of the Acquired Assets

other than one free and clear of liens, claims, defenses (including rights of setoff and recoupment)

and interests, in each case, in, on, or related to the Acquired Assets, including, for the avoidance of doubt, any security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, dedications, deeds of trust, hypothecations, liens, including but not limited to mechanics' or materialman's liens,  encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, right of first refusal, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, conditions, equitable interests, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, Employee Retirement Income Security Act of 1974 ("ERISA"), Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA"), alter ego and other liabilities, causes of action, contract rights and claims, community property interest, right of way or restriction of any kind to the fullest extent of the law, in each case, of any kind or nature in, on, or related to the Acquired Assets (including all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether prepetition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances"), and without the protections of this Sale Order would hinder the ~~Sellers'~~Seller's ability to obtain the consideration provided for in the APA and, thus, would impact materially and adversely the value that the ~~Sellers' respective estates~~Seller's estate would be able to obtain for the sale of such Acquired Assets.  But for the protections afforded to the Purchaser under the Bankruptcy Code and this Sale Order, the Purchaser would not have offered to pay the

consideration contemplated in the APA.  In addition, each entity with an Encumbrance upon or Transfer Right associated with the Acquired Assets (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens), (i) has consented to the Sale Transaction or is deemed to have consented to the Sale Transaction, or (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances or Transfer Rights (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens) who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Encumbrances are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code— by either having the claims secured by having their Encumbrances, if any, attach to the proceeds of the Sale Transaction, in the same order of priority and with the same validity, force, and effect that such Encumbrances had before the Sale Transaction, subject to any rights, claims, and defenses of the ~~Sellers or their respective estates~~Seller or its estate, as applicable, or as otherwise provided herein.  Therefore, approval of the APA and the consummation of the Sale Transaction free and clear of Encumbrances and Transfer Rights (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens) is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the ~~Sellers' respective estates~~Seller's estate, creditors, and other parties in interest.

N.    The recitation in the immediately preceding paragraph of this Sale Order of specific agreements, plans, or statutes is not intended, and shall not be construed, to limit the

generality of the categories of liabilities, debts, commitments, or obligations referred to as "Encumbrances" therein.

O.    The Purchaser would not have entered into the APA and would not consummate the sale of Acquired Assets, thus adversely affecting the ~~Sellers, their respective estates~~Seller, its estate, creditors, and other parties in interest, if such sale was not free and clear of all Encumbrances and Transfer Rights (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens).   A sale of the Acquired Assets, other than one free and clear of all Encumbrances (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens), would yield substantially less value for the ~~Sellers' estates~~Seller's estate, with less certainty than the Sale Transaction.  Additionally, the Purchaser would not have entered into the APA and would not consummate the sale of Acquired Assets if any persons or entities were permitted to maintain and/or enforce any Encumbrance or exercise any Transfer Rights in connection with the Sale Transaction.

P.    <u>Arm's-Length Sale</u>.  The consideration to be paid by the Purchaser under the APA was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration for the Acquired Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and the laws of the United States, any state, territory, possession thereof or the District of Columbia.  The terms and conditions set forth in the APA and all ancillary documents filed therewith or described therein are fair and reasonable under these circumstances and were not entered into with the intent to, nor for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the ~~Sellers or their respective~~Seller or its creditors under any applicable laws.  Neither ~~of~~ the ~~Sellers~~Seller nor the Purchaser is entering into the APA and all ancillary

documents filed therewith or described therein or proposing to consummate the Sale Transaction fraudulently, for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction.

Q.    <u>Good Faith</u>.  The ~~Sellers and their respective~~<u>Seller and its</u> management, board of directors or equivalent governing body, officers, directors, employees, agents, members, managers, and representatives, and the Purchaser and its management, board of directors or equivalent governing body, officers, directors, employees, agents, members, managers, and representatives actively participated in the bidding process and respectively acted in good faith. The APA ~~and the Transition Services Agreement as defined in the APA (the "TSA") were~~<u>was</u> negotiated and entered into among the Purchaser and the ~~Sellers~~<u>Seller</u> based upon arm's-length bargaining, without collusion or fraud, and in good faith as that term is used in section 363(m) of the Bankruptcy Code.  The Purchaser is entering into the Sale Transaction in good faith and is a good faith purchaser for value within the meaning of section 363(m) of the Bankruptcy Code and the court decisions applying or interpreting such provision, and is therefore entitled to the full protection of section 363(m) of the Bankruptcy Code with respect to all aspects of the transactions contemplated by the APA ~~and TSA~~, including the acquisition of the Acquired Assets, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  The ~~Sellers were~~<u>Seller was</u> free to deal with any other party interested in buying or selling on behalf of the ~~Sellers' estates~~<u>Seller's estate</u>, some or all of the Acquired Assets.  The ~~Sellers~~<u>Seller</u> and the Purchaser have not engaged in any conduct that would cause or permit the Sale Transaction, the APA ~~and TSA~~, or any related action or the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent

the application of section 363(m) of the Bankruptcy Code.  The Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction.  Specifically, neither the Purchaser nor the ~~Sellers~~Seller ~~–~~acted in a collusive manner with any person or entity.  The Purchaser's prospective performance and payment of amounts owing under the APA will be undertaken in good faith and for valid business purposes and uses.

R.    Insider Status.  The Purchaser is not an "insider" of the ~~either~~ Seller, as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors, officers, members, managers, or controlling stockholders exists between the Purchaser and ~~either~~the Seller.

S.    Organizational Authority.  ~~Each~~The Seller has (i) full organizational or other power to execute, deliver, and perform its obligations under the APA and ~~TSA and~~ all other transactions contemplated thereby and entry into the APA ~~and TSA~~ has been duly and validly authorized by all necessary organizational or similar action, (ii) all of the organizational formalities and powers and authority, or other applicable power and authority, necessary to consummate the Sale Transaction, and (iii) taken all actions necessary to authorize and approve the APA and the Sale Transaction.  No consents or approvals, other than those expressly provided for herein or in the APA ~~and TSA~~, are required for the ~~Sellers~~Seller to consummate such transaction.

T.    Except as otherwise set forth in the APA ~~and TSA~~, the Purchaser shall have no obligations with respect to any Encumbrances against or in respect of the ~~Sellers~~Seller or the Acquired Assets (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens).

U.    The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), and 363(n) thereof.

V.    The Acquired Assets constitute property of the ~~Sellers' estates~~Seller's estate and title thereto is presently vested in the ~~Sellers'~~Seller's estates within the meaning of section 541(a) of the Bankruptcy Code.  ~~Each~~The Seller is the sole and rightful owner of ~~their respective~~the Acquired Assets.  The Acquired Assets include, *inter alia,* all tangible and intangible property of ~~Sellers~~Seller, including but not limited to all of the assets of Silver and ~~Seaborne, the stock of Seaborne, and~~ the organizational/corporate books and records of ~~each Seller~~Silver and organizational and/or corporate proceedings, financial and tax records, work papers and other records that a limited liability company and corporation are  required by law to retain; all accounts, accounts receivable, payment intangibles and simlar rights to payment, all rights (including lease rights subject to the provisions hereof related to assumption) related to all aircraft owned or leased by ~~Sellers~~Seller, all inventory (including all rotable and consumable spare parts), all equipment and ground equipment (including but not limited to any forklifts, de-ice trucks, GPUs); all Certificates of Public Convenience and Necessity, exemptions, and other approvals and authorities and ~~Sellers'~~Seller's FAA Part 121 certificate, Air Carrier Certificates and Operations Specifications, and other FAA authorizations (subject to DOT and/or FAA required approvals), all Route Authority to destinations served by ~~Sellers~~Seller, all Code Share Agreements; all related manuals; all of ~~Sellers'~~Seller's rights to subsidies or other benefits under the DOT's "Essential Air Service program", subject to ~~"~~any required consent by any Governmental Body; all Intellectual Property including trademarks for Silver ~~and Seaborne~~and related domains; and rights and interests from or with International Air Transport Association (subject to any required consent of IATA); all Passenger Service System assets and agreements (subject to any required consent of Sabre), among other items, as set forth in the APA; and each and every items set forth in Section

2.1 of the APA; but excluding any Bankruptcy Chapter V preference, fraudulent transfer or post-petition transfer avoidance actions.

W.    No other person has any ownership right, title, or interest in the Acquired Assets, subject to the liens and claims described in that certain *Final Order (I) Authorizing the Sellers to (A) Obtain Postpetition Financing on a Secured, Superpriority Basis And (B) Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing, (IV) Modifying 1110(A) Agreements With Certain Aircraft Lessors and (V) Granting Related Relief* [Doc. No. 500] (the "Final DIP Order" and, together with the Interim DIP Order,[5][4] the "DIP Orders"), including the liens held by the Prepetition Secured Parties under the Prepetition Secured Documents (as such terms are defined in the DIP Orders) and the DIP Secured Parties under the DIP Documents (as such terms are defined in the DIP Orders).  The sale of the Acquired Assets to the Purchaser will be, as of the Closing Date or such later date as such Acquired Assets are transferred under the APA and TSA, a legal, valid, and effective transfer of such Acquired Assets, and each transfer and assignment vests or will vest the Purchaser with all right, title, and interest of the SellersSeller to the Acquired Assets free and clear of all Encumbrances (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens).

X.    Assumption and Assignment of Assumed Contracts.  The assumption and assignment of the Assumed Contracts under the APA and TSA are an integral part of the APA and TSA, and the schedule of Assumed Contracts may be amended, supplemented, or otherwise modified consistent with section 2.5 of the APA and TSA.  The assumption and assignment of the Assumed Contracts does not constitute unfair discrimination, is in the best interests of the Sellers,

---

[5][4] The Interim DIP Order means the *Interim Order (I) Authorizing the Sellers to (A) Obtain Postpetition Financing on a Secured, Superpriority Basis and (B) Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing, (IV) Modifying 1110(a) Agreements With Certain Aircraft Lessors And (V) Granting Related Relief* [Doc. No. 4101].

their respective estates, creditors, and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Sellers.[reserved]

        Y.    [reserved]

        Z.    [reserved]

        AA.    [reserved]

Y. Subject to payment by the Purchaser of all Cure Costs as of the Closing Date, or such later date on which this Court enters a Final Order on any Disputed Cure Cost, the Sellers and the Purchaser, as applicable, have met all requirements of section 365(b) of the Bankruptcy Code for each of the Assumed Contracts.  Pursuant to the APA and TSA, the Sellers and the Purchaser (including, in the case of the Purchaser, with respect to Cure Costs), have (i) cured any default existing prior to the assignment of the Assumed Contracts to the Purchaser in accordance with the terms of the APA and TSA, under each of the Assumed Contracts to be assumed and assigned under the APA and TSA, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any Non-Debtor Counterparty (as defined in the Bidding Procedures Order) for actual pecuniary loss to such party resulting from a default prior to the assignment of any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  Each of the Assumed Contracts to be assumed and assigned under the APA and TSA shall be assumed and assigned to the Purchaser free and clear of all Encumbrances (other than the Assumed Liabilities, Permitted Exceptions, and Permitted Liens) against the Purchaser.

Z. The Purchaser has demonstrated adequate assurance of its future performance within the meaning of section 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code under each Assumed Contract.  Pursuant to section 365(f) of the Bankruptcy Code, the Assumed Contracts to

~~be assumed and assigned under the APA and TSA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in the Assumed Contracts or other restrictions prohibiting their assignment or transfer, including the Transfer Rights.~~

~~AA. No monetary or non-monetary defaults exist in the Sellers' performance under the Assumed Contracts as of the date of this Sale Order other than, as applicable, the failure to pay amounts equal to the Cure Costs or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code. In accordance with the terms set forth in the APA and TSA and this Sale Order, at Closing the Purchaser shall pay the Cure Costs for each of the Assumed Contracts to be assumed and assigned to the Purchaser pursuant to the APA and TSA.~~

BB.    <u>No Successor Liability</u>.  No sale, transfer or other disposition of the Acquired Assets pursuant to the APA ~~and TSA~~ or entry into the APA ~~and TSA~~ will subject the Purchaser to any Excluded Liability or any liability for claims, obligations, or Encumbrances asserted against the ~~Sellers~~<u>Seller</u> or the ~~Sellers'~~<u>Seller's</u> interests in such Acquired Assets (other than the Assumed Liabilities, Permitted Exceptions, and Permitted Liens as set forth in the APA ~~and TSA~~) by reason of such transfer under any laws, including any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger, or substantial continuity or similar theories.  By virtue of the consummation of the transactions contemplated by the APA ~~and TSA~~, (i) the Purchaser will acquire the assets of the ~~Sellers~~<u>Seller</u> to operate the business of ~~Sellers~~<u>Seller</u> as a going concern and continue as ~~airlines~~<u>an airline</u> but Purchaser is not a successor of the ~~Sellers~~<u>Seller</u> nor ~~their respective estates~~<u>its estate</u>, there is no continuity or continuity of enterprise between the Purchaser and the ~~Sellers~~<u>Seller</u>, and there is no common identity between the ~~Sellers~~<u>Seller</u> and the Purchaser, (ii) the Purchaser is not holding

itself out to the public as a continuation of the ~~Sellers~~Seller nor ~~their respective estates~~its estate, and (iii) the Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the ~~Sellers~~Seller nor ~~their respective estates~~its estate. The Purchaser's acquisition of the Acquired Assets shall be free and clear of any "successor liability" claims of any nature whatsoever. Accordingly, the Purchaser is not and shall not be deemed a successor for any liability purposes to the ~~Sellers~~Seller nor ~~their respective estates~~its estate as a result of the consummation of the transactions contemplated by the APA ~~and TSA~~, and except with respect to any Assumed Liability, Permitted Exception, or Permitted Lien, the Purchaser would not acquire the Acquired Assets but for the protections against any claims based upon "successor liability" theories. In no event shall Purchaser be liable for any obligation under contract, agreement, or the Worker Adjustment and Retraining Notification Act, as amended, or any similar foreign, state or local law or regulations relating to any of the foregoing (the **"WARN Act"**) by reason of the purchase of the Acquired Assets.

CC.    <u>No Liability for Excluded Executory Contracts or Unexpired Leases</u>. Under the APA ~~and TSA~~, the Purchaser shall acquire the Acquired Assets free and clear of any and all liabilities, obligations, conditions, claims, or other interests associated with any executory contracts or unexpired leases not assumed in accordance with the APA ~~and TSA~~.

DD.    <u>No *Sub Rosa* Plan</u>. Entry into the APA and ~~TSA and~~ the transactions contemplated thereby and hereby neither impermissibly restructure the rights of ~~each~~the Seller's creditors, nor impermissibly dictate the terms of a chapter 11 plan for ~~either~~the Seller. Entry into and performance under the APA and ~~TSA and~~ this Sale Order does not constitute a *sub rosa* chapter 11 plan.

EE.    <u>No Third-Party Beneficiaries</u>.  Except as stated expressly in the APA ~~and TSA~~, nothing in the APA ~~and TSA~~ creates any third-party beneficiary rights in any entity not a party to the APA.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**[6][5]

1.    <u>Sale Motion Granted</u>.  The relief requested in the Motion is GRANTED as set forth herein.

2.    <u>Objections</u>.  Any objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled on the merits with prejudice and denied.  All parties and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3.    <u>Findings of Fact and Conclusions of Law</u>.  This Court's findings of fact and conclusions of law set forth above, in the Bidding Procedures Order, and in the record of the Bidding Procedures Hearing and Sale Hearing are incorporated herein and shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

4.    <u>Approval of the Sale Agreement</u>.  The APA and ~~TSA (including but not limited to Section 2.7 as it relates to the inclusion or exclusion of the assets of Seaborne, as the case may be, in the Acquired Assets) and~~ all ancillary documents, ~~including the Transition Services Agreement and all terms and conditions thereof,~~ are approved pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006 and 9014 of the Bankruptcy Rules.

---

[6][5] To the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*.

5.      <u>Authority to Perform</u>.   The ~~Sellers are~~Seller is hereby authorized and directed to perform under this Sale Order, the APA, ~~the TSA,~~ and all ancillary documents (and each of the transactions contemplated thereby is hereby approved in its entirety and is incorporated herein by reference).   The failure to include specifically any particular provision of the APA ~~or TSA~~ in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the APA~~, the TSA,~~ and all of their provisions and the payments and transactions provided for therein and herein shall be authorized and approved in their entirety. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

6.      Subject to the provisions of this Sale Order, the ~~Sellers~~Seller and the Purchaser are hereby authorized, pursuant to sections 105(a), 363(b)(1), and 365 of the Bankruptcy Code, to consummate the Sale Transaction in accordance with the APA, ~~the TSA,~~ and all ancillary documents filed therewith or described therein.

7.      Pursuant to section 363(b) of the Bankruptcy Code, and without any further organizational or corporate action or formalities or order of this Court, the ~~Sellers~~Seller, the Purchaser, and each of their respective officers, employees, agents, members, and managers are hereby authorized and directed to fully perform under, consummate, and implement the terms of the APA ~~and TSA~~ together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA~~, TSA,~~ and all ancillary agreements filed therewith or described therein, this Sale Order, and the Sale Transaction. Seller shall take, or cause to be taken, all reasonable actions and done, or cause to be done, all things necessary or proper, and make effective as soon as possible the transactions contemplated hereby, consistent with applicable law, to consummate including but not limited to the filing and prosecution of any necessary or required approvals by the U.S DOT and FAA of the transfer of

licenses of Silver to Buyer or Buyer's designees, which will include, *inter alia,* Silver (or any successor trustee under any chapter of the Bankruptcy Code or any other successor or administrator) joining in any application to the U.S. DOT and FAA for the transfer of any and all Certificates, exemptions and other authorities.

8.    <u>Transfer of Assets Free and Clear</u>.   Upon the Closing Date, all of the ~~Sellers'~~Seller's legal, equitable, and beneficial right, title, and interest in and to, and possession of, the Acquired Assets shall be immediately vested in the Purchaser pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code free and clear of any Lien, Claim, Interest, or Encumbrance, or Transfer Rights (other than Assumed Liabilities, Permitted Exceptions, or Permitted Liens, including all Cure Costs); <u>provided</u>, <u>however</u>, that all remaining Encumbrances shall attach to the proceeds of the Sale Transaction in the order of their priority, with the same validity, force, and effect that they previously attached against the Acquired Assets.   On the Closing Date, this Sale Order shall be considered, and constitute for any and all purposes, a legal, valid, binding, effective, and complete general assignment, conveyance, and transfer of the Acquired Assets and a bill of sale or assignment transferring indefeasible title in the Acquired Assets to the Purchaser and shall vest the Purchaser with good and marketable title to the Acquired Assets.

9.    The holders of claims related solely to the Assumed Liabilities, Permitted Exceptions, or Permitted Liens shall have the right to seek payment directly from the Purchaser on account of the Assumed Liabilities, Permitted Exceptions, or Permitted Liens; <u>provided</u>, <u>however</u>, that the Purchaser reserves any and all rights, defenses, or objections held at any time by the ~~Sellers~~Seller and/or the Purchaser with regard to such Assumed Liabilities, Permitted Exceptions, or Permitted Liens, including the Purchaser's rights hereunder and under the APA ~~and TSA~~;

provided further that, from and after the closing of the Sale Transaction, the ~~Sellers'~~Seller's estate shall have no further liability with respect to the Assumed Liabilities, Permitted Exceptions, or Permitted Liens.

10.    The Sale Transaction and transfer and assignment of the Acquired Assets to the Purchaser shall be effectuated on the terms set forth in the APA~~, the TSA,~~ and this Sale Order and shall not be restricted or prohibited, notwithstanding any alleged Transfer Rights with respect to the Acquired Assets.

11.    <u>Distribution of Secured Party Sale Proceeds</u>.  There are no cash proceeds payable to the ~~Sellers~~Seller from the sale to the Purchaser.  The DIP Obligations are credit bid and repaid in full in consideration of the sale of the Acquired Assets to the Purchaser.

12.    <u>Order Binding</u>.  All (i) entities, including all filing agents, filing officers, title agents, title companies or title agents, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state and local officials, and (ii) other persons, in each case, who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets, shall be authorized and directed to take any such actions in connection with the Sale Transaction or this Sale Order, and this Sale Order shall be binding upon such entities or persons.  All entities or persons described in this paragraph are authorized and specifically directed to strike all recorded Encumbrances (other than the Assumed Liabilities, Permitted Exceptions, or Permitted Liens) against the Acquired Assets from their records, official and otherwise.

13.    <u>Survival</u>.  Except as otherwise set forth herein, this Sale Order and the terms and provisions of the APA, the TSA, and all ancillary documents shall be binding on all of the Sellers' respective Seller's creditors (whether known or unknown), the Sellers Seller, the Purchaser, and each of their respective affiliates, successors and assigns, and any affected third parties, including all persons asserting an interest in the Acquired Assets, including any Transfer Rights, notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under any section of the Bankruptcy Code with respect to the foregoing parties, and as to such trustee, party, entity, or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Sale Order and the terms and provisions of the APA and TSA, and any actions taken pursuant hereto or thereto shall survive the dismissal of either of the Sellers' Seller's chapter 11 or 7 case or entry of any order, which may be entered confirming or consummating any plan(s) of either the Seller or converting either chapter 11 case from chapter 11 to chapter 7, and the terms and provisions of the APA and TSA, as well as the rights and interests granted pursuant to this Sale Order and the APA and TSA, shall continue in these or any superseding or successor cases and shall be binding upon the Sellers Seller, the Purchaser, and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of either Seller under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in this chapter 11 case shall be and hereby is authorized to operate the business of the applicable Seller(s) to the fullest extent necessary to permit compliance with the terms of this Sale Order and the APA, the TSA,, and the Purchaser and the trustee shall be and hereby are authorized to perform under the APA and TSA upon the appointment of such trustee without the need for further order of this Court.

14.     Except with respect to the Assumed Liabilities, Permitted Exceptions, or Permitted Liens, all persons and entities (and their respective successors and assigns), including all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Encumbrances, or having rights under Excluded Liabilities, or any Transfer Rights, arising under or out of, in connection with, or in any way relating to, the ~~Sellers~~Seller, the Acquired Assets, the ownership, sale, or operation of the Acquired Assets and the business prior to the Closing Date, or the transfer of Acquired Assets to the Purchaser, are hereby forever barred, estopped, and permanently enjoined from asserting such Encumbrances or Transfer Rights against the Purchaser, its property, or the Acquired Assets.  Except with respect to the Assumed Liabilities, Permitted Exceptions, or Permitted Liens (including any deferred obligation (if any) of the Purchaser to pay Cure Costs), following the Closing Date, no person, entity or holder of any Encumbrance or Excluded Liability shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to any such Encumbrance, or based on any action the ~~Sellers~~Seller may take in this chapter 11 case.

15.     Upon Closing, any Encumbrances on, against, or in the Acquired Assets that are purchased by the Purchaser pursuant to the APA ~~and TSA~~, other than Assumed Liabilities, Permitted Exceptions, or Permitted Liens which are not, by their terms as set forth in the APA ~~and TSA~~, automatically released by this Order, shall be automatically released and discharged without further action, and all right, title and, interest of any holder of such Encumbrances shall attach to the proceeds of the Sale Transaction in the same order of priority, and with the same extent, validity, force, and effect as existed with respect to the Acquired Assets prior to the Sale Transaction without the need for any perfection actions by any such parties.  Except for Assumed

Liabilities, Permitted Exceptions, or Permitted Liens, holders of any Encumbrances on, against, or in the Acquired Assets purchased by the Purchaser pursuant the APA ~~and TSA~~ are authorized and directed to execute and deliver to the ~~Sellers~~Seller, at the ~~Sellers'~~Seller's expense, any documents the ~~Sellers~~Seller may request to evidence the cancellation of Encumbrances and rights to the Acquired Assets securing the applicable claims.  Except for Assumed Liabilities, Permitted Exceptions, or Permitted Liens, if any person or entity has filed financing statements, mortgages, dedication interests, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances against or in the Acquired Assets that are purchased by the Purchaser pursuant to the APA and this Sale Order, then such person or entity, upon reasonable request by the ~~Sellers~~Seller or the Purchaser, shall promptly deliver to the ~~Sellers~~Seller, in proper form for filing and executed by the appropriate parties, termination statements or instruments of satisfaction or release of all Encumbrances that such person or entity has with respect to such Acquired Assets. Notwithstanding the foregoing, if any person or entity that has filed financing statements, mortgages, dedication interest mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances (other than the Assumed Liabilities, Permitted Exceptions, or Permitted Liens) or any Excluded Liability against or in the Acquired Assets shall not have delivered to the ~~Sellers~~Seller prior to the Closing Date of the Sale Transaction in proper form for filing and executed by the appropriate parties termination statements or instruments of satisfaction or release of all Encumbrances that such person or entity has with respect to such Acquired Assets, then only with regard to the Acquired Assets that are purchased by the Purchaser pursuant to the APA and ~~TSA and~~ this Sale Order, (a) the ~~Sellers are~~Seller is hereby authorized and empowered to cause to be executed and filed any and all such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Assets that are necessary or appropriate

to effectuate the Sale Transaction, any related agreements and this Sale Order, including amended and restated certificates of organization, certificates or articles of incorporation, operating agreements and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units[76] or as any of the officers of the ~~Sellers~~Seller may determine are necessary or appropriate and (b) the Purchaser is hereby authorized and empowered to cause to be filed, registered, or otherwise recorded a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances and Transfer Rights (other than the Assumed Liabilities, Permitted Exceptions, or Permitted Liens) against the Purchaser and the applicable Acquired Assets.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

16.    <u>Good Faith</u>.  The ~~Sellers~~Seller, the DIP Lender, the Prepetition Secured Parties and the Purchaser (including, but not limited to its equity owners, officers, directors, employees, professionals, and other agents thereof) have not engaged in any action or inaction that would cause or permit the Sale Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  The Entry into and performance under the APA ~~and TSA are~~is an exercise of the Defendants reasonable business judgment.  Entry into the APA~~, TSA,~~ and any ancillary documents is undertaken by the parties thereto, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and the Purchaser shall be entitled to all of the benefits of and protections under section 363(m) of the Bankruptcy Code.  The reversal or modification on appeal of the authorization provided herein to enter into the APA and ~~TSA and~~

---

[76] As used in this Sale Order, the term "governmental unit" shall have the meaning given to such term in section 101(27) of the Bankruptcy Code.

consummate the Sale Transaction shall not affect the validity of such Sale Transaction, unless such authorization is duly stayed pending such appeal.  The Sale Transaction is not subject to avoidance pursuant to section 363(n) or chapter 5 of the Bankruptcy Code and the Purchaser is entitled to all the protections and immunities under section 363(m) of the Bankruptcy Code.

17.    To the maximum extent permitted under applicable law, the Purchaser and any applicable affiliates shall be authorized, as of the Closing Date, to operate under any license, permit, certificate, exemption, registration and governmental authorization or approval of the SellersSeller with respect to the Acquired Assets, and all such licenses, permits, certificates, exemptions, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Purchaser, with respect to the Acquired Assets as of the Closing Date.   To the extent that such licenses, permits, certificates, exemptions, registrations, and governmental registrations cannot be transferred to the Purchaser in accordance with the previous sentence, such licenses, permits, certificates, exemptions, registrations and governmental authorizations and approvals shall be in effect while the Purchaser, with best efforts assistance from the SellersSeller (and at the Purchaser's cost and expense), works promptly and diligently to apply for and secure all necessary government approvals for new issuance of such licenses, permits, certificates, exemptions, registrations and governmental authorizations and approvals to the Purchaser pursuant to the TSA; *provided*, that the foregoing is not intended to modify the protections provided by Section 525 of the Bankruptcy Code, as and to the extent applicable.  The TSA is attached here to as Exhibit "___" and is approved in all respects.

18.    No Successor or Transferee Liability.  The Purchaser shall not be deemed, as a result of any action taken in connection with the APA and TSA, the consummation of the Sale Transaction, or the transfer, operation, or use of the Acquired Assets, to (a) be a legal successor,

or otherwise be deemed a successor to ~~either or both Sellers~~the Seller; (b) have, *de facto* or otherwise, merged with or into ~~either or both Sellers~~the Seller; or (c) be an alter ego or a mere continuation or substantial continuation or successor in any respect of ~~either or both Sellers~~the Seller, including within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, collective bargaining agreement, tax, labor, employment, worker's compensation, unemployment insurance, environmental, or other law, rule, or regulation (including filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to ~~either or both Sellers'~~the Seller's liability under such law, rule, or regulation or doctrine.  This paragraph is intended to apply solely to potential determinations of successor liability under applicable ~~state~~non-bankruptcy law and has no effect for any other purposes.

19.    Except as expressly provided in the APA ~~and TSA~~ with respect to the Assumed Liabilities, Permitted Exceptions, or Permitted Liens (including any deferred obligation, if any, of the Purchaser to pay Cure Costs), the Purchaser shall have no liability whatsoever with respect to the ~~Sellers' (or their respective~~Seller's (or its predecessors' or affiliates') business or operations or any of the ~~Sellers' (or their respective~~Seller's (or its predecessors' or affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of labor law, employment law, ERISA or benefits law, antitrust, environmental, successor or transferee liability, dedication interests, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or nonmonetary obligations on account of any

settlement or injunction, or any taxes arising, accruing, or payable under, out of, in connection

with, or in any way relating to the operation of the Acquired Assets or the business prior to the

Closing Date or such later time as the Purchaser is assigned and assumes any Assumed Contract.

This paragraph is intended to apply solely to potential determinations of successor liability under

applicable state law and has no effect for any other purposes.

20.    Effective upon the Closing Date, other than with respect to Assumed

Liabilities, Permitted Exceptions, or Permitted Liens (including any deferred obligation, if any, of

the Purchaser to pay Cure Costs), all persons and entities are forever prohibited and enjoined from

commencing or continuing in any matter any action or other proceeding, whether in law or equity,

in any judicial, administrative, arbitral, or other proceeding against the Purchaser, or its assets

(including the Acquired Assets), or its successors and assigns, with respect to any (a) Encumbrance

or (b) Successor or Transferee Liability, including the following actions with respect to clauses (a)

and (b) (i) exercising any Transfer Rights in connection with the Sale Transaction, (ii) commencing

or continuing any action or other proceeding pending or threatened; (iii) enforcing, attaching,

collecting, or recovering in any manner any judgment, award, decree, or order; (iv) creating,

perfecting, or enforcing any Encumbrance; (v) asserting any setoff, right of subrogation, or

recoupment of any kind; (vi) commencing or continuing any action, in any manner or place, that

does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of

this Court, or the agreements or actions contemplated or taken in respect hereof; or (vii) revoking,

terminating, or failing or refusing to renew any license, permit, or authorization to operate any of

the Acquired Assets or conduct any of the businesses operated with such Acquired Assets.

21.    Assumption and Assignment of Assumed Contracts and Leases. Except

with respect to that certain aircraft agreement with Azorra, approved by this Court on May 30,

2025 at Doc. 533, Purchaser is not seeking the assumption and assignment of any executory contracts and unexpired leases.

22.    [reserved]

23.    [reserved]

24.    [reserved]

25.    [reserved]

26.    [reserved]

27.    The Purchaser is not assuming any of the Seller's other Contracts or leases and shall have no liability whatsoever thereunder.

21.    Assumption and Assignment of Assumed Contracts.    Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Sellers are authorized and directed to assume and assign the Assumed Contracts to the Purchaser, pursuant to the terms of the APA and TSA, free and clear of all Encumbrances (other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens).    The payment (which shall be made by the Purchaser) of the Cure Costs due under each Assumed Contract listed in the APA to be assumed pursuant to section 365(b) of the Bankruptcy Code by the Sellers and assigned to the Purchaser under the APA and TSA:  (a) cures all monetary defaults existing thereunder as of the assignment of the Assumed Contracts to the Purchaser in accordance with the terms of the APA and TSA; (b) compensates the applicable counterparties to the Assumed Contracts for any actual pecuniary loss resulting from such default; and (c) together with the assumption of the Assumed Contracts by the Sellers and the assignment of the Assumed Contracts to the Purchaser constitutes adequate assurance of future performance thereof.  The Purchaser has provided adequate assurance of future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(c) and 365(f)(2)(B) of the Bankruptcy Code.

22. To the extent that any Non-Debtor Counterparty to an Assumed Contract did not timely file a Cure Objection (as defined in the Bidding Procedures Order) by the Cure Cost/Assignment Objection Deadline (as defined in the Bidding Procedures Order), such Non-Debtor Counterparty is deemed to have consented to the proposed Cure Cost set forth in the APA and TSA or that will otherwise be paid by a Seller in the ordinary course of business.  The Non-Debtor Counterparties to the Assumed Contracts are forever bound by the applicable Cure Costs and, upon payment of such Cure Costs as provided for herein and in the APA and TSA, are hereby enjoined from taking any action against the Purchaser with respect to any claim for cure under the Assumed Contracts, except as set forth in the APA and TSA.

23. In accordance with the APA and TSA, if any Disputed Cure Cost is determined by a Final Order of this Court to exceed the Cure Cost provided for in the APA and TSA, the Purchaser may designate the applicable Contract as an Excluded Asset.

24. Any provision in any Assumed Contract that prohibits or conditions the assignment of such Assumed Contract, including any Transfer Rights, or allows the counterparty to such Assumed Contract to impose any penalty, fee, increase in payment, profit sharing arrangement, or other condition on renewal or extension, or to modify any term or condition upon the assignment of such Assumed Contract, constitutes an unenforceable anti-assignment provision that is void and of no force and effect in connection with the Sale Transaction.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Sellers and assignment to the Purchaser of the Assumed Contracts have been satisfied.  Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all rights, title, and interests of the Sellers under the Assumed Contracts to be assumed and assigned to the Purchaser pursuant to the

APA and TSA, and such Assumed Contracts shall remain in full force and effect for the benefit of the Purchaser.

25. Upon the assumption and assignment of the applicable Assumed Contracts to the Purchaser in accordance with the terms of the APA and TSA, the Purchaser shall be deemed to be substituted for the Sellers as a party to the applicable Assumed Contract, and the Sellers and their respective estates shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assumed Contract occurring after such assignment. At or promptly after the Closing, the Purchaser shall pay any Cure Costs in accordance with the APA and TSA, and the Sellers and their respective estates shall have no liability therefor. There shall be no assignment or consent fees, increases, or any other fees charged to the Purchaser or the Sellers as a result of the assumption and assignment of the Assumed Contracts pursuant to the APA and TSA.

26. Each Non-Debtor Counterparty to an Assumed Contract is forever barred, estopped, and permanently enjoined from asserting against the Sellers or the Purchaser or their respective property in connection with the Sale Transaction: (a) any Transfer Rights; (b) any assignment fee, acceleration, default, breach, or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing Date, including, any breach related to or arising out of a change in control resulting from the Sale Transaction of any provision of such Assumed Contract, or any purported written or oral modification to the Assumed Contract; or (c) any claim, counterclaim, defense, breach, default, condition, setoff, or other claim asserted or capable of being asserted against a Seller existing as of the Closing Date.

27. Other than the Assumed Contracts as set forth in the APA and TSA to be assumed and assigned to the Purchaser, the Purchaser shall assume none of the Sellers other Contracts or leases and shall have no liability whatsoever thereunder.

28.    <u>Excluded Liabilities</u>.  All persons, all governmental units, and all holders of Encumbrances (other than holders of Assumed Liabilities, Permitted Exceptions, and Permitted Liens) including those based upon or arising out of the Excluded Assets, are hereby enjoined, barred and estopped from taking any action against the Purchaser or the Acquired Assets to recover property on account of any Encumbrances or on account of any liabilities of the ~~Sellers~~Seller other than Assumed Liabilities, Permitted Exceptions, and Permitted Liens.  All persons holding or asserting any Encumbrances with respect to the Excluded Assets are hereby enjoined from asserting or prosecuting such Encumbrances against the Purchaser or the Acquired Assets for any liability whatsoever associated with the Excluded Assets.

29.    <u>No Bulk Sales; No Brokers</u>.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.  Other than the professionals retained by the ~~Sellers~~Seller pursuant to orders of this Court, no brokers were involved in consummating the Sale Transaction, and no brokers' commissions shall be due to any person or entity in connection with the Sale Transaction.  The Purchaser is not obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Sale Transaction. Notwithstanding the foregoing, the ~~Sellers~~Seller may be obligated to pay financial advisors or investment bankers for services rendered in connection with the sale in accordance with other orders of this Court.

30.    <u>Failure to Specify Provisions; Conflicts</u>.  The failure specifically to mention any particular provisions of the APA ~~and TSA~~ or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court, the ~~Sellers~~Seller and the Purchaser that the APA~~, the TSA,~~ and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties thereto

in accordance with this Sale Order.  In the event there is a direct conflict between the terms of this Sale Order and the terms of the APA ~~and TSA~~, the terms of this Sale Order shall control.

31.    <u>Further Assurances</u>.  From time to time, as and when requested, all parties to the Sale Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, or confirm or record or otherwise in the Purchaser its right, title, and interest in and to the Acquired Assets.

32.    <u>Governing Terms</u>.  To the extent this Sale Order is inconsistent with any prior order or pleading in this chapter 11 case, the terms of this Sale Order shall govern.  To the extent there is any inconsistency between the terms of this Sale Order and the terms of the APA ~~and TSA~~ (including all ancillary documents executed in connection therewith) or the Motion, the terms of this Sale Order shall govern.

33.    <u>Modifications</u>.  The APA~~, the TSA,~~ and any related agreements, documents or other instruments executed in connection therewith may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court; <u>provided</u> that any such modification, amendment or supplement does not have a material adverse effect on the ~~Sellers' respective~~Seller's estate or creditors.

34.    <u>Releases</u>.

a.    Effective upon the Closing Date, Purchaser, on the one hand, and each of the DIP Lender and Prepetition Lenders (collectively, the "<u>Released Lender Parties</u>") on the other hand, in the case of both the Purchaser and the Released Lender Parties on behalf of themselves and each of their Related Persons, shall forever and irrevocably be deemed to have mutually

released, discharged, and acquitted each other and each of their Related Persons from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, reasonable attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, including all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of or in connection with the DIP Obligations, the Prepetition Liens, and the ~~Sellers~~Seller, which existed, occurred or arose prior to the Closing Date; <u>provided</u>, <u>however</u>, nothing herein shall release any claims or causes of action that any party may have to enforce this Sale Order and in the event that Closing Date does not occur, the foregoing release shall be deemed to be of no force and effect and the parties agree that their positions shall be returned to the *status quo ante*, and each party's rights shall be reserved and preserved.

b.      Effective upon the Closing Date, ~~each~~the Seller and its estate, on its own behalf and on behalf of each of its Related Persons, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Released Lender Parties, from any and all obligations and liabilities to the Seller (and its successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Closing Date of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, arising out of or in connection with the Seller, this chapter 11 case, the sale process, the Seller's operations and

management, the DIP Obligations, the Prepetition Secured Obligations, the DIP Documents, and the Prepetition Secured Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the Seller's performance thereunder, in each case that the Seller at any time had, now has or may have, or that its successors or assigns hereafter can or may have against any of the Released Lenders Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the Closing Date.

35.     <u>Binding Stipulations</u>.  As set forth in paragraph 42 of the Final DIP Order, the Prepetition Lien and Claim Stipulations remain in effect and continue to be binding on the ~~Sellers~~<u>Seller</u> and ~~their respective estates~~<u>its estate</u>, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative or successor in interest to ~~either~~<u>the</u> Seller and all other creditors and parties in interest and all of their successors in interest and assigns.

36.     <u>Automatic Stay</u>.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the ~~Sellers~~<u>Seller</u> to the extent necessary, without further order of this Court, to allow the Purchaser to deliver any notice provided for in the APA and ~~TSA, and~~allow the Purchaser to take any and all actions permitted or required under the APA ~~and TSA~~ in accordance with the terms and conditions thereof.  The Purchaser shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA ~~and TSA~~ or any other sale-related document.

37.     <u>No Stay of Order; Further Instruments; Appeals</u>.     Notwithstanding Bankruptcy Rules 6004(h), 6006(d) and 7062, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  Neither ~~of~~the ~~Sellers~~<u>Seller</u> nor

the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and obtaining a stay prior to the Closing Date or risk its appeal being foreclosed as moot.

38.    <u>Notice of Sale Closing Date</u>.  Within one (1) business day of the occurrence of the Closing Date of the Sale Transaction, the ~~Sellers~~<u>Seller</u> shall file and serve a notice of same~~, substantially in the form attached hereto as **Exhibit 2** (the "Notice of Sale Closing Date")~~.

39.    <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction to interpret, implement, and enforce the terms and provisions of this Sale Order, the Bidding Procedures Order, and the APA ~~and TSA~~, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, and decide any issues or disputes concerning this Sale Order and the APA~~, the TSA~~, or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Acquired Assets.

<u>40.    Jetstream / Azorra Provisions. Notwithstanding any other provision in this Order or the APA, and specifically including the definition of "Acquired Asset", any and all 1110 Leases and all corresponding aircraft equipment, parts, engines, etc. and documents with Lessors Jetstream Aviation Capital, LLC (and affiliates) and Azorra Eagle entities (collectively "Lessors"), shall not be sold, conveyed or assigned to Purchaser. Rather, the Debtor shall immediately deliver to the respective Lessor the aircraft, equipment, parts, engines, etc. and documents, etc., in accordance with the obligations of the respective Section 1110(b) agreements approved by this Court and otherwise in compliance with the leases or as otherwise agreed to by the Lessors and Debtor.  The automatic stay of Section 362 is hereby modified to allow said Lessors to take all</u>

steps necessary or required to effectuate the same forthwith. Any stay as to the effectiveness of the foregoing is hereby waived.

41.     Administrative Claims to be Paid by Purchaser. Purchaser has agreed to pay, but will not be liable for any other expenses, certain administrative expenses consisting of the wages and benefits commencing June 11, 2025 through the conclusion of any period where services are being performed for Purchaser by the employees in the following positions:

| Employee Initials | Position | Location |
|---|---|---|
| LBL | Director of Quality Control | Orlando |
| MM | Stores Clerk | Orlando |
| JAR | Stores Clerk | Orlando |
| YRM | Stores Manager | Orlando |
| BHF | Director of Flight Operations | Orlando |
| GRJ | System Chief Pilot | Headquarters |
| AEM | Director of Safety | Headquarters |
| LRL | Sr Manager of Line Maintenance | Pensacola |

42.     40. The Sellers areAuthorization to Act. The Seller is authorized and directed to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Sale Order.

43.     41. Order Effective on Entry; Waiver or Bankruptcy Rule 6004(h). Notwithstanding Bankruptcy Rule 6004(h), this Sale Order is effective immediately upon entry.

44.     42. The requirements set forth in Bankruptcy Rule 6004(a) and Local Rule 6004-1 are satisfied.

45.     43. All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**Exhibit 1**

APA ~~and TSA~~

(revised)

**Exhibit 2**

Notice of Sale Closing Date

(Attached)

| Summary report: Litera Compare for Word 11.10.1.2 Document comparison done on 6/11/2025 4:25:16 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://cloudimanage.com/TADMS/20822348/1 | |
| **Modified DMS:** iw://cloudimanage.com/TADMS/20835049/4 | |
| **Changes:** | |
| Add | 177 |
| Delete | 235 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 1 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 413 |