

**ORDERED in the Southern District of Florida on July 3, 2025.**



**Peter D. Russin, Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SILVER AIRWAYS LLC, et. al.,[1] | Case No. 24-23623-PDR<br>(Jointly Administered) |
| Debtors._____/ | |

**ORDER APPROVING DEBTOR SEABORNE VIRGIN ISLANDS, INC.'S EMERGENCY MOTION FOR ENTRY OF AN ORDER APPROVING (I) SALE TRANSACTION AND SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are SILVER AIRWAYS LLC (6766) and SEABORNE VIRGIN ISLANDS, INC. (1130) (collectively, the "Debtors").
.

THIS CAUSE came before the Court on July 1, 2025 at 4:00 p.m. (the "Sale Hearing") upon the *Debtor Seaborne Virgin Islands, Inc.'s Emergency Motion for an Order (I) Approving Bidding Procedures in Connection With Transaction by Auction; (II) Scheduling a Hearing to Consider the Transaction; (III) Approving the Form and Manner of Notice Thereof; (IV) Approving Contract Procedures; and (V) Granting Related Relief* [ECF No. 446] (the "Motion"),[2] filed by the debtor Seaborne Virgin Islands, Inc. ("Seaborne" or individually, the "Debtor"), and upon the *Order (I) Approving Bidding Procedures in Connection with Transaction by Auction; (II) Scheduling a Hearing to Consider the Transaction; (III) Approving the Form and Manner of Notice Thereof; (IV) Approving Contract Procedures; and (V) Granting Related Relief* [ECF No. 715] (the "Bid Procedures Order") approving the procedures for bidding (the "Bid Procedures") for the sale of the Acquired Assets, and establishing the date of the Auction and the Sale Hearing, and the Auction having been held in accordance with the Bid Procedures Order, and Court, having accepted into evidence the unrebutted testimony of Soneet R. Kapila, Chapter 11 Trustee; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and other parties in interest; and it appearing that proper and adequate notice of the relief requested by the Motion has been given under the circumstances and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.  **Jurisdiction**.  This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  Approval of the Debtor's entry

---

[2] Capitalized terms used but not defined herein are those as set forth in the Motion or, as applicable, the Asset Purchase Agreement (the "APA") as described herein.

[3] The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy

into the APA and the transactions contemplated thereby (collectively the "Sale Transaction") is a core proceeding under 28 U.S.C. §§ 157(b)(2).

      B.    Final Order. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

      C.    Notice. Proper, timely, adequate, and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 6006, and in compliance with the Local Rules and the Bidding Procedures Order. The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, the APA, or the Sale Transaction is required.

      D.    Opportunity to be Heard. A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the Sale Transaction has been afforded to all interested persons and entities. Objections, if any, to the Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, and except as otherwise provided herein, are hereby overruled.

      E.    Appointment of the Chapter 11 Trustee. On June 25, 2025, this Court directed the Office of the United States Trustee to appoint a chapter 11 trustee for the Debtors [ECF No. 695]. On June 30, 2025, the Office of the United States Trustee appointed Soneet R. Kapila (the "Trustee") as the Debtors' chapter 11 trustee [ECF No. 727].

      F.    The Auction. Pursuant to the Bidding Procedures Order, the Trustee conducted the Auction on July 1, 2025. At the conclusion of the Auction, the Trustee determined in his business judgment that the final bid of Leonite Fund I LP (the "Purchaser") was the highest

---

Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

and best bid for the Acquired Assets, and therefore the Purchaser was determined to the be Successful Bidder. The Trustee further determined that the final bid of Corporate Flight Management, Inc. d/b/a Contour Aviation (the "Backup Bidder") was the next highest and best bid for the Acquired Assets, and therefore deemed the Backup Bidder.

G. Asset Purchase Agreement. The Asset Purchase Agreement (the "APA") executed by each of the Purchaser and the Backup Bidder, as modified following the Auction and filed with the Court at ECF Nos. 752 and 754, respectively, are fair, reasonable and are in the best interests of the estate.

H. Transition Services Agreement. Each of the terms of the Transition Services Agreement (the "TSA") between the Debtor and the Purchaser, contained within the APA, are fair, reasonable and are in the best interests of the estate.

I. Compliance with Bidding Procedures. The Debtor, initially as debtor in possession and thereafter through the Trustee, conducted a fair and open sale process in a manner reasonably calculated to produce the highest or otherwise best offer for the Acquired Assets in compliance with the Bidding Procedures Order. The Bidding Procedures have been complied with in all material respects by the Debtor, the Trustee, the Purchaser, and the Backup Bidder.

J. Fair Consideration. The consideration provided by the Purchaser (and the Backup Bidder, as applicable) for the Acquired Assets provides fair and reasonable consideration to the Debtor's estate.

K. Immediate Effectiveness of Sale Order. The Sale Transaction contemplated by the APA must be consummated as quickly as possible to preserve the Debtor's assets. Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy

Rule 4001(a), and pursuant to Bankruptcy Rule 6004(h), to permit the immediate effectiveness of this Sale Order.

L.      Sale Free and Clear.  Except for the Assumed Liabilities and Permitted Liens expressly provided for in the APA, the sale of the Acquired Assets shall be free and clear of liens, claims, defenses (including rights of setoff and recoupment) and interests, in each case, in, on, or related to the Acquired Assets, including, for the avoidance of doubt, any security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, dedications, deeds of trust, hypothecations, liens, including but not limited to mechanics' or materialman's liens,  encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, right of first refusal, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, conditions, equitable interests, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, Employee Retirement Income Security Act of 1974 ("ERISA"), Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq*. ("CERCLA"), alter ego and other liabilities, causes of action, contract rights and claims, community property interest, right of way or restriction of any kind to the fullest extent of the law, in each case, of any kind or nature in, on, or related to the Acquired Assets (including all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether prepetition or postpetition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances"), and without the protections of this

5

Sale Order, the Seller's ability to obtain the consideration provided for in the APA would be hindered, which would impact materially and adversely the value that the Debtor's estate would be able to obtain for the sale of such Acquired Assets.

      M.    <u>Arms' Length Sale</u>.  The consideration to be paid by the Purchaser (and the Backup Bidder, as applicable) under the APA was negotiated at arms' length and constitutes reasonably equivalent value and fair and adequate consideration for the Acquired Assets.  The terms and conditions set forth in the APA and all ancillary documents filed therewith or described therein are fair and reasonable under these circumstances and were not entered into with the intent to, nor for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtor or its creditors under any applicable laws.

      N.    <u>Good Faith</u>.  The Purchaser (and the Backup Bidder, as applicable) actively participated in the bidding process and acted in good faith with the Trustee and the Debtor.  Neither the Purchaser nor the Backup Bidder is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  The APA was negotiated and entered into between the Purchaser (and the Backup Bidder, as applicable) and the Trustee on behalf of the Debtor based upon arms' length bargaining, without collusion or fraud, and in good faith as that term is used in section 363(m) of the Bankruptcy Code.  The Purchaser (and the Backup Bidder, as applicable) is entering into the Sale Transaction in good faith and is a good faith purchaser for value within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to the full protection of section 363(m) of the Bankruptcy Code with respect to all aspects of the transactions contemplated by the APA.

      O.    <u>Corporate Authority</u>.  The Debtor, through the Trustee, has (i) full corporate or other power to execute, deliver, and perform their obligations under the APA and all other

transactions contemplated thereby and entry into the APA has been duly and validly authorized by all necessary corporate or similar action, (ii) all of the corporate or other power and authority necessary to consummate the Sale Transaction, and (iii) taken all actions necessary to authorize and approve the APA and the Sale Transaction.  No consents or approvals, other than those expressly provided for herein or in the APA, are required for the Debtor or the Trustee to consummate such transaction.

P. The sale of the Acquired Assets to the Purchaser (and the Backup Bidder, as applicable) will be, as of the Closing Date or such later date as such Acquired Assets are transferred under the APA, a legal, valid, and effective transfer of such Acquired Assets, and each transfer and assignment vests or will vest the Purchaser with all right, title, and interest of the Debtor to the Acquired Assets free and clear of all liens, claims and encumbrances (other than Assumed Liabilities and Permitted Liens).

Q. <u>Assumption and Assignment of Assumed Contracts</u>.  The assumption and assignment of the Assumed Contracts under the APA are an integral part of the APA, and the schedule of Assumed Contracts may be amended, supplemented, or otherwise modified consistent with the APA.  The assumption and assignment of the Assumed Contracts is in the best interests of the Debtor, its estate, creditors, and all other parties in interest.

R. Subject to payment by the Purchaser of all Cure Costs as of the Closing Date or the expiration of the Designation Period, the provision of adequate assurance of prompt cure following the Designation Period, or such later date on which this Court enters a Final Order on any Disputed Cure Cost, the Debtor and the Purchaser, as applicable, have met all requirements of section 365(b) of the Bankruptcy Code for each of the Assumed Contracts.  In accordance with the terms set forth in the APA and this Sale Order, the Purchaser shall pay, provide adequate

assurance of a prompt cure, or satisfy the Cure Costs for each of the Assumed Contracts to be assumed and assigned to the Purchaser pursuant to the APA.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**[4]

1. <u>Motion Granted.</u>  The relief requested in the Motion is GRANTED as set forth herein.

2. <u>Objections.</u>  Any objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled on the merits with prejudice and denied.  Notwithstanding the foregoing, the reservation of rights placed on the record with respect to the *Objection of Kenn Borek Air Ltd. To the Notice of (i) Executory Contracts and Unexpired Leases that may be Assumed and Assigned in Connection with a Sale of Debtor Seaborne Virgin Island's Assets and (ii) Proposed Cure Amounts with respect thereto* [ECF No. 730] are hereby preserved. All other parties and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3. <u>Approval of the Sale Agreement and the TSA.</u>  The APA, the TSA, and all ancillary documents and all terms and conditions thereof are approved.

4. <u>Authority to Perform.</u>  The Debtor, through the Trustee, is hereby authorized to perform under this Sale Order, the APA, the TSA, and all ancillary documents (and each of the transactions contemplated thereby is hereby approved in its entirety and is incorporated herein by reference).

---

[4] To the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*.

5. Subject to the provisions of this Order, the Debtor, through the Trustee, and the Purchaser are hereby authorized, pursuant to sections 105(a), 363(b)(1), and 365 of the Bankruptcy Code, to consummate the Sale Transaction in accordance with the APA, the TSA, and all ancillary documents filed therewith or described therein.

6. <u>Transfer of Assets Free and Clear</u>.  Upon the Closing Date, all of the Debtor's legal, equitable, and beneficial right, title, and interest in and to, and possession of, the Acquired Assets shall be immediately vested in the Purchaser pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code free and clear of any lien, claim, interest, or encumbrance (other than Assumed Liabilities or Permitted Liens, including all Cure Costs); <u>provided</u>, <u>however</u>, that all such remaining encumbrances shall attach to the proceeds of the Sale Transaction in the order of their priority, with the same validity, force, and effect that they previously attached against the Acquired Assets.

7. On the Closing Date, this Sale Order shall be considered, and constitute for all purposes, a legal, valid, binding, effective, and complete general assignment, conveyance, and transfer of the Acquired Assets and a bill of sale or assignment transferring indefeasible title in the Acquired Assets to the Purchaser and shall vest the Purchaser with good and marketable title to the Acquired Assets.

8. The Sale Transaction and transfer and assignment of the Acquired Assets to the Purchaser shall be effectuated on the terms set forth in the APA and this Sale Order and shall not be restricted or prohibited.

9. <u>Order Binding</u>.  All (i) entities, including all filing agents, filing officers, title agents, title companies or title agents, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state

and local officials, and (ii) other persons, in each case, who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets, shall be authorized and directed to take any such actions in connection with the Sale Transaction or this Sale Order, and this Sale Order shall be binding upon such entities or persons.

10. <u>Good Faith</u>.  The Debtor, the Trustee, and the Purchaser (and the Backup Bidder, as applicable) have not engaged in any action or inaction that would cause or permit the Sale Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  Entry into the APA is undertaken by the parties thereto, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and the Purchaser (and the Backup Bidder, as applicable) shall be entitled to all the benefits of and protections under section 363(m) of the Bankruptcy Code. The reversal or modification on appeal of the authorization provided herein to enter the APA and consummate the Sale Transaction shall not affect the validity of such Sale Transaction, unless such authorization is duly stayed pending such appeal.  The Purchaser (and the Backup Bidder, as applicable) is entitled to all the protections under section 363(m) of the Bankruptcy Code.

11. To the maximum extent permitted under applicable law, the Purchaser or shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Purchaser, with respect to the Acquired Assets as of the Closing Date.  To the extent that such licenses, permits registrations, and governmental registrations cannot be transferred to the Purchaser in accordance with the

previous sentence, such licenses, permits, registrations and governmental authorizations and approvals shall be in effect while the Purchaser, with best efforts assistance from the Debtor through the Trustee (and at the Purchaser's cost and expense), works promptly and diligently to apply for and secure all necessary government approvals for new issuance of such licenses, permits, registrations and governmental authorizations and approvals to the Purchaser pursuant to the terms of the Transition Services Agreement between the Debtor and Purchaser.

12. **No Successor or Transferee Liability**. The Purchaser shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Sale Transaction, or the transfer, operation, or use of the Acquired Assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtor; (b) have, *de facto* or otherwise, merged with or into the Debtor; or (c) be an alter ego or a mere continuation or substantial continuation or successor in any respect of the Debtor.

13. **Assumption and Assignment of Assumed Contracts**. Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Debtor through the Trustee is authorized to assume and assign the Assumed Contracts to the Purchaser, pursuant to the terms of the APA. The payment (which shall be made by the Purchaser) of the Cure Costs due under each Assumed Contract listed in the APA or otherwise designated as an Assumed Contract under Section 2.7 of the APA to be assumed pursuant to section 365(b) of the Bankruptcy Code by the Sellers and assigned to the Purchaser under the APA: (a) cures all monetary defaults existing thereunder as of the assignment of the Assumed Contracts to the Purchaser in accordance with the terms of the APA; (b) compensates the applicable counterparties to the Assumed Contracts for any actual pecuniary loss resulting from such default; and (c) together with the assumption of the Assumed Contracts by the Sellers and the assignment of the Assumed Contracts to the Purchaser constitutes adequate assurance of future performance thereof.

14. To the extent that any Non-Debtor Counterparty to an Assumed Contract did not timely file a Cure Objection (as provided in the Bidding Procedures Order) by the Cure Cost/Assignment Objection Deadline (as provided in the Bidding Procedures Order), such Non-Debtor Counterparty is deemed to have consented to the proposed Cure Cost set forth in the APA or that will otherwise be paid by the Debtors in the ordinary course of business. The Non-Debtor Counterparties to the Assumed Contracts are forever bound by the applicable Cure Costs and, upon payment of such Cure Costs as provided for herein and in the APA, are hereby enjoined from taking any action against the Purchaser with respect to any claim for cure under the Assumed Contracts, except as set forth in the APA.

15. Any provision in any Assumed Contract that prohibits or conditions the assignment of such Assumed Contract, or allows the counterparty to such Assumed Contract to impose any penalty, fee, increase in payment, profit sharing arrangement, or other condition on renewal or extension, or to modify any term or condition upon the assignment of such Assumed Contract, constitutes an unenforceable anti-assignment provision that is void and of no force and effect in connection with the Sale Transaction. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Sellers and assignment to the Purchaser of the Assumed Contracts have been satisfied.  Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all rights, title, and interests of the Sellers under the Assumed Contracts to be assumed and assigned to the Purchaser pursuant to the APA, and such Assumed Contracts shall remain in full force and effect for the benefit of the Purchaser.

16. Upon the assumption and assignment of the applicable Assumed Contracts to the Purchaser in accordance with the terms of the APA, the Purchaser shall be deemed to be

substituted for the Debtor as a party to the applicable Assumed Contract, and the Debtor and the estate shall be released from any liability under the Assumed Contract occurring after such assignment. At or promptly after the Closing or before the expiration of the Designation Period, the Purchaser shall pay any Cure Costs in accordance with the APA, and the Debtor and its estate shall have no liability therefor.

17. Modifications. The APA and any related agreements, documents or other instruments executed in connection therewith may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estates or creditors.

18. Automatic Stay. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtor to the extent necessary, without further order of this Court, to allow the Purchaser to deliver any notice provided for in the APA and allow the Purchaser to take any and all actions permitted or required under the APA in accordance with the terms and conditions thereof. The Purchaser shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document.

19. Carveout from Cash Purchase Price/Payment to Brigade. Pursuant to the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing on a Secured, Superpriority Basis* and related relief [ECF No. 500], following the Closing, the termination of the TSA and the indefeasible payment of the Cash Purchase Price by the Purchaser, the Trustee is authorized to distribute from the Cash Purchase Price the sum of $125,000.00 to Brigade Agency Services LLC ("Brigade"). The balance of the Cash Purchase Price (the "Carveout") shall be

deemed a carveout from Brigade's collateral first to pay the allowed fees and costs of professionals of the Seaborne Debtor's estate, and thereafter for the benefit of administrative creditors of the Debtor's estate and other creditors in accordance with the priority scheme of the Bankruptcy Code.

20. <u>No Stay of Order; Further Instruments; Appeals</u>. Notwithstanding Bankruptcy Rules 6004(h), 6006(d) and 7062, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

21. <u>Retention of Jurisdiction</u>. This Court shall retain exclusive jurisdiction to interpret, implement, and enforce the terms and provisions of this Sale Order, the Bidding Procedures Order, and the APA, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, and decide any issues or disputes concerning this Sale Order and the APA or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Acquired Assets.

22. <u>Purchaser Default/Backup Bidder</u>. If the Purchaser does not consummate the transaction contemplated by the APA, and upon the filing by the Trustee of a notice of default, and in accordance with the terms of Bid Procedures Order, the Backup Bidder will become the Purchaser and all provisions of this Order which apply to the Purchaser shall apply with equal force to the Backup Bidder. The Backup Bidder shall close in accordance with the terms of the Bid Procedures Order. If the Backup Bidder does not become the Purchaser, the Trustee shall return the Backup Bidder's deposit in accordance with the Bid Procedures Order.

23. The Trustee is authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Sale Order.

24. Notwithstanding Bankruptcy Rule 6004(h), this Sale Order is effective immediately upon entry.

###

**Submitted by and Copy to:**

Glenn D. Moses, Esq.
*Proposed Counsel to Chapter 11 Trustee*
VENABLE, LLP
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: 305-349-2300
Email: gmoses@venable.com

[Attorney Moses is directed to serve a conformed copy of this Order on all parties in interest and file a certificate of service within 3 days of entry of this Order]